1  Fredrick A. Rafeedie (State Bar No. 138422)
2  farafeedie@jonesbell.com
   Samuel E. Endicott (State Bar No. 267054)
3  sendicott@jonesbell.com
4  **JONES, BELL, ABBOTT,**
   **FLEMING & FITZGERALD L.L.P.**
5  601 South Figueroa Street, 27th Floor
6  Los Angeles, California 90017-5759
   Telephone: (213) 485-1555
7  Facsimile: (213) 689-1004
8  Attorneys for Petitioner
9  Wells Fargo Advisors, LLC

E-filing

10          **UNITED STATES DISTRICT COURT**

11          **NORTHERN DISTRICT OF CALIFORNIA**
12

13  WELLS FARGO ADVISORS, LLC, a        **Case No. 11 - 1500**
14  limited liability company,

15                  Petitioner,          **PETITION TO VACATE**
                                         **ARBITRATION AWARD**
16

17          v.

18  KENNETH C. SHAFFER, an individual,

19                  Respondent.
20

21          This petition of Wells Fargo Advisors, LLC respectfully shows the
22  following:

23

24                          **JURISDICTION**

25          1.      Petitioner Wells Fargo Advisors, LLC ("WFA") is a limited
26  liability company organized under the laws of the state of Delaware and has its
27  principal place of business St. Louis, Missouri. WFA's sole member is Wachovia
28  Securities Financial Holdings, LLC. Wachovia Securities Financial Holdings, LLC is

- 1 -

1    a limited liability company organized under the laws of the state of Delaware and has
2    its principal place of business in St. Louis, Missouri. The members of Wachovia
3    Securities Financial Holdings, LLC are Wells Fargo Investment Group, Inc. and
4    EVEREN Capital Corporation. Wells Fargo Investment Group, Inc. is incorporated
5    under the laws of the state of Delaware and has its principal place of business in
6    Minneapolis, Minnesota. EVEREN Capital Corporation is incorporated under the laws
7    of the state of Delaware and has its principal place of business in Charlotte, North
8    Carolina. The amount in controversy exceeds $75,000, exclusive of interest and costs.

9         2.    Respondent Kenneth C. Shaffer ("Shaffer") is an individual who is
10   a citizen of the state of California.

11        3.    Accordingly, jurisdiction is conferred upon this Court by 28 U.S.C.
12   § 1332, and the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*.

13

14                    **INTRADISTRICT ASSIGNMENT**

15        4.    The contested arbitration award was rendered in an arbitration
16   proceeding held in San Francisco, California. Thus, pursuant to Civil L.R.3-2(c),
17   assignment of this action to the San Francisco or Oakland Division of the Court would
18   be appropriate.

19                              **VENUE**

20        5.    Venue is proper in this district under 9 U.S.C. § 10, as this Court is
21   the district court for the district wherein the contested arbitration award was rendered.

22

23            **FACTUAL AND PROCEDURAL BACKGROUND**

24        6.    On June 1, 2006, Wells Fargo Investments, LLC ("WFI") offered to
25   employ Shaffer as a Financial Consultant. That offer was made in writing. Included
26   among the terms of the offer was an opportunity for Shaffer to elect to participate in a
27   forgivable loan program if he satisfied certain conditions:

28            If your best contiguous rolling twelve months of

                              - 2 -

gross commissions ("Best T12") during the eighteen month period ending December 31, 2007 meet or exceed $217,500, you will be eligible for a taxable loan in the amount equal to 50% of your gross commissions generated from this period (the "Loan"). The Loan will be secured by a five year promissory note calling for the Loan to be forgiven and taxed in equal monthly installments over a five-year period. If, for any reason, your employment with "the Firm" (or one of its subsidiaries) terminates before the end of the term of the Loan (i.e. five years from the date of the Loan), it will be your responsibility to repay the outstanding amount due on the Loan as set forth in the promissory note. You must have your branch manager notify the PCS National Sales Recruiting Department in writing when you become eligible for this Loan. The promissory note will be processed at the earliest possible date once the PCS National Sales Recruiting Department has been notified.

7. The written offer also made clear that Shaffer's employment would have "no specified term or length" and that either party had "the right to terminate [his] employment at any time, with or without advance notice and with or without cause."

8. On June 7, 2006, and again on June 9, 2006, Shaffer "accept[ed] and agree[d] to all the terms and conditions of" the written offer by signing the offer in the space provided for his signature. A copy of the accepted employment offer is attached hereto as **Exhibit A**.

9. On January 8, 2008, after satisfying the eligibility requirements to obtain the forgivable loan referred to in the written offer letter he signed, Shaffer received a loan from WFI in the amount of $111,347. In exchange, Shaffer signed a Promissory Note setting forth the terms of the loan. A copy of the Promissory Note is attached hereto as **Exhibit B**.

10. The Promissory Note included the following terms, among others:

–Shaffer agreed to repay the $111,347 plus interest at a rate of 3.58% per annum on the unpaid balance.

–WFI agreed that "the principal and interest due under this Note shall be forgiven and taxed in sixty (60) equal monthly increments commencing on the

- 3 -

1  first day of the month following the disbursement of the proceeds of the Note and
2  continuing each month thereafter."

3          —Shaffer agreed that "[t]he outstanding balance due under this
4  Note shall, immediately become due and payable without notice, protest, presentment,
5  or demand" in the event that Shaffer's employment with WFI terminated "for any
6  reason whatsoever, including, but not limited to involuntary termination . . . ."

7          —Shaffer agreed that to the extent permissible under California
8  law, "any unpaid amounts due under this Note shall constitute a lien immediately
9  reducible to cash on (1) [Shaffer's] final or regular pay and (2) any brokerage accounts
10 held in the name of [Shaffer] or on which [Shaffer] appears with WF . . . until the
11 amount of the lien has been satisfied."

12          —The parties agreed that "[a]ny controversy regarding the
13 validity, enforcement or construction of this Note or any dispute concerning [Shaffer's]
14 employment or termination of employment with WF shall be resolved by arbitration
15 under the then-prevailing Rules of the National Association of Securities Dealers
16 (NASD)."

17      11.    During September of 2009, Shaffer violated WFI's policies and
18 procedures by failing to forward a copy of a client complaint to his supervisor and by
19 charging a client excessive commissions.  As a result of these violations, WFI
20 terminated Shaffer's employment for cause on October 1, 2009.

21      12.    WFI was a member of the Financial Industry Regulatory Authority
22 ("FINRA").  FINRA is the successor to the NASD and is a self-regulatory organization
23 under the Securities Exchange Act.  It is responsible for regulatory oversight of all
24 securities firms that do business with the public.  Pursuant to FINRA rules, when the
25 employment of a registered representative of a member firm is terminated, the firm
26 must notify FINRA of that event on a Uniform Termination Notice for Securities
27 Industry Registration, commonly known as a "Form U-5."

28      13.    In accordance with FINRA's rules, WFI notified FINRA of the

- 4 -
PETITION TO VACATE ARBITRATION AWARD

1  termination of Shaffer's employment on a Form U-5. On the Form U-5, WFI stated
2  the reasons for Shaffer's termination as follows: "VIOLATION OF COMPANY
3  POLICIES: 1) REPRESENTATIVE LACKED JUSTIFICATION FOR CHARGING
4  EQUITY SECURITIES MARKUP THAT EXCEEDED THE FIRM'S FULL
5  SERVICE EQUITY SCHEDULE; AND 2) REPRESENTATIVE RECEIVED A
6  WRITTEN CUSTOMER COMPLAINT AND DID NOT FORWARD TO
7  SUPERVISORY PRINCIPAL."

8           14.    In or about February of 2010, WFI filed with Financial Industry
9  Regulatory Authority ("FINRA") a Statement Of Claim In Arbitration against Shaffer
10  entitled *In the Matter of the Arbitration Between Wells Fargo Investments, LLC and
11  Kenneth C. Shaffer*, FINRA Case No. 10-00773. WFI sought to recover the principal
12  balance due on the Promissory Note plus interest from October 1, 2009. The total
13  amount sought by WFI exceeded $75,000.00.

14          15.    Shaffer filed an answer to the statement of claim with FINRA
15  asserting, among other things, that the Promissory Note was void, unenforceable, and
16  unconscionable. Shaffer also filed a counterclaim against WFI with FINRA in which
17  he alleged, among other things, that WFI had defamed him by making certain
18  statements on his Form U-5.

19          16.    Pursuant to the arbitration agreement in the Promissory Note, WFI
20  and Shaffer submitted their disputes to FINRA arbitration. Pursuant to FINRA rules, a
21  three person FINRA arbitration panel was appointed to hear the dispute.

22          17.    Thereafter, on January 4 and 5, 2011, the arbitrators held hearings
23  and heard evidence from the parties. On January 18, 2011, FINRA served a copy of
24  the arbitrators' written award. A copy of the award is attached hereto as **Exhibit C**.

25          18.    The award denied WFI's claim on the Promissory Note on the
26  ground that the Promissory Note was purportedly "both procedurally and substantively
27  unconscionable." The award also granted Shaffer's claim that WFI had defamed him
28  by purportedly making defamatory statements on the Form U-5. The arbitrators

- 5 -

1  awarded Shaffer compensatory damages for the purported defamation in the sum of
2  $75,000.

3      19.    The arbitrators exceeded their powers by denying WFI's claim for
4  breach of the Promissory Note and by ruling that the Promissory Note is
5  unconscionable. Specifically, the arbitrators' award exhibits a manifest disregard of
6  California law in that the arbitrators were aware that, as matter of California law, the
7  Promissory Note was not unconscionable.

8      20.    The arbitrators also exceeded their powers by granting Shaffer's
9  claim that WFI defamed him on the Form U-5. Specifically, the arbitrators' award
10 exhibits a manifest disregard of California law and a violation of California public
11 policy in that the arbitrators were aware that, as a matter of California law and public
12 policy, statements made on a Form U-5 are absolutely privileged and cannot form the
13 basis of a defamation claim.

14     21.    Section 10(a)(4) of Title 9 of the United States Code provides that
15 the district court may vacate an arbitration award upon application of any party to the
16 arbitration "where the arbitrators exceeded their powers."

17     22.    In or about January of 2011, WFI transferred and assigned to WFA
18 certain assets and liabilities, including the Promissory Note and any liabilities arising
19 from Shaffer's counterclaim. Accordingly, WFA now is, and since the date of the
20 transfer and assignment has been, the owner of the Promissory Note and the party
21 responsible for liabilities arising from Shaffer's counterclaim. WFA is the real
22 property in interest.

23

24     WHEREFORE, Petitioner Wells Fargo Advisors, LLC requests an order:

25         1.    Vacating the arbitration award;

26         2.    Awarding it costs of suit herein incurred, including attorney
27 fees pursuant to the Promissory Note; and

28         3.    Awarding it such other and further relief as the court may

-6-

1    deem proper.

2

3    Dated: March 25, 2011          Fredrick A. Rafeedie

4                                   Samuel E. Endicott
                                     **JONES, BELL, ABBOTT,**
5                                   **FLEMING & FITZGERALD L.L.P.**

6

7                                   By: _____

8                                        Fredrick A. Rafeedie

9                                   Attorneys for Petitioner Wells Fargo Advisors, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

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

Private Client Services
1512 Eureka Road, Suite 300
Roseville, CA 95661-3069

June 1, 2006

Kenneth C. Shaffer
5315 Garlenda Drive
El Dorado Hills, CA 95762

Dear Ken:

I am very pleased to confirm our offer of employment to you with the Private Client Services Group of Wells Fargo Investments, LLC, (WFI), and Wells Fargo Bank, N.A., collectively "the Firm", for the Northern Central California & Nevada Region. Below are the terms of this offer of employment:

| | |
|---|---|
| Start Date: | June 15, 2006 |
| Position: | Financial Consultant |
| Transition Compensation Draw: | $12,000 non-recoverable draw per month for the period beginning June 15, 2006 and ending October 31, 2006. |

$28,080 annual recoverable draw beginning November 1, 2006.

If at the end of the non-recoverable period, the cumulative commissions generated during this period exceed the total cumulative non-recoverable draw paid to you, the excess will be paid at your retail payout rate as a one-time cash bonus on or before November 30, 2006.

If at the end of the non-recoverable period, the cumulative commissions generated during this period *do not* exceed the total cumulative non-recoverable draw paid to you, the deficit will be forgiven.

Transition Compensation Payout Rate:

40% minimum retail payout for the period ending December 31, 2007. This minimum retail payout is an individual grid rate for you from June 15, 2006 to December 31, 2007. During this period, your individual grid rate will be the greater of a 40% minimum retail payout or the corresponding payout rate in accordance with the *PCS Financial Consultant Incentive Compensation Plan*. After December 31, 2007, your minimum retail payout will be based on the standard criteria of the *PCS Financial Consultant Incentive Compensation Plan*. This payout rate is subject to all adjustments and offsets described in the *PCS Financial Consultant Incentive Compensation Plan* such as the discount sharing and small ticket policies.

After December 31, 2007, your compensation will be determined in accordance with the *PCS Financial Consultant Incentive Compensation Plan* in effect at the time.

---

**Investment and Insurance Products:**

▸ Are NOT insured by the FDIC or any other federal government agency    ▸ Are NOT deposits of or guaranteed by the Bank or any Bank affiliate    ▸ May Lose Value

---

Financial consultants are registered representatives of Wells Fargo Investments, LLC (member SIPC), a non-bank affiliate of Wells Fargo & Company.

44900¢

SCANNED AS IS

EXHIBIT __A__ PAGE __8__


*ND012003*

W000088



Private Client Services
1512 Eureka Road, Suite 300
Roseville, CA 95661-3069

**Quarterly
Scorecard
Opportunity:**

After the quarter following the end of your transitional enhanced payout rate, you may be eligible to receive a quarterly bonus opportunity based on your performance against specific goals and management objectives established by your manager at the beginning of each quarter. The scorecard opportunity will be based on the established percentage of your gross production in effect under the Plan during the quarter in which these goals and objectives apply. You could earn more than or less than this percentage depending on your performance against the scorecard goals. This bonus will be paid to you within 45 days of the end of the quarter in which the bonus was earned.

To be eligible for the quarterly bonus opportunity, you must be employed in this position on the last day of the quarter.

**Additional
Incentives:**

If your best contiguous rolling twelve months of gross commissions ("Best T12") during the eighteen month period ending December 31, 2007 meet or exceed $217,500, you will be eligible for a taxable loan in the amount equal to 50% of your gross commissions generated from this period (the "Loan"). The Loan will be secured by a five year promissory note calling for the Loan to be forgiven and taxed in equal monthly installments over a five-year period. If, for any reason, your employment with "the Firm" (or one of its subsidiaries) terminates before the end of the term of the Loan (i.e. five years from the date of the Loan), it will be your responsibility to repay the outstanding amount due on the Loan as set forth in the promissory note. You must have your branch manager notify the PCS National Sales Recruiting Department in writing when you become eligible for this Loan. The promissory note will be processed at the earliest possible date once the PCS National Sales Recruiting Department has been notified.

For the purpose of determining your eligibility to receive the Loan which is based on your achievement of the $217,500 target described above, your total production for the Best T12 period ending December 31, 2007 will include annualized fees (as defined in the PCS Financial Consultant Incentive Compensation Plan ("Plan")) for new fee-based accounts opened during the Best T12 period, but will exclude contributions made to accounts opened prior to the Best T12 period. The fee-based products that will be annualized for purposes of eligibility tracking are those considered fee-based in the Plan. The Loan amount, however, will be based *solely on actual realized commissions reported on the ICOMP system.*

Example: *Best T12 target to receive back-end set at $500,000; Payout = 20%*

| | Gross commissions credited and paid through ICOMP | Gross commissions tracked for the purpose of determining eligibility for back-end bonus/loan | |
|---|---|---|---|
| Fee-based Gross Commissions | $200,000 | $275,000 | ◄ Includes annualized fees for fee-based accounts opened during Best T12 |
| Transactional Gross Commissions | $250,000 | $250,000 | |
| Total | $450,000 | $525,000 | ◄ $500,000 target achieved |
| Bonus amount paid | $90,000 | ($450,000 x 20%) | |

---

**Investment and Insurance Products:**

▶ Are NOT insured by the FDIC or any   ▶ Are NOT deposits of or guaranteed   ▶ May Lose Value
other federal government agency          by the Bank or any Bank affiliate

---

Financial consultants are registered representatives of Wells Fargo Investments, LLC (member SIPC), a non-bank affiliate of Wells Fargo & Company.

**EXHIBIT __A__ PAGE __9__**

W000089



Private Client Services
1512 Eureka Road, Suite 300
Roseville, CA 95661-3069

Please note that revenue generated from trades made in your personal Well Fargo brokerage accounts will not count towards your achievement of the Best T12 production target nor will it be included in the calculation of the Loan amount.

Earning the
Incentives:
All previously stated compensation and eligibility for the bonus/Loan is subject to your continued active employment in good standing through the dates by which the stated non-recoverable draw, recoverable draw, grid payouts, bonuses and additional incentives are earned. In addition, incentive compensation is not earned and eligibility for the bonus/Loan will not be met unless all conditions of the General Incentive Plan Provisions as stated in the current "Provisions for All Plan Participants" document are satisfied.

Trade Errors:
Your incentive compensation will reflect negative adjustments for trade errors losses for the month in which the loss occurs. Trade errors include, but are not limited to all cancels and re-bills resulting from an incorrect trade placed by you or a Sales Assistant assisting you in a client's account. To request a reversal of the negative adjustment, detailed documentation, including a concise explanation on the Chargeback Review Form must be submitted by the Regional Sales Manager for review, approval and forwarding to the Appeals Committee for review and resolution. The Sales Professional is responsible for starting this process and providing necessary detailed documentation.

Benefits:
You will be eligible for general employee benefits, including health insurance, at the beginning of the month following one full month of service. It is imperative that you call the Employee Service Center at 1-877-HR-WELLS (1-877-479-3557) (press option 2, then **) to request your benefit information and enrollment forms. Your enrollment period for benefits is June 15, 2006 through July 14, 2006 with an effective date of coverage of August 1, 2006. Failure to enroll in benefits within the specified time period will be considered the same as waiving benefits.

This offer of employment at WFI is contingent upon your ability to provide on or before the first day of employment, documentation that verifies your identification and eligibility to work in the United States, as outlined by the Immigration Reform and Control Act (IRCA) of 1986. Acceptable documents are outlined in the enclosed IRCA forms. Employment cannot begin until you have presented these documents.)

As a federally insured institution, Wells Fargo Bank, N.A. is unable to employ individuals who have been convicted of a crime of dishonesty or breach of trust, or any person who does not meet our bond requirements. Therefore, our offer of employment is contingent upon the results of your background investigation.

As we discussed, the Series 7, 66 (or equivalent registrations) and California Life Agent Insurance licenses are job requirements of the Financial Consultant position. As a condition of your employment, you must obtain any missing license(s) within 90 days of your hire date, September 13, 2006. This offer is contingent upon satisfactory background and CRD clearance. Please contact Cynthia Zamboukos in the Compliance Department immediately at (415) 396-2254 for information on review courses and tests. For insurance licensing questions call Michelle Corbani at (415) 396-0715.

**Investment and Insurance Products:**
► Are NOT insured by the FDIC or any    ► Are NOT deposits of or guaranteed    ► May Lose Value
   other federal government agency          by the Bank or any Bank affiliate

Financial consultants are registered representatives of Wells Fargo Investments, LLC (member SIPC), a non-bank affiliate of Wells Fargo & Company.

**EXHIBIT A PAGE 10**

W000090



Private Client Services
1512 Eureka Road, Suite 300
Roseville, CA 95661-3069

As a financial services institution we are entrusted with confidential information and the resources of our customers—a trust we take very seriously. Enclosed are several documents you should read immediately. You will need to sign and return the Private Client Services Trade Secrets, Confidential Information and Non-Solicitation Agreement as a condition of employment. Please call me at (916) 788-4562 for further instructions.

Your employment at Wells Fargo has no specified term or length. Both you and Wells Fargo will have the right to terminate your employment at any time, with or without advance notice and with or without cause. This is called "employment at will." No one has the authority to alter this arrangement except in writing, signed by you and an Executive Officer of Wells Fargo who is so authorized by the Director of Human Resources.

Employees must abide by all existing federal and state laws, the rules set forth by regulatory agencies and Wells Fargo's own internal policies and procedures including but not limited to Wells Fargo's Code of Ethics and Business Conduct.

This offer letter, along with the Private Client Services Agreement Regarding Trade Secrets, Confidential Information and Non-Solicitation, constitutes the entire agreement between the parties hereto. No guarantees or promises of any kind, other than these contained herein, have been made concerning leads, referrals, book of business, clients, store or hub assignments, commissions, annual compensation, or any other terms of your employment. Except as explicitly set forth above for at-will employment, no employee of Wells Fargo is authorized to change or modify the terms contained in this letter except in writing and signed by an Executive Vice President of the Private Client Services.

Ken, we hope you will consider the above as our sincere desire to have you as a member of our Private Client Services team. Our goal is to grow these businesses significantly and to be recognized as one of the premier providers of financial products and services. I am convinced that together we can accomplish this. As an indication of your acceptance of our offer, please sign the attached copy of this letter and return it to me.

Sincerely,

John V. Scambray
Regional Sales Manager
Private Client Services

**Investment and Insurance Products:**

► Are NOT insured by the FDIC or any    ► Are NOT deposits of or guaranteed    ► May Lose Value
   other federal government agency             by the Bank or any Bank affiliate

Financial consultants are registered representatives of Wells Fargo Investments, LLC (member SIPC), a non-bank affiliate of Wells Fargo & Company.

**EXHIBIT** A **PAGE** 11     W000091



Private Client Services
1512 Eureka Road, Suite 300
Roseville, CA 95661-3069

By signing and returning a copy of this letter, I accept and agree to all terms and conditions of this offer of employment. Further, I confirm that as of the start date indicated on page one, I will not be employed with any other person, firm or company that competes or conflicts with Wells Fargo, or is otherwise prohibited by Wells Fargo, unless approved in advance.

Accepted and agreed to:

Kenneth C. Shaffer                          6-9-06

                                            Date

cc:    Linda Tompkins
       Christine Blomley, HR Manager, MAC A0105-031
       Local Team Member File
       Employee Records, MAC S4101-166

Enclosed: Private Client Services Agreement Regarding Trade Secrets, Confidential Information
          and Non-Solicitation

**Investment and Insurance Products:**

▶ Are NOT insured by the FDIC or any      ▶ Are NOT deposits of or guaranteed    ▶ May Lose Value
  other federal government agency              by the Bank or any Bank affiliate

Financial consultants are registered representatives of Wells Fargo Investments, LLC (member SIPC), a non-bank affiliate of
Wells Fargo & Company.

**EXHIBIT  A   PAGE  12**

W000092

## PROMISSORY NOTE

In consideration of a loan of one hundred eleven thousand three hundred forty-seven dollars ($111,347), paid to Kenneth C. Shaffer ("the Undersigned"), the Undersigned promises to pay to the order of Wells Fargo Investments, LLC ("WF") at its offices at 420 Montgomery Street, San Francisco, CA 94104, the sum of one hundred eleven thousand three hundred forty seven dollars ($111,347), plus simple interest at a rate of 3.58% per annum on the unpaid balance.

This Note arises from and reflects a debt justly due to WF, which debt is agreed by the Undersigned to be due and payable on demand. The Undersigned may prepay the full amount due at any time without penalty. WF in its sole discretion may demand payment at any time.

The outstanding balance due under this Note shall, immediately become due and payable without notice, protest, presentment, or demand upon the happening of any of the following specified events of default:

1. The termination of the Undersigned's employment with WF (or one of its subsidiaries) for any reason whatsoever, including, but not limited to involuntary termination of the Undersigned;

2. The entry of an order for relief in a bankruptcy case in which the Undersigned is the debtor, or the making of an assignment for the benefit of creditors by the Undersigned, or the inability of the Undersigned to pay the Undersigned's debts generally as they become due, or the liabilities of the Undersigned exceeding the Undersigned's assets, or the appointment of a custodian or receiver for substantially all of the undersigned's property; or

3. The entry of an order against the Undersigned by a court or regulatory agency barring or suspending the Undersigned from the conduct of his/her employment at WF.

The Undersigned promises to advise WF in writing as soon as reasonably possible should any of the above events of default occur.

Except as otherwise set forth above, the principal and interest due under this Note shall be forgiven and taxed in sixty (60) equal monthly increments commencing on the first day of the month following the disbursement of the proceeds of the Note and continuing each month thereafter. Each increment that is forgiven shall include both principal and interest. The compensation and withholding will be reported in the appropriate pay period for each monthly forgiveness. If your earnings for the month are not sufficient to cover the withholding, you may not receive a paycheck until the entire amount of withholding is paid. If any events of default as described above occur, the unpaid and unforgiven portion of the principal amount shall become immediately due and payable to WF, and interest shall continue to accrue on the unpaid balance until the same is fully paid.

**EXHIBIT  B  PAGE  13**

Furthermore, to the extent permissible under California law, the Undersigned agrees that any unpaid amounts due under this Note shall constitute a lien immediately reducible to cash on (1) the Undersigned's final or regular pay and (2) any brokerage accounts held in the name of the Undersigned or on which the Undersigned appears with WF (whether or not such accounts are held as joint account with another or others), until the amount of the lien has been satisfied.

Any controversy regarding the validity, enforcement or construction of this Note or any dispute concerning the Undersigned's employment or termination of employment with WF shall be resolved by arbitration under the then-prevailing Rules of the National Association of Securities Dealers ("NASD"). Any state or federal court having jurisdiction to enter such an award may enter judgment upon any award rendered by the arbitrator(s), and the Undersigned hereby waives personal service of any petitions to confirm such awards, including any papers supporting those petitions, and agree to accept service by regular mail. In the event the NASD for any reason declines to accept jurisdiction of such controversy, it shall then be resolved by a court of competent jurisdiction.

In the event any action or lawsuit is required to be brought for collection of any amount under this Note, the Undersigned promises to pay reasonable attorney's fees and costs, including all fees and costs involved in collection.

This Note shall be interpreted, enforced, and governed by the laws of the State of California. The Undersigned has reviewed the terms of this Note and has participated in its drafting, and agrees that the rule of construction by which ambiguities are resolved against the drafting party shall not apply in any interpretation of it. If any provision or any part of any provision of this Note is for any reason held to be invalid, unenforceable or contrary to public policy, law statute or ordinance, then the remainder of this Agreement shall not be affected thereby and shall remain valid and fully enforceable.

The Undersigned executes this Note without reliance on any oral representations. This Note contains the entire agreement between the Undersigned and WF with respect to the matters addressed in it, and supersedes all prior agreements, written or oral, between the Undersigned and WF on such matters. No other agreement, statement of promise made by any party with respect to any of the matters addressed in this Note will be binding or valid.

The Undersigned understands that the Undersigned is employed on an at-will basis. This Note does not constitute an agreement by WF to employ the Undersigned for a specified period of time, and the Undersigned's employment may be terminated at any time, with or without notice or cause.

The Undersigned agrees that any amounts due under this Note are not consumer debt, and that any debt incurred hereunder is not primarily for personal, family or household purposes, but for business and commercial purposes only.

2

This Note may be modified or amended only if the modification or amendment is made in writing, refers specifically to this Note, and is signed by the Undersigned and an Executive Vice President of WF. Extensions or renewals of the Undersigned's right or liabilities under this Note from time to time, with or without notice, shall not release the Undersigned from liability.

The terms of this Note shall apply to, bind, and inure to the benefit of WF and the Undersigned, and their respective heirs, successors, assigns and legal representatives.

The Undersigned agrees to treat the facts and terms of this Promissory Note as confidential and, as such, will not discuss the Promissory Note with any person except for those individuals who have a legitimate need to know including family members (if applicable), managers and human resources representatives.

Kenneth C Shaffer

Sworn to before me this 4th day of January , 2008

State of California,
County of Sacramento

DANNY KIRK
Comm. # 1541753
NOTARY PUBLIC-CALIFORNIA
Placer County
My Comm. Expires Jan. 6, 2009

Notary Public

3

**EXHIBIT B PAGE 15**

**Award**
**FINRA Dispute Resolution**

In the Matter of the Arbitration Between:

Claimant/Counter-Respondent

Case Number: 10-00773

Wells Fargo Investments, LLC

Respondent/Counter-Claimant

Hearing Site: San Francisco, California

Kenneth C. Shaffer

Nature of the Disputes:

Member vs. Associated Person

Associated Person vs. Member

## REPRESENTATION OF PARTIES

Claimant/Counter-Respondent, Wells Fargo Investments, LLC, hereinafter referred to as "Claimant" or "Wells Fargo": Ronald P. Kane, Esq., Kane & Fischer, Ltd., Chicago, Illinois.

Respondent/Counter-Claimant, Kenneth C. Shaffer, hereinafter referred to as "Respondent" or "Shaffer": Pro se, El Dorado Hills, California.

## CASE INFORMATION

Statement of Claim filed: February 17, 2010.

Claimant signed the Submission Agreement: February 2, 2010.

Statement of Answer filed by Respondent on or about: April 14, 2010.

Counterclaims filed by Respondent on or about: April 30, 2010.

Claimant's Response to Counterclaims filed on or about: May 25, 2010.

Respondent signed the Submission Agreement: April 12, 2010.

**EXHIBIT** C **PAGE** 16

FINRA Dispute Resolution
Arbitration No. 10-00773
Award Page 2 of 5

## CASE SUMMARY

Claimant alleged that Respondent failed to pay money owed on a promissory note that became due and payable upon the termination of Respondent's employment with Claimant. Claimant's claim involves an alleged promissory note signed by Respondent on January 8, 2008 (the "Note").

Unless specifically admitted in his Answer, Respondent denied the allegations made in the Statement of Claim and asserted various affirmative defenses.

In his Counterclaims, Respondent alleged 1) denial of disability benefits; 2) wrongful termination; 3) failure to pay commissions; 4) breach of the covenant of good faith and fair dealing; 5) breach of fiduciary responsibility; 6) violation of Article 75, Bills of Exchange and Promissory Note Act; and 7) libel and slander on his Form U5.

In its response to Respondent's Counterclaims, Claimant denied the allegations made in the Counterclaims.

## RELIEF REQUESTED

In the Statement of Claim, Wells Fargo requested:
1. The principal balance due and owing under the Note in the sum of $74,617.76;
2. Interest at the rate of 3.58% per annum ($7.32 per day) on the principal balance due and owing under the Note from the date of default (October 1, 2009) to the date of payment;
3. Costs, including attorneys' fees as agreed to under the terms of the Note; and
4. Any and all relief the Panel deems just and proper.

In his Answer to the Statement of Claim, Shaffer requested that the promissory note be found void and unenforceable.

In his Counterclaims, Shaffer requested:
1. Compensatory damages in the sum of $170,000.00;
2. Punitive damages in the sum of $830,000.00;
3. An adjustment of entries made to his Form U5;
4. An order that Claimant stop wrongful terminations; inform and counsel terminated employees of their rights and the effect of Form U5 entries, and provide terminated employees T-12 records;
5. Attorneys' fees in the amount of $500.00; and
6. FINRA filing fee costs in the amount of $1,575.00.

In its Answer to Respondent's Counterclaims, Wells Fargo requested denial of the Counterclaims and that Wells Fargo be granted an award against Shaffer for the relief prayed for in the Statement of Claim.

EXHIBIT C  PAGE 17

FINRA Dispute Resolution
Arbitration No. 10-00773
Award Page 3 of 5

## OTHER ISSUES CONSIDERED AND DECIDED

The Arbitrators acknowledge that they have each read the pleadings and other materials filed by the parties.

At the conclusion of Shaffer's case-in-chief, Wells Fargo moved for dismissal of Shaffer's Counterclaims.

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## AWARD

After considering the pleadings, the testimony, and the evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. The Panel finds the subject promissory note to be both procedurally and substantively unconscionable. See Armendariz 24 Cal. 4th 83. Wells Fargo Investments, LLC's claims against Kenneth C. Shaffer are denied in their entirety.

2. Wells Fargo Investments, LLC's motion to dismiss Kenneth C. Shaffer's Counterclaims is denied.

3. The Panel recommends the expungement of the Termination Comment in Section 3 of Kenneth C. Shaffer's Form U5 (CRD #871643), filed by Wells Fargo Investments, LLC on October 16, 2009 and maintained by the Central Registration Depository ("CRD"). The current Termination Comment "VIOLATION OF COMPANY POLICIES: 1) REPRESENTATIVE LACKED JUSTIFICATION FOR CHARGING EQUITY SECURITIES MARKUP THAT EXCEEDED THE FIRM'S FULL SERVICE EQUITY SCHEDULE; AND 2) REPRESENTATIVE RECEIVED A WRITTEN CUSTOMER COMPLAINT AND DID NOT FORWARD TO SUPERVISORY PRINCIPAL" shall be expunged in its entirety and replaced with "VIOLATION OF COMPANY POLICIES REGARDING INTRA-COMPANY EMAILS". The Reason for Termination shall remain listed as "Discharged." The Panel finds the language of the Termination Explanation as written and dated October 16, 2009 to be of a defamatory nature and orders it replaced with the above language.

   The Form U5 is not automatically amended to include the changes indicated above. Kenneth C. Shaffer must forward a copy of this Award to FINRA's Registration and Disclosure Department for the amendments to be incorporated into the Form U5.

4. Wells Fargo Investments, LLC is liable for and shall pay Kenneth C. Shaffer compensatory damages in the sum of $75,000.00 as a result of the defamatory nature of the Form U5 Termination Explanation.

5. The parties shall bear their respective costs, including attorneys' fees.

6. Any and all relief not specifically addressed herein, including punitive damages, is denied.

EXHIBIT __C__ PAGE __18__

FINRA Dispute Resolution
Arbitration No. 10-00773
Award Page 4 of 5

## FEES

Pursuant to the Code, the following fees are assessed:

### Filing Fees
FINRA Dispute Resolution assessed a filing fee* for each claim:

| | |
|---|---|
| Initial claim filing fee | = $1,750.00 |
| Counterclaim filing fee | = $1,575.00 |

*The filing fee is made up of a non-refundable and a refundable portion.

### Member Fees
Member fees are assessed to each member firm that is a party in these proceedings or to the member firm that employed the associated person at the time of the events giving rise to the dispute. Accordingly, as a party, Wells Fargo Investments, LLC is assessed the following:

| | |
|---|---|
| Member surcharge | = $1,100.00 |
| Pre-hearing process fee | = $  750.00 |
| Hearing process fee | = $4,000.00 |

### Discovery-Related Motion Fees
Fees apply for each decision rendered on a discovery-related motion.

One (1) Decision on discovery-related motion on the papers
with one (1) arbitrator @ $200.00 = $  200.00
  Claimant submitted one discovery-related motion

| | |
|---|---|
| Total Discovery-Related Motion Fees | = $  200.00 |

The Panel has assessed $200.00 of the discovery-related motion fees to Wells Fargo.

### Hearing Session Fees and Assessments
The Panel has assessed hearing session fees for each session conducted. A session is any meeting between the parties and the arbitrators, including a pre-hearing conference with the arbitrators, that lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| Two (2) Pre-hearing sessions with Panel @ $1,200.00/session | | | = $2,400.00 |
| Pre-hearing conferences: | September 13, 2010 | 1 session | |
| | December 14, 2010 | 1 session | |
| Four (4) Hearing sessions @ $1,200.00/session | | | = $4,800.00 |
| Hearing Dates: | January 4, 2011 | 2 sessions | |
| | January 5, 2011 | 2 sessions | |

| | |
|---|---|
| Total Hearing Session Fees | = $7,200.00 |

The Panel has assessed $7,200.00 of the hearing session fees to Wells Fargo.

All balances are payable to FINRA Dispute Resolution and are due upon receipt.

**EXHIBIT C PAGE 19**

FINRA Dispute Resolution
Arbitration No. 10-00773
Award Page 5 of 5

## ARBITRATION PANEL

| | | |
|---|---|---|
| Thomas D. Reese | - | Public Arbitrator, Presiding Chairperson |
| Laurel Littman Gothelf | - | Public Arbitrator |
| Marlyn G. McClaskey | - | Non-Public Arbitrator |

## Concurring Arbitrators' Signatures

Thomas D. Reese
Public Arbitrator, Presiding Chairperson

Signature Date

Laurel Littman Gothelf
Public Arbitrator

Signature Date

Marlyn G. McClaskey
Non-Public Arbitrator

Signature Date

January 18, 2011
Date of Service (For FINRA Dispute Resolution use only)

EXHIBIT C PAGE 20

FINRA Dispute Resolution
Arbitration No. 10-00773
Award Page 5 of 5

## ARBITRATION PANEL

| | | |
|---|---|---|
| Thomas D. Reese | - | Public Arbitrator, Presiding Chairperson |
| Laurel Littman Gothelf | - | Public Arbitrator |
| Marlyn G. McClaskey | - | Non-Public Arbitrator |

## Concurring Arbitrators' Signatures

_____
Thomas D. Reese
Public Arbitrator, Presiding Chairperson

_____
Signature Date

_____
Laurel Littman Gothelf
Public Arbitrator

1-13-2011
Signature Date

_____
Marlyn G. McClaskey
Non-Public Arbitrator

_____
Signature Date

January 18, 2011
Date of Service (For FINRA Dispute Resolution use only)

EXHIBIT C PAGE 21