Fredrick A. Rafeedie (State Bar No. 138422)
farafeedie@jonesbell.com
Samuel E. Endicott (State Bar No. 267054)
sendicott@jonesbell.com
**JONES, BELL, ABBOTT,**
**FLEMING & FITZGERALD L.L.P.**
601 South Figueroa Street, 27th Floor
Los Angeles, California 90017-5759
Telephone: (213) 485-1555
Facsimile: (213) 689-1004

Attorneys for Petitioner
Wells Fargo Advisors, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELLS FARGO ADVISORS, LLC, a limited liability company,<br><br>             Petitioner,<br><br>   v.<br><br>KENNETH C. SHAFFER, an individual,<br><br>             Respondent. | **Case No. C11-01500 JCS**<br><br>**NOTICE OF MOTION AND MOTION OF WELLS FARGO ADVISORS, LLC TO VACATE ARBITRATION AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**DATE:    June 3, 2011**<br>**TIME:    9:30 A.M.**<br>**COURTROOM: A, 15th Floor** |

**TO RESPONDENT:**

   **NOTICE IS HEREBY GIVEN** that on June 3, 2011 at 9:30 A.M., or as soon thereafter as counsel may be heard by the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California 94102, in the courtroom of the Honorable Joseph C. Spero, petitioner Wells Fargo Advisors, LLC will and hereby does move the Court pursuant to 9 U.S.C. §10 (a)(4), for an order vacating the arbitration award issued in *In the Matter of the Arbitration Between Wells Fargo Investments, LLC, Claimant/Counter-Respondent, and Kenneth C. Shaffer, Respondent/Counter-Claimant*, FINRA Case No. 10-00773.  The motion is brought on the grounds that the arbitrators exceeded their powers by issuing an award that exhibits

a manifest disregard of California law and violates California public policy. Specifically, although the arbitrators were aware that as a matter of law the Promissory Note executed by respondent Kenneth C. Shaffer is not unconscionable, the arbitrators ignored that law and issued an award ruling that the Promissory Note is unconscionable. In addition, although the arbitrators were aware that as a matter of law and public policy statements made in a Uniform Termination Notice for Securities Industry Registration (commonly known as a "Form U-5") are privileged and cannot form the basis of a defamation claim, the arbitrators ignored that law and public policy and issued an award finding defamation based on statements made in a Form U-5.

This motion is based on this Notice of Motion and Motion, the Petition To Vacate Arbitration Award previously filed in this action, the memorandum of points and authorities attached hereto, the declarations of Ronald P. Kane and Beverly W. Jackson filed concurrently herewith, the pleadings and papers on file herein, and upon such matters as may be presented to the Court at the time of the hearing.

Dated: April 6, 2011

Fredrick A. Rafeedie
Samuel E. Endicott
**JONES, BELL, ABBOTT,
FLEMING & FITZGERALD L.L.P.**

By: / s / Fredrick A. Rafeedie
    Fredrick A. Rafeedie
Attorneys for Petitioner Wells Fargo Advisors, LLC

## TABLE OF CONTENTS

**Page**

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................... 1

I. **ISSUES TO BE DECIDED** ................................................................... 1

II. **STATEMENT OF RELEVANT FACTS** ............................................. 1

III. **LEGAL ARGUMENT** ......................................................................... 5

    A. **The Applicable Legal Standard For Vacating The Arbitration Award** ............................................................................. 5

    B. **The Arbitrators Exceeded Their Powers By Ruling That The Promissory Note Was Unconscionable** ........................................ 6

        1. **As A Matter Of Law, The Promissory Note Was Not A Contract Of Adhesion** ................................................... 9

        2. **As A Matter Of Law, The Promissory Note Is Not Procedurally Unconscionable** ........................................ 10

        3. **As A Matter Of Law, The Promissory Note Is Not Substantively Unconscionable** ...................................... 11

    C. **The Arbitrators Exceeded Their Powers, And Issued A Ruling Vioating Public Policy, By Ruling That WFI Had Defamed Shaffer By Statements Made In The Form U-5** ............................. 13

IV. **CONCLUSION** ................................................................................. 15

# TABLE OF AUTHORITIES

Page

**CASES**

**FEDERAL**

*Banus v. Citigroup Global Markets, Inc.,*
   2010 U.S. Dist. LEXIS 40072 (S.D.N.Y. April 23, 2010) ...............................3, 11

*Federal Savings and Loan Insurance Corp., v. Musacchio,*
   695 F. Supp. 1044 (N.D. Cal. 1988) ..........................................................7, 10, 11

*Kyocera v. Prudential-Bache T Services,*
   341 F. 3d 987 (9th Cir. 2003).................................................................................6

*Luong v. Circuit City Stores, Inc.,*
   368 F.3d 1109 (9th Cir. 2004)................................................................................6

*Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*,
   44 F.3d 826 (9th Cir. 1995)....................................................................................6

*Sacks v. S.E.C.,*
   2011 U.S. App. LEXIS 3463 (9th Cir. Feb. 22, 2011) .......................................3, 4

*Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173,*
   886 F. 2d 1200 (9th Cir. 1989)........................................................................6, 13

**STATE**

*Armendariz v. Foundation Health Psychcare Services, Inc.,*
   24 Cal. 4th 83 (2000).........................................................................6, 9, 10, 11

*Fontani v. Wells Fargo Investments, LLC,*
   129 Cal. App. 4th 719 (2005)....................................................................4, 13, 14

*Hagberg v. California Federal Bank,*
   32 Cal. 4th 350 (2004)..........................................................................................14

*Jefferson v. California Dept. of Youth Authority,*
   28 Cal. 4th 299 (2002)..........................................................................................11

*Koehl v. Verio, Inc.,*
   142 Cal. App. 4th 1313 (2006)....................................................................7, 8, 11

*Powell v. Central Cal. Fed. Sav. & Loan Ass'n,*
   59 Cal. App. 3d 540 (1976)................................................................................8, 9

*Valentine Capital Asset Management, Inc. v. Agahi,*
   174 Cal. App. 4th 606 (2009)................................................................................3

# TABLE OF AUTHORITIES

**Page**

**STATUTES**

**Federal**

9 U.S.C. § 10(a)(4) ............................................................................................................. 5

**State**

Cal. Civ. Code § 47(b)(3) ................................................................................................. 13

**OTHER**

Black's Law Dictonary, p. 1127 (8th ed.) ........................................................................ 10

FINRA Bylaws, Art. V, § 3(a) ........................................................................................... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   ISSUES TO BE DECIDED

The arbitrators issued an award in which they ruled that: (1) the promissory note that respondent executed is unconscionable, and (2) respondent was defamed by certain statements made in his Uniform Termination Notice for Securities Industry Registration (commonly known as a "Form U-5").

The issues to be decided are whether the arbitration award should be vacated because the arbitrators exceeded their powers by (a) ignoring California law establishing that the promissory note that respondent executed is not unconscionable, and/or (b) ignoring California law, and violating California public policy, establishing that statements made in a Form U-5 are privileged and cannot form the basis of a defamation claim.  If the arbitrators exceeded their powers, then the arbitration award should be vacated.

## II.   STATEMENT OF RELEVANT FACTS

On June 1, 2006, Wells Fargo Investments, LLC ("WFI"), a financial services company, offered to employ Kenneth C. Shaffer ("Shaffer") as a Financial Consultant.  That offer was made in writing.  (R. Kane Decl. ¶¶ 9, 10, Exs. F [pp. 88-92], G [pp. 93-97], X [pp. 324-332]).  Included among the terms of the written offer was an opportunity for Shaffer to elect to participate in a forgivable loan program:

> If your best contiguous rolling twelve months of gross commissions ("Best T12") during the eighteen month period ending December 31, 2007 meet or exceed $217,500, you will be eligible for a taxable loan in the amount equal to 50% of your gross commissions generated from this period (the "Loan").  The Loan will be secured by a five year promissory note calling for the Loan to be forgiven and taxed in equal monthly installments over a five-year period.  If, for any reason, your employment with "the Firm" (or one of its subsidiaries) terminates before the end of the term of the Loan (i.e. five years from the date of the

– 1 –

> Loan), it will be your responsibility to repay the outstanding amount due on the Loan as set forth in the promissory note. You must have your branch manager notify the PCS National Sales Recruiting Department in writing when you become eligible for this Loan. The promissory note will be processed at the earliest possible date once the PCS National Sales Recruiting Department has been notified.

(*Id.*, Exs. F [p. 89], G [p. 94]).

The written offer made clear that Shaffer's employment would have "no specified term or length" and that either party had "the right to terminate [his] employment at any time, with or without advance notice and with or without cause." (*Id.*, Exs. F [p. 91], G [p. 96]).

On June 7, 2006, and again on June 9, 2006, Shaffer "accept[ed] and agree[d] to all the terms and conditions of" the written offer by signing the offer in the space provided for his signature. (*Id.*, Exs. F [p. 92], G [p. 97], X [pp. 329-330]).

The forgivable loan program discussed in Shaffer's employment offer is designed to benefit the Financial Consultant and is completely voluntary. If eligible to participate, the forgivable loan program gives the Financial Consultant the option to receive and use the money "up front" while deferring the tax liability over time. If the Financial Consultant elects to take advantage of this forgivable loan program, then he or she executes a promissory note setting forth the terms of the forgivable loan.

On January 8, 2008, after satisfying the eligibility requirements to obtain the forgivable loan referred to in the written offer letter he signed, Shaffer received a loan from WFI in the amount of $111,347. (R. Kane Decl. ¶¶ 12, 27, Exs. I [pp. 102-104], X [pp. 331-336]). In exchange, Shaffer signed a Promissory Note setting forth the terms of the loan. (*Id.*).

The Promissory Note included the following terms, among others:

–Shaffer agreed to repay the $111,347 plus interest at a rate of 3.58% per annum on the unpaid balance.

–WFI agreed that "the principal and interest due under this Note shall

– 2 –

be forgiven and taxed in sixty (60) equal monthly increments commencing on the first day of the month following the disbursement of the proceeds of the Note and continuing each month thereafter."

–Shaffer agreed that "[t]he outstanding balance due under this Note shall, immediately become due and payable without notice, protest, presentment, or demand" in the event that Shaffer's employment with WFI terminated "for any reason whatsoever, including, but not limited to involuntary termination . . . ."

–Shaffer agreed that to the extent permissible under California law, "any unpaid amounts due under this Note shall constitute a lien immediately reducible to cash on (1) [Shaffer's] final or regular pay and (2) any brokerage accounts held in the name of [Shaffer] or on which [Shaffer] appears with WF . . . until the amount of the lien has been satisfied."

–The parties agreed that "[a]ny controversy regarding the validity, enforcement or construction of this Note or any dispute concerning [Shaffer's] employment or termination of employment with WF shall be resolved by arbitration under the then-prevailing Rules of the National Association of Securities Dealers ("NASD")."

During September of 2009, Shaffer violated WFI's policies and procedures by failing to forward a copy of a client complaint to his supervisor and by charging a client excessive commissions.  (R. Kane Decl. ¶¶ 15, 27, Exs. L [p. 110], X [pp. 565-566]).  As a result of these violations, WFI terminated Shaffer's employment on October 1, 2009.  (*Id.*).

WFI is a member of the Financial Industry Regulatory Authority ("FINRA") "which was created in 2007 by the consolidation of National Association of Securities Dealers, Inc., and certain functions of the New York Stock Exchange." *Sacks v. S.E.C.*, 2011 U.S. App. LEXIS 3463, *1 n. 1 (9th Cir. Feb. 22, 2011); *Valentine Capital Asset Management, Inc. v. Agahi*, 174 Cal. App. 4th 606, 608 n. 2 (2009); *Banus v. Citigroup Global Markets, Inc.*, 2010 U.S. Dist. LEXIS 40072 *2 n. 4

(S.D.N.Y. April 23, 2010). FINRA is a self-regulatory organization under the Securities Exchange Act and is " 'responsible for regulatory oversight of all securities firms that do business with the public; professional training, testing and licensing of registered persons; [and] arbitration and mediation . . . .'" *Sacks*, 2011 U.S. App. LEXIS 3463, *1-2 (*quoting* 72 Fed. Reg. 42169, 42170 (Aug. 1, 2007).

Pursuant to FINRA rules, when the employment of a registered representative of a member firm is terminated, the firm must notify FINRA of that event on a Uniform Termination Notice for Securities Industry Registration, commonly known as a "Form U-5." See *Fontani v. Wells Fargo Investments, LLC*, 129 Cal. App. 4th 719, 725-26 (2005); FINRA Bylaws, Art. V, § 3(a). The Form U-5 requires the member firm to state the reasons for the discharge of a registered representative. (R. Kane Decl. ¶ 15, Ex. L [p. 110]).

In accordance with FINRA's rules, WFI notified FINRA of the termination of Shaffer's employment on a Form U-5. On the Form U-5, WFI stated the reasons for Shaffer's termination as follows: "VIOLATION OF COMPANY POLICIES: 1) REPRESENTATIVE LACKED JUSTIFICATION FOR CHARGING EQUITY SECURITIES MARKUP THAT EXCEEDED THE FIRM'S FULL SERVICE EQUITY SCHEDULE; AND 2) REPRESENTATIVE RECEIVED A WRITTEN CUSTOMER COMPLAINT AND DID NOT FORWARD TO SUPERVISORY PRINCIPAL." (R. Kane Decl. ¶ 15, Ex. L [p. 110]).

On October 20, 2009, WFI made a written demand that Schaffer pay the entire principle balance plus accrued interest owed under the terms of the Promissory Note. (R. Kane Decl. ¶ 20, Ex. Q [pp. 135-141]). Shaffer failed to pay the amount requested.

In or about February of 2010, WFI filed with FINRA (successor to the NASD) a Statement Of Claim In Arbitration against Shaffer seeking to recover $74,617.76 in outstanding principal plus accrued interest owed by Shaffer pursuant to the terms of the Promissory Note. (R. Kane Decl. ¶ 4, Ex. A [pp. 6-20]).

Shaffer filed an answer to the statement of claim with FINRA asserting, among other things, that the Promissory Note was void, unenforceable, and unconscionable. Shaffer also filed a counterclaim against WFI in which he alleged, among other things, that WFI had defamed him by making certain statements on the Form U-5. (R. Kane Decl. ¶¶ 5, 6, Exs. B [pp. 21-32], C [pp. 33-52]).

Pursuant to the arbitration agreement in the Promissory Note, WFI and Shaffer submitted their disputes to FINRA arbitration. Pursuant to FINRA rules, a three person FINRA arbitration panel was appointed to hear the dispute.

Thereafter, on January 4 and 5, 2011, the arbitrators held hearings and heard evidence from the parties. On January 18, 2011, FINRA served by mail a copy of the arbitrators' written award. (R. Kane Decl. ¶ 28, Ex. Y [pp. 667-672]).

The award denied WFI's claim on the Promissory Note on the ground that the Promissory Note was purportedly "both procedurally and substantively unconscionable." (*Id*., Ex. Y [p. 669]). The award also granted Shaffer's claim that WFI had defamed him by purportedly making defamatory statements on the Form U-5. The arbitrators awarded Shaffer compensatory damages for the purported Form U-5 defamation in the sum of $75,000. (*Id*.).

On January 1, 2011, WFI transferred and assigned to WFA the Promissory Note and its claims against Shaffer, and WFA assumed and accepted responsibility for all liabilities and obligations arising from both Shaffer's counterclaim against WFI and the arbitrators' award. (B. Jackson Decl. ¶ 7).

### III.     LEGAL ARGUMENT

**A.**   **The Applicable Legal Standard For Vacating The Arbitration Award**

Under the Federal Arbitration Act ("FAA"), a court must vacate an arbitration award where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Ninth Circuit has recognized that

1  arbitrators "exceed their powers" if the award rendered "exhibits a manifest disregard
2  of the law." *Kyocera v. Prudential-Bache T Services*, 341 F. 3d 987, 997 (9th Cir.
3  2003). The Ninth Circuit has also recognized that an arbitration award that "violates
4  public policy" must be vacated. *Stead Motors of Walnut Creek v. Automotive
5  Machinists Lodge No. 1173*, 886 F. 2d 1200, 1209 (9th Cir. 1989).

6        An arbitration award exhibits a manifest disregard of the law where it is
7  "'clear from the record that the arbitrators recognized the applicable law and then
8  ignored it.'" *Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1112 (9th Cir. 2004)
9  (*quoting Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir.
10 1995)). An arbitration award violates public policy where "the policy is one that
11 specifically militates against the relief ordered by the arbitrator." *Stead Motors*, 886 F.
12 2d at 1212-13.

**B.    The Arbitrators Exceeded Their Powers By Ruling That The Promissory Note Was Unconscionable**

      The arbitrators' award ruling that the Promissory Note executed by Shaffer is unconscionable exhibits a manifest disregard of the law by the arbitrators.

      In his answer to WFI's statement of claim, Shaffer alleged, among other things, that the Promissory Note is "unconscionable because it's [sic] terms require repayment of amounts even following discriminatory or retaliatory termination." (R. Kane Decl. ¶ 5, Ex. B [p. 21]).

      In their arbitration award, the arbitrators ruled as follows:

> The Panel finds the subject promissory note to be both procedurally and substantively unconscionable. See Armendariz 24 Cal 4th 83. Wells Fargo Investments, LLC's claims against Kenneth C. Shaffer are denied in their entirety.

(R. Kane Decl. ¶ 28, Ex. Y [p. 669]).

      In *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83 (2000), the case cited and relied upon by the arbitrators in their award, the California Supreme Court held that the "[u]nconscionability analysis begins with an

inquiry into whether the contract is one of adhesion." *Id*. at 113. The California Supreme Court explained that a contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates the subscribing party only to the opportunity to adhere to the contract or reject it." *Id*.

The California Supreme Court went on to explain that if a court finds that the contract at issue is adhesive, it must then determine whether the contract or the provisions thereof are *both* procedurally and substantively unconscionable. *Id*. at 113-14 (emphasis added). "Procedural" unconscionability focuses on "oppression" or "surprise" based on unequal bargaining power. *Id*. "Substantive unconscionability focuses on "overly harsh" or "one-sided" results. *Id*.

WFI provided the arbitrators with two cases addressing the unconscionability issue: *Federal Savings and Loan Insurance Corp., v. Musacchio*, 695 F. Supp. 1044 (N.D. Cal. 1988) and *Koehl v. Verio, Inc.*, 142 Cal. App. 4th 1313 (2006). (R. Kane Decl. ¶¶ 25, 26, Exs. V [pp. 265-273], W [pp. 274-291], X [pp. 643-647]). WFI's counsel explained the holdings in these cases to the arbitrators. (R. Kane Decl. ¶ 27, Ex. X [pp. 643-647]).

In *Musacchio*, the defendants executed promissory notes and then defaulted on those promissory notes by failing to make payments when due. The promissory notes at issue contained the following provision:

> If Borrower does not pay as agreed . . . Borrower will be in default. Upon default, or if Bank reasonably deems itself insecure, *Lender may declare the entire unpaid principal balance and accrued interest immediately due, without notice, and Borrower will then pay that amount.*

695 F. Supp. at 1047, 1048 (emphasis added). The plaintiff holder of the promissory notes notified the defendants that they were in default and demanded repayment of all principal and interest due on the notes. *Id*. at 1048. When the defendants failed to repay the loans, the note holder sued the defendants for, among other things, breach of contract. *Id*. at 1049. As affirmative defenses, the defendants alleged that the notes

were "unconscionable" and constituted "contracts of adhesion." *Id*. at 1052-53. In granting the plaintiff summary judgment on the breach of contract claim, the court rejected defendants' "unconscionability" and "contract of adhesion" defenses. The court held that "there is nothing unconscionable about exercising the contractual right to demand repayment upon default." *Id*. at 1052. With respect to defendants' "contract of adhesion" allegation, the court held that "California courts hold that as a matter of law standardized promissory note forms into which the interest rate and other agreed upon terms are inserted (such as the notes at issue here) are not unenforceable contracts of adhesion." *Id*. at 1053 (citing *Powell v. Central Cal. Fed. Sav. & Loan Ass'n*, 59 Cal. App. 3d 540, 550-51 (1976)).

In *Koehl*, the plaintiff salespersons entered into compensation plan agreements with the defendant employer (an internet service provider) which provided that when a salesperson "booked" an order for services, the employer would advance a commission to the salesperson. The agreements also provided that the employer could recover or "charge back" the commission if certain conditions were not satisfied, such as the order was cancelled prior to receiving three full months of revenue from the customer. The plaintiffs filed a class action alleging that the "charge back" violated various laws. After a court trial, a judgment was entered against the plaintiffs, and the plaintiffs appealed. On appeal, plaintiffs argued that the compensation agreements were unconscionable. In rejecting that argument, the court of appeal found that there was "nothing surprising about the commission plans, and nothing oppressive," and that therefore "there was no procedural unconscionability." *Id*. at 1339. The court of appeal also concluded that there was no "substantive unconscionability" because the contract terms were not "so one-sided" as to "shock the conscience." *Id*. at 1340.

In response to Shaffer's counterclaims, WFI advised the arbitrators that the California Supreme Court has held that "'when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its content, and is estopped from saying that its provisions are

– 8 –

contrary to his intentions or understanding.'" (R. Kane Decl. ¶ 7, Ex. D [p. 59] thereto).

Thus, the arbitrators were clearly aware of California law concerning the doctrine of unconscionability. Under that law, the arbitrators could not find the Promissory Note at issue "unconscionable" unless it (1) constituted a "contract of adhesion," (2) was "procedurally unconscionable," and (3) was "substantively unconscionable."

### 1. As A Matter Of Law, The Promissory Note Was Not A Contract Of Adhesion

As explained by the California Supreme Court case the arbitrators cited in their award, the "[u]nconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz*, 24 Cal. 4th at 113. A contract of adhesion is "a standardized contract, which, *imposed* and drafted by the party of superior bargaining strength, *relegates the subscribing party only to the opportunity to adhere to the contract or reject it*." *Id.* (emphasis added). If a court finds that the contract at issue is adhesive, it must then determine whether the contract or the provisions thereof are both procedurally and substantively unconscionable. *Id.* at 113-14.

As a matter of law, the Promissory Note at issue in this case is not a contract of adhesion. The Promissory Note was not "imposed" on Shaffer, and Shaffer was not relegated to the opportunity to adhere to the Promissory Note or reject it. As clearly explained in the written employment offer that Shaffer accepted, agreed to, and signed, the forgivable loan program was entirely voluntary. (R. Kane Decl. ¶¶ 9, 10, Exs. F [pp. 88-92], G [pp. 93-97]). Shaffer could only participate in the forgivable loan program if he generated a certain amount of commissions and he affirmatively elected to participate in the program. (*Id.*, Exs. F [p. 89], G [p. 94]). The Promissory Note was not "imposed" on Shaffer as a "condition of employment." See *Armendariz*, 24 Cal. 4th at 115 (suggesting that an arbitration agreement is "imposed" on an employee when it stands between the employee and employment because "few

– 9 –

employees are in a position to refuse a job because of an arbitration requirement"). In this case, agreeing to the terms of the Promissory Note did not stand between Shaffer and employment. Shaffer's decision to participate in the forgivable loan program and take a forgivable loan evidenced by the Promissory Note was entirely voluntary. Moreover, as pointed out to the arbitrators, "California courts hold that as a matter of law standardized promissory note forms into which the interest rate and other agreed upon terms are inserted . . . are not unenforceable contracts of adhesion." *Musacchio*, 695 F. Supp. 1044, 1053 (citing *Powell v. Central Cal. Fed. Sav. & Loan Ass'n*, 59 Cal. App. 3d 540, 550-51 (1976)).

In sum, as a matter of law, the Promissory Note at issue here is not a contract of adhesion. The arbitrators were aware of the law and ignored it. Thus, the arbitrators' award finding that the Promissory Note is "unconscionable" exhibits a manifest disregard of the law of "unconscionability." The award should therefore be vacated.

**2.  As A Matter Of Law, The Promissory Note Is Not Procedurally Unconscionable**

"Procedural" unconscionability focuses on "oppression" or "surprise" based on unequal bargaining power. *Armendariz*, 24 Cal. 4th at 113-14. Here, there was nothing oppressive or surprising about the Promissory Note, or the provision requiring Shaffer to repay the loan if his employment terminated.

There was nothing "oppressive" about the loan transaction. "Oppression" is "[t]he act or an instance of unjustly exercising authority or power." Black's Law Dict. p. 1127 (8th ed. 2004). WFI offered an optional forgivable loan program to Shaffer. Shaffer elected to participate in the program and take a forgivable loan based on the terms set forth in the Promissory Note. As a matter of law, WFI did not "unjustly exercis[e] authority or power" over Shaffer in connection with the Promissory Note.

Nor were the terms of the Promissory Note a "surprise" to Shaffer. The written employment offer that Shaffer accepted, agreed to, and signed, stated that "[i]f, for any reason, your employment with 'the Firm' . . . terminates before the end of the term of the Loan (i.e. five years from the date of the Loan), it will be your responsibility to repay the outstanding amount due on the Loan as set forth in the promissory note." (R. Kane Decl. ¶¶ 9, 10, Exs. F [p. 89], G [p. 94]). The Promissory Note Shaffer signed stated that "[t]he outstanding balance due under this Note shall, immediately become due and payable without notice, protest, presentment, or demand" in the event that Shaffer's employment with WFI terminated "for any reason whatsoever, including, but not limited to involuntary termination . . . ." (R. Kane Decl. ¶ 12, Ex. I [p. 102]). Shaffer signed the Promissory Note, and as a matter of law, he is "bound by its content, and is estopped from saying that its provisions are contrary to his intentions or understanding." *Jefferson v. California Dept. of Youth Authority*, 28 Cal. 4th 299, 303 (2002). Where, as here, a person is aware of his or her obligations under a contract and voluntarily agrees to assume those obligations, there is no "procedural unconscionability" as a matter of law. *See Koehl*, 142 Cal. App. 4th at 1340.

In sum, because there was neither oppression nor surprise involved in Shaffer's execution of the Promissory Note, as a matter of law there is no "procedural unconscionability." The arbitrators' award finding that the Promissory Note is "procedurally unconscionable" exhibits a manifest disregard of the law of "unconscionability." The award should therefore be vacated.

### 3. As A Matter Of Law, The Promissory Note Is Not Substantively Unconscionable

"Substantive unconscionability focuses on "overly harsh" or "one-sided" results. *Armendariz*, 24 Cal. 4th at 113-14. As the court in *Musacchio* held, "there is nothing unconscionable about exercising the contractual right to demand repayment upon default." 695 F. Supp. at 1052. In *Banus v. Citigroup Global Markets, Inc.*, 2010

– 11 –

1 U.S. Dist. LEXIS 40072, a case similar to this one, the plaintiff financial consultants
2 signed forgivable loan promissory notes similar to the one in this case. In their case,
3 the loans would be forgiven in equal yearly installments over a term of seven years, but
4 if the financial consultant's employment terminated for any reason, an acceleration
5 clause in the promissory note made the entire principal sum due. *Id*. at *1-4. The
6 financial consultants filed suit alleging, among other things, that the promissory notes
7 and/or the acceleration clause included therein were "unconscionable." *Id*. at *34. In
8 dismissing the financial consultants' claim, the court held as follows:

> Plaintiffs' arguments are at war with the most basic principles of the law of contracts. To begin with, plaintiffs signed the Notes, received the substantial loan proceeds (interest free it should be noted), and had the ability to use those proceeds for any purpose they chose, not least of them being the investment of the loan proceeds to generate interest income or capital gains. There was no lack of consideration or mutuality. Nor is there any problem with the acceleration clause. They are routine and have been upheld repeatedly against arguments that they are unconscionable penalties. In this case, the loan proceeds were paid to the plaintiffs at the start of their employment and were to be repaid out of their annual compensation during the continuation of that employment. There is nothing inequitable about accelerating any unpaid balance where a broker left Smith Barney before fully repaying the loan.

19 *Id*. (footnotes omitted).

20 In this case, as a matter of law, the results of the Promissory Note are not
21 one-sided or overly-harsh. The forgivable loan program is in place for the benefit of
22 the Financial Consultants and is completely voluntary. The program gives the
23 Financial Consultants the option to receive and use the money "up front" while
24 deferring the tax liability over time. If the Financial Consultants elect to take
25 advantage of this forgivable loan program, then he or she executes a promissory note
26 setting forth the terms of the forgivable loan. Shaffer elected to take a $111,347 loan
27 from WFI under the program. In the Promissory Note, WFI agreed that the principal
28 and interest due would be forgiven and taxed in sixty (60) equal monthly increments so

– 12 –

long as Shaffer remained employed by WFI. Shaffer agreed that if his employment terminated for any reason, Shaffer would be obligated to repay the outstanding principal and interest immediately. As a matter of law, there is nothing one-sided or overly-harsh about the results of the Promissory Note. Accordingly, the Promissory Note is not substantively unconscionable.

The arbitrators' award finding that the Promissory Note is "substantively unconscionable" exhibits a manifest disregard of the law of "unconscionability," and should therefore be vacated.

### C. The Arbitrators Exceeded Their Powers, And Issued A Ruling Violating Public Policy, By Ruling That WFI Had Defamed Shaffer By Statements Made In The Form U-5

Under California law, statements made on a Form U-5 by a broker-dealer concerning the reasons for terminating a registered representative are "privileged" and cannot, as a matter of law, form the basis of a defamation claim. *Fontani*, 129 Cal. App. 4th at 734. In *Fontani*, the court held that the Form U-5 "is protected from a suit for defamation under *Civil Code section 47, subdivision (b)*." *Id*. at 735. Civil Code section 47(b)(3) provides that a publication made in an "official proceeding authorized by law" is privileged. The *Fontani* court found that "Wells Fargo's Form U-5 filing was before an official proceeding authorized by law," and "[t]herefore, the document is absolutely privileged under *Civil Code section 47, subdivision (b)*" *Id*. at 734.

In its written Response To Shaffer's counterclaims, WFI specifically advised the arbitrators of the *Fontani* case and its holding:

> Moreover, the statements in Shaffer's Form U-5 are privileged and cannot be the subject of a claim for defamation. California law extends an absolute privilege against defamation claims arising out of statements contained in a Form U-5, because the Form U-5 is a communication made "in anticipation of the bringing of an action or other official proceeding." *See* Fontani v. Wells Fargo Investments, LLC, 129 Cal. App. 4th 719, 725-26 (2004).

(R. Kane Decl. ¶ 7, Ex. D [pp. 67-68]). WFI provided a copy of the *Fontani* case to

– 13 –
NOTICE OF MOTION AND MOTION TO VACATE ARBITRATION AWARD;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  the arbitrators and discussed the holding of the case in detail during closing argument.
2  (R. Kane Decl. ¶¶ 27, 29, Exs. W [p. 463], Z [pp. 673-682]).  The arbitrators' award
3  finding Form U-5 defamation exhibits a manifest disregard of the law set forth in
4  *Fontani*.

5  The arbitrators' ruling that WFI had defamed Shaffer on the Form U-5
6  also violates public policy.  "One of the exceptions to the requirement that courts defer
7  to the awards of arbitrators is the now-settled rule that a court need not, in fact cannot,
8  enforce an award which violates public policy."  *Stead Motors of Walnut Creek*, 886 F.
9  2d at 1209.  The Ninth Circuit has explained this exception as follows:

> A court must both delineate an overriding public policy rooted in something more than "general considerations of supposed public interests," and, of equal significance, it must demonstrate that the policy is one that specifically militates against the relief ordered by the arbitrator.

*Id*. at 1212.

In this case, the public policy at issue is that statements made on a Form U-5 by a broker-dealer are absolutely privileged and the broker-dealer cannot be held liable for defamation based on publishing those statements in the Form U-5.  *Fontani*, 129 Cal. App. 4th at 734.  This policy "'is intended to ""assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing."'"  *Id*. (quoting *Hagberg v. California Federal Bank*, 32 Cal. 4th 350, 360 (2004)).  This public policy clearly "militates against the relief ordered by the arbitrator[s]" (i.e., a finding of U-5 defamation and an order that WFI pay Shaffer $75,000 for that purported defamation).  The arbitrators' award violates overriding public policy rooted in the constitutional right to freedom of speech.  Accordingly, the arbitration award should be vacated.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully submitted that WFA's motion should be granted and that the arbitration award issued in *In the Matter of the Arbitration Between Wells Fargo Investments, LLC, Claimant/Counter-Respondent, and Kenneth C. Shaffer, Respondent/Counter-Claimant*, FINRA Case No. 10-00773 be vacated.

Dated: April 6, 2011
Fredrick A. Rafeedie
Samuel E. Endicott
**JONES, BELL, ABBOTT,
FLEMING & FITZGERALD L.L.P.**

By: / s / Fredrick A. Rafeedie
Fredrick A. Rafeedie
Attorneys for Petitioner Wells Fargo Advisors, LLC