NASD DISPUTE RESOLUTION, INC.

| | |
|---|---|
| IN THE MATTER OF THE ARBITRATION BETWEEN<br><br>WELLS FARGO INVESTMENTS, LLC,<br><br>Claimant<br><br>-and-<br><br>KENNETH S. SHAFFER,<br><br>Respondent. | No. 10-00773 |

## WELLS FARGO INVESTMENTS, LLC' RESPONSE TO SHAFFER'S COUNTERCLAIMS

Claimant Wells Fargo Investments, LLC ("Wells Fargo" or "Claimant"), by its attorneys, Kane & Fischer, Ltd., files its Response to Kenneth S. Shaffer's ("Shaffer" or "Respondent") Counterclaims as follows:

### BACKGROUND

Shaffer worked at Wells Fargo from June 15, 2006 to October 1, 2009. On or about January 4, 2008, Shaffer received a $111,347,00 loan from Wells Fargo, which is evidenced by an unambiguous written Promissory Note ("Note") signed by Shaffer, a copy of which is attached to Wells Fargo's Statement of Claim as Exhibit A. By the clear, specific terms of the Note, Shaffer agreed to repay $111,347,00 plus interest at the rate of 3.58% per annum. Pursuant to the terms of the Note, Wells Fargo agreed to forgive the principal and interest in sixty (60) equal monthly increments commencing on the first day of the month following the disbursement of the proceeds of the Note and continuing each month thereafter, but only if Shaffer has, at all times from the date of the Note, continuously remained employed by Wells Fargo. The Note further provides that:

> [t]he outstanding balance due under this Note shall, immediately become due and payable without notice, protest, presentment, or demand upon the happening of

any of the following specified events of default:

1. The termination of [Shaffer's] employment with [Wells Fargo] (or one of its subsidiaries) *for any reason whatsoever, including, but not limited to involuntary termination of [Shaffer]* [emphasis added]. *See* Exhibit A to Statement of Claim.

Although Wells Fargo had high hopes that Shaffer would grow his business and become a highly successful employee, Shaffer sabotaged his own career with a persistently negative attitude. Shaffer's outlook hampered his production levels at Wells Fargo, despite Wells Fargo's efforts to assist him with his business. As a result of his poor performance, Shaffer was verbally counseled regarding his production deficiencies by his supervisors in an effort to improve his performance, and was also warned that he needed to increase his production.

Subsequently, on September 29, 2009, Shaffer overcharged a customer for several trades by entering a flat commission amount that was in excess of the normal percentage commission rate. When asked by a Wells Fargo compliance officer why he had done so, Shaffer responded with an e-mail stating, in relevant part: "Was I not supposed to do that? We can change it if you want, these are good clients, recently turned 50%, 72% profit on trades. I estimated the cost @ 1000. **I thought gouging was part of our business plan.**" [emphasis added] Shaffer added that he overcharged the customer because he was under pressure to meet his monthly production goals, which he claimed created a "conflict of interest." *Id.* In other words, Shaffer unapologetically justified his decision to overcharge a customer for personal reasons. Further, Shaffer's remark that he thought "gouging was part of our business plan" demonstrated his utter disregard for company policy and standards of professional conduct.

Almost immediately thereafter, Wells Fargo also discovered that on September 11, 2009, apparently with regard to liquidation of a Certificate of Deposit, Shaffer had

2

received an e-mail from a client stating: "Ken, Can you give me a contact to find out **how to get my money back into my account** since you have not responded. If I don't hear back this time, **My attorney will contact you next!** I'm pissed you got me into this and don't respond to my emails!!!" [emphasis added] Wells Fargo's compliance manual (which Shaffer annually affirmed in writing that he had read and would obey) explicitly states that all financial advisors must immediately forward a copy of any written customer complaints to their supervisor. Shaffer, however, failed to forward a copy of the customer complaint he received to Wells Fargo, despite the fact that the customer raised the possibility of legal action. When confronted with this failure to comply with company policy, Shaffer insisted that he did not know e-mails constituted a written complaint, and that he had already addressed the customer's complaint.

As a result of Shaffer's multiple violations of company policy and protocol, Wells Fargo terminated Shaffer's employment for cause on October 1, 2009. As a result of his termination, the remaining principal balance on the Note of $74,617.76 immediately became due and owing on that date. In addition, interest at the rate of 3.58 % per annum ($7.32 per day) has accrued since October 1, 2009, and will continue to accrue until Shaffer has repaid the remaining balance of the loan he received from Wells Fargo. On October 20, 2009, Wells Fargo made a written demand for payment of amounts owed pursuant to the Note. Shaffer has refused, and continues to refuse, to honor his obligations under the outstanding Note. As a result, Wells Fargo has been forced to commence this action.

Accordingly, Wells Fargo has incurred attorneys' fees and other costs which it would not have incurred had Shaffer honored his obligations to Wells Fargo. Pursuant to terms of the Note, Shaffer agreed that he would reimburse Wells Fargo for reasonable

attorneys' fees and costs, including all costs of collection. *See* Exhibit A to the Statement of Claim.

In his "Answer" to the Statement of Claim, Shaffer asserts a number of alleged causes of action against Wells Fargo, none of which relates to the loan extended to him by Wells Fargo or the Note which evidenced the loan and its repayment terms, and accordingly, none of which constitutes a defense to the Note. The separate causes of action that Shaffer purports to assert include: (1) fraud regarding representations allegedly made to him prior to his employment with Wells Fargo; (2) disability discrimination; (3) wrongful termination; (4) breach of the implied covenant of good faith and fair dealing; (5) breach of fiduciary responsibility; (6) defamation; and (7) failure to pay commissions allegedly owed to him by Wells Fargo. Shaffer asserts he is entitled to $1 million in damages as a result of these claims. None of Shaffer's claims, however, have any factual or legal merit. In essence, Shaffer requests the Arbitrators to ignore the clear and unambiguous terms of the Note he signed, and excuse him from his obligations pursuant to the Note. As discussed herein, and as will be demonstrated at the hearing in this matter, Shaffer's allegations do not excuse Shaffer's repayment obligations to Wells Fargo, nor do they provide any basis for any recovery to Shaffer.

Shaffer also raises what appears to be the affirmative defense of promissory estoppel based on an e-mail from his supervisor informing him that "it's business as usual until the end of October" 2009. *See* Answer. As will be explained below, this argument lacks merit. In fact, the e-mail referenced by Shaffer was simply discussing a business issue unrelated to Shaffer's employment. Finally, Shaffer claims that the Note he signed violates article 75 of the Bills of Exchange and Promissory Note Act. However, as is discussed in detail below, the Bills of Exchange and Promissory Note Act is British law,

and therefore completely irrelevant in this arbitration.

Accordingly, the Note should be enforced and Wells Fargo should be awarded the full amount of its claim, including attorneys' fees and costs (as provided for in the Note) incurred to bring this action against Shaffer. The evidence at hearing in this case will demonstrate Wells Fargo's clear right to recover from Shaffer. Wells Fargo categorically denies each and every allegation of wrongdoing that Shaffer has advanced.

## ARGUMENT

Not only are Shaffer's allegations factually inaccurate, but, as discussed more fully below, Shaffer's claims are also legally insufficient.

I. **The Terms of The Promissory Note Should Be Enforced.**

    A. **A Written Contract Is Conclusively Presumed To Contain All Material Terms Of The Agreement Between The Parties. All Prior Negotiations Or Agreements Are "Merged" Into The Written Contract As It Is Written.**

Shaffer's Answer suggests the existence of some other, extraneous or undefined verbal agreements which are separate from the Note, but yet which control the terms of the loan arrangement between the parties. This suggestion is contrary to basic, established contractual precepts. In essence, Shaffer is attempting to establish entirely new agreements regarding the loan between the parties that are different than the agreements embodied by the written contract. Shaffer's position is unsupportable under California law. Once Shaffer signed the Note, thereby accepting its terms, the written agreement superseded any alleged oral arrangements between the parties regarding the loan as a matter of law. This principle, which provides the basis for contract law in this country, is simply undeniable. See Cal. Civil Code § 1625 ("The execution of a contract in writing, whether the law requires it to be written or not, supersedes all negotiations or stipulations concerning its matter which preceded or accompanied the execution of the

instrument."); see also Hotchkiss v. Nelson R. Thomas Agency, 214 P.2d 568, 570 (Cal. Dist. Ct. App. 1950) (written contract is presumed to include "[a]ll material previous oral negotiations regarding the terms and conditions of contract…"); Jennings v. Petrol Corp., 195 P.2d 899, 901 (Cal. Dist. Ct. App. 1948) (where parties have reduced their contract to writing, it is presumed to embody the entire agreement between the parties).

Further, and consistent with the principals stated above, the Note Shaffer signed specifically states that:

> **The Undersigned executes this Note without reliance on any oral representations. This Note contains the entire agreement between the Undersigned and [Wells Fargo] with respect to the matters assigned in it, and supersedes all prior agreements, written or oral, between the Undersigned and [Wells Fargo] on such matters. No other agreement, statement or promise made by any party with respect to any of the matters address in this Note will be binding or valid** [emphasis added].
> *See* Exhibit A to the Statement of Claim, at p.2

In other words, Shaffer expressly agreed, in writing, that the terms of the Note constitute the entirety of any agreement he had concerning the terms of the loan with Wells Fargo, and that he waived whatever oral representations may have been made to him.

    **B.    The Note Shaffer Signed Is Valid And Enforceable Under California Law.**

Shaffer also asserts that the Note he signed is "not enforceable because it violates employment law by penalizing a terminated employee, and is unconscionable because it's [sic] terms require repayment of amounts even following discriminatory or retaliatory termination." *See* Answer. However, Shaffer does not and cannot point to any California law that prohibits the type of promissory note at issue here. In fact, the Note Shaffer signed is neither illegal nor unconscionable under California law. *See, e.g.*, Shamblin v. Berge, 166 Cal.App.3d 118, 124 (Cal.App. 4th Dist. 1985) (parties may contract for anything that is not illegal or against public policy). Moreover, as discussed above,

Shaffer was terminated for cause for repeated violations of Wells Fargo's policies, including overcharging a customer. Accordingly, there was no discriminatory or retaliatory termination.

    C.    **A Party To A Contract Is Under A Duty To Learn, Or Know, The Contents Of A Written Contract Before He Signs It, And Has A Duty To Determine The Obligations Which He Undertakes By Execution Of A Written Agreement.**

Shaffer argues in his Answer that "the details and risks of [the Note]" were never explained or fully understood by me." *See* Answer. This argument lacks merit. As a highly experienced financial advisor, it is defies credibility for Shaffer to claim that he did not understand the Note he signed. In any event, under California law, "when a person with the capacity of reading and understanding an instrument signs it, she is, in the absence of fraud and imposition [regarding the contract], bound by its contents, and is estopped from saying that its provisions are contrary to her intentions or understanding." Jefferson v. California Dep't of Youth Auth., 28 Cal.4th 299, 303 (Cal. Ct. App. 2002) (quoting Palmquist v. Mercer, 272 P.2d 26 (Cal. Dist. Ct. App. 1954)). Indeed, it is a basic tenet of contract law, understood by lawyers and non-lawyers alike, that a party to a contract is under an obligation to protect himself and read what he signs. See, e.g., Heidlbaugh v. Miller et al., 271 P.2d 557, 559 (Cal. Dist. Ct. App. 1954). Shaffer was certainly of legal age and sound mind when he signed the Note and accepted the check for $111,347.00 from Wells Fargo. Accordingly, Shaffer's assertion that he did not fully understand the Note he signed is no excuse for his failure to repay the balance he owes Wells Fargo.

II.    **Shaffer Cannot State a Claim for Fraudulent Inducement.**

In his Answer Shaffer alleges that Wells Fargo misled him into accepting employment with Wells Fargo. Specifically, Shaffer claims that "I joined Wells Fargo

7

Investments... with the oral promise of being introduced to affluent investors and being assigned 15 million dollars worth of affluent client accounts, doubling the size of my existing client base... The promises of affluent account introduction, and the transferring of existing accounts were never completed, creating a situation of detrimental reliance." *See* Answer. None of these allegations have any merit. Although Wells Fargo told Shaffer that he would be given opportunities to receive referrals, Wells Fargo did not promise him that he would be assigned "$15 million worth of affluent client accounts" or that he would "double" the size of his existing client base.

Moreover, even if Shaffer had a viable factual basis for his claims (which he does not), Shaffer will be unable to establish the elements for a cause of action for misrepresentation as required by California law. The elements of fraudulent or intentional misrepresentation, which are required to be pled and proven, are: (1) false representation, concealment, or nondisclosure; (2) knowledge of falsity, or scienter; (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage. Small v. Fritz Companies, Inc., 30 Cal.4th 167, 65 P.3d 1255 (Cal. 2003). Significantly, Shaffer does not allege that Wells Fargo knew that its purported statements to Shaffer were false, or that Wells Fargo harbored any intent to deceive him. Rather, Shaffer alleges only that the purported promises were not fulfilled, which is insufficient as a matter of law to state a claim for fraudulent misrepresentation.

Further, the law is clear that a statement that relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, does not constitute an actionable misrepresentation. *See* Gentry v. Ebay, Inc., 99 Cal.App.4th 816, 735 (Cal. Ct. App. 2002) (misrepresentation must be as to past or existing material fact); Statements to do something in the future and statements of opinion are not actionable.

*See* Gentry, 99 Cal.App.4th at p. 835. Courts have repeatedly held that such statements **are regarded as mere expressions of opinion or mere promises or conjectures upon which the other party has no right to rely.**

Here, each the representations Wells Fargo allegedly made to Shaffer relate to future events and not to existing facts. (Shaffer alleges that Wells Fargo told him he would be "introduced to affluent investors," be "assigned 15 million dollars worth of affluent client accounts," and "doubl[e] the size of [his] existing client base." *See* Answer). Accordingly, the purported representations cannot support a claim for fraud or misrepresentation.

Moreover, to accept Shaffer's position that the statements allegedly made to him affect his obligations to repay the loan would be tantamount to abandoning the clear provisions of the written agreement that Shaffer entered into and restructuring that arrangement, which would contradict the most basic and fundamental principles of contract law. The Note, which is the subject of Wells Fargo's Statement of Claim, does not mention the arrangements that Shaffer has alleged. *See, e.g.,* The People ex rel. Bill Lockyer v. R.J. Reynolds Tobacco Co., 107 Cal. App. 4th 516, 524 (Cal. Dist. Ct. App. 2003) (plain and ordinary meaning given to unambiguous contract provisions and intent is determined from the written terms) (*citing* Coast Plaza Doctors Hosp. v. Blue Cross of California, 83 Cal. App. 4th 677, 684 (Cal. Dist. Ct. App. 2000) and Shaw v. Regents of Univ. of California, 58 Cal. App. 4th 44, 53 (Cal. Dist. Ct. App. 1997)). Shaffer is requesting the arbitrators to discard the unambiguous language in the contract between the parties and to develop a new and different agreement. Such request must be denied, since it would be a clear contradiction to established law.

9

Lastly, any purported fraud claim would be barred by the applicable statute of limitations. According to Shaffer, the alleged misrepresentations occurred prior to his starting employment with Wells Fargo on June 15, 2006. California has a three-year statute of limitations for fraud. See Cal. Code of Civ. Pro. §338(d). As such, the statute of limitations expired on or shortly after June 15, 2009 (when he knew or should have realized that Wells Fargo had not kept its purported promises). Shaffer did not file any claim against Wells Fargo concerning these matters until April 12, 2010. As a result, they are untimely, and are statutorily barred.

III. **Shaffer Does Not Have a Claim for Wrongful Termination.**

Shaffer also claims he was wrongfully terminated. See Answer. This argument lacks merit. As discussed above, Shaffer was terminated for multiple violations of Wells Fargo's policies and procedures, including (1) failure to report a written complaint by a customer; and (2) overcharging a customer. Shaffer freely admits he violated Wells Fargo's policies, and tries to brush them off as "minor violations." See Answer. But as the evidence will show, Shaffer's violations of Wells Fargo policy were serious breaches of protocol, compounded by Shaffer's cavalier attitude when confronted by Wells Fargo. For example, and as discussed above, when Wells Fargo asked him why he overcharged a client, Shaffer tried to argue that the client wouldn't care, and flippantly suggested that he "thought gouging was part of our business plan." See Exhibit 1. Faced with an employee who not only breached its policies and procedures, but showed no remorse whatsoever for having done so, Wells Fargo concluded that it should terminate Shaffer's employment.

Further, Wells Fargo categorically denies that Mary Mortensen told Shaffer that his violations of Wells Fargo policy were "minor" and that they would "not ordinarily

10

have been grounds for termination." *See* Answer. As will be shown at the hearing, it was Shaffer's disregard of Wells Fargo's policies and procedures—as well as his cavalier attitude when confronted with his violations of company policy—that led Wells Fargo to terminate his employment.

Shaffer's claim for wrongful termination is also barred as a matter of law. Wells Fargo and Shaffer had no agreement that Shaffer would remain employed at Wells Fargo for any number of years. To the contrary, Shaffer was an at-will employee who could be discharged for no reason at all. This is specifically set forth in the Note Shaffer signed, which states in relevant part:

> The Undersigned understands that the Undersigned is employed on an at-will basis. This Note does not constitute an agreement by [Wells Fargo] to employ the Undersigned for a specified period of time, and the Undersigned's employment may be terminated at any time, with or without notice or cause. *See* Exhibit A to Statement of Claim, at p.2.

The Note also provides language that Shaffer must pay regardless of the nature of Shaffer's termination:

> The outstanding balance due under this Note shall, immediately become due and payable without notice, protest, presentment, or demand upon the happening of any of the following specified events of default:
>
> 1. The termination of the Undersigned's employment with WF (or one of its subsidiaries) for any reason whatsoever, including but not limited to involuntary termination of the Undersigned. *See* Exhibit A to Statement of Claim, p.1.

Accordingly, the concept of constructive discharge is simply not applicable in this case.

### IV. Shaffer Does Not Have A Cause of Action For Breach of the Implied Covenant of Good Faith and Fair Dealing.

Shaffer also alleges, without any explanation, that "there is... a violation of the implied covenant of good faith and fair dealing." *See* Answer. This argument lacks merit. The scope of conduct prohibited by the implied covenant of good faith and fair

11

dealing is circumscribed by the purposes and express terms of the contract between the parties. Benach v. County of Los Angeles, 149 Cal. App. 4th 836, 855 (Cal. App. 2nd Dist., 2007). The covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which frustrates the other party's rights to the benefits of the contract. Id. The covenant thus cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement. Id.

Here, Shaffer does not and cannot allege that there was a binding contract between himself and Wells Fargo, other than the promissory note he signed. Significantly, the Note does not contain any reference to the purported representations Shaffer claims Wells Fargo made to him during his recruitment. Further, and as discussed above, the Note specifically states that Shaffer can be terminated at any time, with or without notice or cause. Because Wells Fargo did not breach the terms of the Note (or any other contract) when it terminated Shaffer's employment, Shaffer cannot prevail on his claim for breach of the implied covenant of good faith and fair dealing.

### V. Shaffer Is Prohibited From Pursuing A Claim of Employment Discrimination.

Similarly, Shaffer cannot raise any claims of discrimination before FINRA, because Shaffer and Wells Fargo have not agreed to arbitrate such claims before FINRA. As stated by Rule 13201 of the FINRA Code of Arbitration, "A claim alleging employment discrimination, including sexual harassment, in violation of a statute, is not required to be arbitrated under the Code. Such a claim may be arbitrated *only if the parties have agreed to arbitrate it*, either before or after the dispute arose." Shaffer does not and cannot allege that he and Wells Fargo agreed to arbitrate any claim of discrimination before FINRA. Accordingly, FINRA lacks jurisdiction to hear any claims

of discrimination brought by Shaffer against Wells Fargo.

Further, in order to establish a prima facie case of disability discrimination, Shaffer must show that (1) he is disabled within the meaning of the Americans with Disabilities Act ("ADA") and/or California's Fair Employment and Housing Act ("FEHA"); (2) he is otherwise qualified for the position, with or without a reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. Gonzalez v. City of Martinez, 638 F.Supp.2d 1147, 1154 (N.D. Cal. 2009).

As such, the Panel will first have to determine whether Shaffer's laryngeal spasms qualifies as a disability under the statutes at issue. The ADA requires that the alleged disability "substantially limits one or more major life activity." *See* 42 USC s. 12102(1). The extent to which the purported disability limits one or more major life activities is an individualized inquiry. Foster v. City of Oakland, 649 F.Supp.2d 1008, 1016 (N.D. Cal., 2009). However, temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not considered disabilities. *See, e.g.,* Sanders v. Arneson Products, Inc., 91 F.3d 1351, 1354 (9th Cir. 1996). In this case, Shaffer was able to return to work after several weeks and the laryngeal spasms did not alter his ability to work long-term.

Similarly, under FEHA, a "physical disability" includes an anatomical loss that does both of the following: (1) affects a body system, such as digestive; and (2) limits a major life activity. *See* Cal. Gov. Code § 12926(k). An anatomical loss limits a major life activity if it makes the achievement of the major life activity difficult. *See* Cal. Gov. Code § 12926(k)(B)(ii). Major life activities include physical, mental, and social activities and working. *See* Cal. Gov. Code § 12926(k)(B)(iii). However, Shaffer was able to return to work and lead an otherwise normal life after just a few weeks. Simply

13

EXHIBIT D Page 65

put, Shaffer does not and cannot allege that his laryngeal spasms had a long term or permanent impact on his ability to perform his duties. In fact, Shaffer does not claim that he was entitled to any special accommodations as a result of his laryngeal spasms; rather, Shaffer claims only that he should have received paid leave for several seeks while he recuperated from laryngeal spasms. Accordingly, Shaffer's purported ailment does not qualify as a disability.

Even if Shaffer qualifies as disabled under the ADA and FEHA, he cannot show that he suffered an adverse employment action as a result of his disability. His employment ended solely because violated firm policy and protocol.

Finally, even if the parties to this dispute had agreed to arbitrate Shaffer's claim for disability discrimination (which they have not), and Shaffer qualifies as a person with a disability (which he does not) such a claim would also be barred by the statute of limitations. Shaffer claims that Wells Fargo discriminated against him by not paying him during the eight weeks he took off from work in October and November of 2008 due to laryngeal spasms. *See* Answer and attachments thereto. Under California law, however, a plaintiff alleging employment discrimination is required to file a complaint before the California Department of Fair Employment & Housing ("CDFEH") before he can file a civil action. *See* California Gov't Code section 12960. This complaint must be filed within one year of the alleged employment discrimination. *Id.*[1] Upon filing this complaint with the CDFEH, the plaintiff can request that the CDFEH investigate his claim, or in the

---

[1] The statute of limitations period is even shorter for federal claims. Federal law requires that a plaintiff who wants to pursue a claim for employment discrimination in federal court must first file a cause of action with the equal employment opportunity commission ("EEOC"). The plaintiff must file a complaint with the EEOC within 180 days of the date he knew (or reasonably should have known) of the alleged discrimination. USC 2000e-5(e). This statute of limitations period is extended to 300 days where the plaintiff has already initiated an action with a State or local agency. *Id.*. Shaffer has yet to file a complaint with the EEOC. Accordingly, he is barred from pursuing a claim for employment discrimination in federal court and the EEOC.

alternative, state his intention to file a civil action, in which case the plaintiff has one year from the date the complaint is filed before the CDFEH to file a civil action in a court of law. *Id.* Shaffer, however, never filed a complaint against Wells Fargo for employment discrimination with the CDFEH (or in court). Accordingly, he is barred from pursuing a claim for employment discrimination against Wells Fargo.

VI. **Shaffer's Defamation Claims Are Barred As A Matter of Law.**

Shaffer's claims for defamation must also fail. Defamation involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damages. London v. Sears, Roebuck & Co., 619 F.Supp.2d 854, 864 (N.D. CA., 2009). Shaffer argues that Wells Fargo's statements on his Form U-5 are defamatory. *See* Answer. Wells Fargo denies that it made any defamatory statements about Shaffer. Shaffer's Form U-5 states, in relevant part, that the reason for Shaffer's termination of employment from Wells Fargo was:

> Violation of company policies: 1) Representative lacked justification for charging equity securities markup that exceeded the firm's full service equity schedule; and 2) representative received a written customer complaint and did not forward to supervisory principal.

As discussed above, Shaffer does not and cannot deny that he overcharged a customer and failed to forward a copy of a written customer complaint to his supervisor, in violation of Wells Fargo policy. In other words, each of the statements on the Form U-5 are true, and therefore cannot be defamatory. Shaffer's assertion that he did not know or understand Wells Fargo policies is not an excuse, and certainly does not render the Form U-5 defamatory. This is particularly true in light of the fact that Shaffer acknowledged, in writing, that he had read Wells Fargo's compliance manual and would obey it.

Moreover, the statements in Shaffer's Form U-5 are privileged and cannot be the subject of a claim for defamation. California law extends an absolute privilege against

defamation claims arising out of statements contained in a Form U-5, because the Form U-5 is a communication made "in anticipation of the bringing of an action or other official proceeding." *See* Fontani v. Wells Fargo Investments, LLC, 129 Cal.App.4th 719, 732 (2004). Accordingly, the statements on Shaffer's Form U-5 are protected from liability under California Civil Code section 47(c). Fontani, 129 Cal.App.4th at 734.

VII. **Wells Fargo Does Not Owe Shaffer Any Commissions.**

Shaffer complains that Wells Fargo withheld compensation from him. *See* Answer. Wells Fargo denies that it withheld any commissions from him, or that he was treated unfairly. As the evidence will show, Wells Fargo tried to help Shaffer succeed, but his own negative attitude and lack of respect for authority undermined his ability to succeed.

VIII. **Shaffer's Claim of Breach of Fiduciary Responsibility Must Fail.**

Shaffer throws in a one-sentence claim for breach of fiduciary responsibility that lacks any factual or legal basis. *See* Answer. Indeed, Shaffer does not even specify what purported fiduciary duty Wells Fargo violated. Accordingly, it is difficult to respond to this claim. Moreover, there is no basis under California law for any claim of breach of fiduciary responsibility by Wells Fargo. Indeed, it is Shaffer, the employee, who owed a duty of fiduciary responsibility to Wells Fargo, his employer. In any event, to the extent that it had any fiduciary responsibilities to Shaffer (which it did not), Wells Fargo denies that it breached them.

IX. **Shaffer's Affirmative Defenses Lack Merit.**

Finally, Shaffer raises two affirmative defenses, neither of which has any merit. First, Shaffer asserts that Wells Fargo was prohibited from terminating him under the doctrine of promissory estoppel because of an e-mail sent by his supervisor Janet Krug to

16

EXHIBIT D   Page 68

him and Christopher Obenchain (another financial advisor under Ms. Krug) on September 23, 2009, roughly a week before Wells Fargo terminated Shaffer's employment. This e-mail, which was attached as an (unspecified) exhibit to Shaffer's Answer, states:

> Hi Ken and Chris: I have received word that Jim U'Ren whom we had slated to assume coverage of the Micron store will delay his return from medical LOA per his doctor's orders until Nov. 1, 2009. Because of that, we will delay the store coverage changes until he returns. I do apologize for the confusion. So, it's business as usual until the end of October! Thanks.

Shaffer apparently asserts that because Ms. Krug said "it's business as usual until the end of October," Wells Fargo was promissorily estopped from terminating his employment until the end of October 2009. This argument lacks merit. Promissory estoppel is an equitable doctrine to allow enforcement of a promise that would otherwise be unenforceable. In order to prevail on a cause of action for promissory estoppel, Shaffer must plead and prove that: (1) a promise clear and unambiguous in its terms was made; (2) he relied on the promise; (3) his reliance on the promise was both reasonable and foreseeable; and (4) he was injured by his reliance on the purported promise. US Ecology, Inc. v. State of California, et. al., 129 Cal.App.4th 887, 905 (Cal. 2005). Shaffer cannot meet any of these elements.

The clear and unambiguous meaning of Ms. Krug's e-mail is that Shaffer and Christopher Obenchain would continue their coverage of the Micron store until November 1, 2009. There is no reference or indication that Wells Fargo was guaranteeing to Shaffer that his employment would not be terminated until November 1, 2009. It defies credibility for Shaffer to claim he interpreted this e-mail as some sort of guarantee of continued employment, especially when (1) the Note he signed specifically states that his employment is terminable at will, and (2) the e-mail at issue states that "it's

17

business as usual" only until the end of October 2009. Accordingly, any purported "reliance" on this e-mail by Shaffer was not only unreasonable, it was not foreseeable. Moreover, this e-mail was sent before Shaffer overcharged one of Wells Fargo's customers for a trade (and before Shaffer demonstrated his cavalier attitude toward this very serious offense).

Finally, Shaffer's assertion that the Note he signed violates article 75 of the Bills of Exchange and Promissory Note Act is a red herring. The Bill of Exchange and Promissory Note Act is British law, not California law. Accordingly, it has no application to this case.

## CONCLUSION

Wells Fargo Investments, LLC respectfully requests that the Answer of Shaffer be denied, and that it be granted an award against Shaffer for the relief prayed for in the Amended Statement of Claim.

Respectfully submitted,

WELLS FARGO INVESTMENTS, LLC

By: _____
One of its Attorneys

Diane C. Fischer
Ronald P. Kane
Jin-Ho Chung
KANE & FISCHER, LTD.
208 South LaSalle Street, Suite 1800
Chicago, IL 60604
312 422-7200
FAX 312 422-7217

109178v1

## CERTIFICATE OF SERVICE

I, Jin-Ho Chung, an attorney, certify that I caused a copy of Wells Fargo's Investments, LLC's Answer to Kenneth Shaffer's Counterclaim to be served on May 24, 2010, as indicated below, upon:

Kenneth Shaffer
5315 Garlenda Dr.
El Dorado Hills, CA 95762
*(via Federal Express)*

Ianthe Philips
FINRA Case Administrator
300 South Grand Avenue
Suite 900
Los Angeles, CA 90071-3135
*(via Federal Express)*

Jin-Ho Chung