# FORM U4
## UNIFORM APPLICATION FOR SECURITIES INDUSTRY REGISTRATION OR TRANSFER

**U4 - RELICENSE**
**06/15/2006**

Rev. Form U4 (10/2005)

### 1. GENERAL INFORMATION

| First Name: | Middle Name: | Last Name: | Suffix: |
|---|---|---|---|
| KENNETH | CRAIG | SHAFFER | |

**Firm CRD #:** 10582

**Firm Name:** WELLS FARGO INVESTMENTS, LLC

**Employment Date** (MM/DD/YYYY): 06/15/2006

**Firm Billing Code:** 15223-CN

**Individual CRD #:** 871643

**Individual SSN:** ███████████

**Do you have an independent contractor relationship with the above named firm?:**

○ Yes  ● No

**Office of Employment Address**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Address | Private Residence | Type of Office | Start Date | End Date |
|---|---|---|---|---|---|---|---|
| 212237 | | 15223-CN | 25015 BLUE RAVINE RD<br><br>FOLSOM , CA 95630 UNITED STATES | N | Located At | 06/15/2006 | |

Rev. Form U4 (10/2005)

### 2. FINGERPRINT INFORMATION

Electronic Filing Representation

● By selecting this option, I represent that I am submitting, have submitted, or promptly will submit to the appropriate *SRO* a fingerprint card as required under applicable *SRO* rules; or

Fingerprint card barcode

○ By selecting this option, I represent that I have been employed continuously by the *filing firm* since the last submission of a fingerprint card to CRD and am not required to resubmit a fingerprint card at this time; or,

○ By selecting this option, I represent that I have been employed continuously by the *filing firm* and my fingerprints have been processed by an *SRO* other than NASD. I am submitting, have submitted, or promptly will submit the processed results for posting to CRD.

Exceptions to the Fingerprint Requirement

○ By selecting one or more of the following two options, I affirm that I am exempt from the federal fingerprint requirement because I/*filing firm* currently satisfy(ies) the requirements of at least one of the permissive exemptions indicated below pursuant to Rule 17f-2 under the Securities Exchange Act of 1934, including any notice or application requirements specified therein:

W000126

☐ Rule 17f-2(a)(1)(i)

☐ Rule 17f-2(a)(1)(iii)

**Investment Adviser Representative Only Applicants**

○ I affirm that I am applying only as an investment adviser representative and that I am not also applying or have not also applied with this *firm* to become a broker-dealer representative. If this radio button/box is selected, continue below.

   ○ I am applying for registration only in *jurisdictions* that do not have fingerprint card filing requirements, or

   ○ I am applying for registration in *jurisdictions* that have fingerprint card filing requirements and I am submitting, have submitted, or promptly will submit the appropriate fingerprint card directly to the *jurisdictions* for processing pursuant to applicable *jurisdiction* rules.

---

Rev. Form U4 (10/2005)

## 3. REGISTRATIONS WITH UNAFFILIATED FIRMS

Some *jurisdictions* prohibit "dual registration," which occurs when an individual chooses to maintain a concurrent registration as a representative/agent with two or more *firms* (either BD or IA *firms*) that are not affiliated. *Jurisdictions* that prohibit dual registration would not, for example, permit a broker-dealer agent working with brokerage *firm* A to maintain a registration with brokerage *firm* B if *firms* A and B are not owned or controlled by a common market. Before seeking a dual registration status, you should consult the applicable rules or statutes of the *jurisdictions* with which you seek registration for prohibitions on dual registrations or any liability provisions.

Please indicate whether the individual will maintain a "dual registration" status by answering the questions in this section. (Note: An individual should answer 'yes' only if the individual is currently registered and is seeking registration with a *firm* (either BD or IA) that is not affiliated with the individual's current employing *firm*. If this is an initial application, an individual must answer 'no' to these questions; a "dual registration" may be initiated only after an initial registration has been established.)

Answer "yes" or "no" to the following questions:                                      **Yes  No**

A. Will *applicant* maintain registration with a broker-dealer that is not *affiliated* with the *filing firm*? If you answer "yes," list the *firm*(s) in Section 12 (Employment History).                                       ○    ◉

B. Will *applicant* maintain registration with an investment adviser that is not *affiliated* with the *filing firm*? If you answer "yes," list the *firm*(s) in Section 12 (Employment History).                                       ○    ◉

---

W000127

---

Rev. Form U4 (10/2005)

## 4. SRO REGISTRATIONS

**Check appropriate *SRO* Registration requests.**
**Qualifying examinations will be automatically scheduled if needed. If you are only scheduling or re-scheduling an exam, skip this section and complete Section 7**

## (EXAMINATION REQUESTS).

| REGISTRATION CATEGORY | NASD | NYSE | AMEX | BSE | NSX | PCX | CBOE | CHX | PHLX | ISE |
|---|---|---|---|---|---|---|---|---|---|---|
| OP - Registered Options Principal (S4) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| IR - Investment Company and Variable Contracts Products Rep. (S6) | ☐ | ☐ | ☐ | | ☐ | | | | | |
| GS - Full Registration/General Securities Representative (S7) | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| TR - Securities Trader (S7) | | ☐ | ☐ | | ☐ | | | | | |
| TS - Trading Supervisor (S7) | | ☐ | ☐ | | ☐ | | | | | |
| SU - General Securities Sales Supervisor (S9 and S10) | ☐ | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | |
| BM - Branch Office Manager (S9 and S10) | | ☐ | ☐ | | | | | | | |
| SM - Securities Manager (S12) | | ☐ | | | | | | | | |
| AR - Assistant Representative/Order Processing (S11) | ☐ | | | | ☐ | | | ☐ | | |
| REGISTRATION CATEGORY | NASD | NYSE | AMEX | BSE | NSX | PCX | CBOE | CHX | PHLX | ISE |
| IE - United Kingdom – Limited General Securities Registered Representative (S17) | ☐ | ☐ | ☐ | | | ☐ | | | ☐ | |
| DR - Direct Participation Program Representative (S22) | ☐ | ☐ | ☐ | | ☐ | | | ☐ | | |
| GP - General Securities Principal (S24) | ☑ | | | ☐ | ☐ | ☐ | | ☐ | | |
| IP - Investment Company and Variable Contracts Products Principal (S26) | ☐ | | ☐ | | ☐ | | | | | |
| FA - Foreign Associate | ☐ | | | | | | | | | |
| FN - Financial and Operations Principal (S27) | ☐ | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | |
| FI - Introducing Broker-Dealer/Financial and Operations Principal (S28) | ☐ | | | | ☐ | | | ☐ | | |
| RS - Research Analyst (S86, S87) | ☐ | ☐ | | | | | | | | |
| RP - Research Principal | ☐ | | | | | | | | | |
| DP - Direct Participation Program Principal (S39) | ☐ | | ☐ | | ☐ | | | ☐ | | |
| OR - Options Representative (S42) | ☐ | | | ☐ | | | | ☐ | | |
| REGISTRATION CATEGORY | NASD | NYSE | AMEX | BSE | NSX | PCX | CBOE | CHX | PHLX | ISE |
| MR - Municipal Securities Representative (S52) | ☐ | ☐ | ☐ | | ☐ | | | ☐ | | |
| MP - Municipal Securities Principal | ☐ | | ☐ | | ☐ | | | | | |

W000128

| REGISTRATION CATEGORY | NASD | NYSE | AMEX | BSE | NSX | PCX | CBOE | CHX | PHLX | ISE |
|---|---|---|---|---|---|---|---|---|---|---|
| (S53) | | | | | | | | | | |
| CS – Corporate Securities Representative (S62) | ☐ | | ☐ | | ☐ | | | ☐ | | |
| RG – Government Securities Representative (S72) | ☐ | | | | | | | | | |
| PG – Government Securities Principal (S73) | ☐ | | | | | | | | | |
| SA – Supervisory Analyst (S16) | ☐ | ☐ | ☐ | | | | | | | |
| PR – Limited Representative – Private Securities Offerings (S82) | ☐ | | ☐ | | | | | | | |
| CD – Canada-Limited General Securities Registered Representative (S37) | ☐ | ☐ | ☐ | | | ☐ | ☐ | | | |
| CN – Canada-Limited General Securities Registered Representative (S38) | ☐ | ☐ | ☐ | | | ☐ | ☐ | | | |
| **REGISTRATION CATEGORY** | **NASD** | **NYSE** | **AMEX** | **BSE** | **NSX** | **PCX** | **CBOE** | **CHX** | **PHLX** | **ISE** |
| ET – Equity Trader (S55) | ☐ | | ☐ | | ☐ | | | | | |
| AM – Allied Member | | ☐ | ☐ | | | ☐ | | | | |
| AP – Approved Person | | ☐ | ☐ | | | | | | | |
| LE – Securities Lending Representative | | ☐ | ☐ | | | | | | | |
| LS – Securities Lending Supervisor | | ☐ | ☐ | | | | | | | |
| ME – Member Exchange | | ☐ | ☐ | ☐ | ☐ | | | | ☐ | |
| FE – Floor Employee | | ☐ | ☐ | ☐ | ☐ | | | | | |
| OF – Officer | | ☐ | ☐ | | ☐ | | | | | |
| CO – Compliance Official (S14) | | ☐ | | | | | | | | |
| **REGISTRATION CATEGORY** | **NASD** | **NYSE** | **AMEX** | **BSE** | **NSX** | **PCX** | **CBOE** | **CHX** | **PHLX** | **ISE** |
| CF – Compliance Official Specialist (S14A) | | ☐ | | | | | | | | |
| PM – Floor Member Conducting Public Business | | ☐ | ☐ | | | | | | | |
| PC – Floor Clerk Conducting Public Business | | ☐ | ☐ | | | | | | | |
| SC – Specialist Clerk (S21) | | ☐ | ☐ | | | | | | | |
| TA – Trading Assistant (S25) | | ☐ | | | | | | | | |
| FP – Municipal Fund (S51) | ☐ | | | | | | | | | |
| IF – In-Firm Delivery Proctor | ☐ | ☐ | | | | | | | | |
| MM – Market Maker | | | | | | ☐ | | | | |
| **REGISTRATION CATEGORY** | **NASD** | **NYSE** | **AMEX** | **BSE** | **NSX** | **PCX** | **CBOE** | **CHX** | **PHLX** | **ISE** |
| FB – Floor Broker | | | | | | ☐ | | | | |

W000129

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MB - Market Maker acting as Floor Broker | | | | | | □ | | | | | |
| OT - Off-Floor Trader | | | | | | □ | | | | | |
| MT - Market Maker Authorized Trader | | | | | | □ | | | | | |
| Other _____ (Paper Form Only) | | | | | | | | | | | |

Rev. Form U4 (10/2005)

## 5. JURISDICTION REGISTRATION

**Check appropriate *jurisdiction(s)* for broker-dealer agent (AG) and/or investment adviser representative (RA) registration requests.**

| JURISDICTION | AG | RA | JURISDICTION | AG | RA | JURISDICTION | AG | RA | JURISDICTION | AG | RA |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | □ | □ | Illinois | □ | □ | Montana | □ | □ | Puerto Rico | □ | □ |
| Alaska | □ | □ | Indiana | □ | □ | Nebraska | □ | □ | Rhode Island | □ | □ |
| Arizona | □ | □ | Iowa | □ | □ | Nevada | □ | □ | South Carolina | □ | □ |
| Arkansas | □ | □ | Kansas | □ | □ | New Hampshire | □ | □ | South Dakota | □ | □ |
| California | ☑ | ☑ | Kentucky | □ | □ | New Jersey | □ | □ | Tennessee | □ | □ |
| Colorado | □ | □ | Louisiana | □ | □ | New Mexico | □ | □ | Texas | □ | □ |
| Connecticut | □ | □ | Maine | □ | □ | New York | □ | □ | Utah | □ | □ |
| Delaware | □ | □ | Maryland | □ | □ | North Carolina | □ | □ | Vermont | □ | □ |
| District of Columbia | □ | □ | Massachusetts | □ | □ | North Dakota | □ | □ | Virginia | □ | □ |
| Florida | □ | □ | Michigan | □ | □ | Ohio | ☑ | □ | Washington | □ | □ |
| Georgia | □ | □ | Minnesota | □ | □ | Oklahoma | □ | □ | West Virginia | □ | □ |
| Hawaii | □ | □ | Mississippi | □ | □ | Oregon | □ | □ | Wisconsin | □ | □ |
| Idaho | □ | □ | Missouri | □ | □ | Pennsylvania | ☑ | □ | Wyoming | □ | □ |

**AGENT OF THE ISSUER REGISTRATION (AI)** □ **Indicate 2 letter *jurisdiction* code (s):** _____

Rev. Form U4 (10/2005)

## 6. REGISTRATION REQUESTS WITH AFFILIATED FIRMS

Will *applicant* maintain registration with *firm*(s) under common ownership or control with the filing *firm*?
If "yes", fill in the details to indicate a request for registration with additional *firm*(s).

○ Yes        ◉ No

No Information Filed

Rev. Form U4 (10/2005)

## 7. EXAMINATION REQUESTS

**Scheduling or Rescheduling Examinations** Complete this section only if you are scheduling or

W000130

rescheduling an examination or continuing education session. Do not select the Series 63 (S63) or Series 65 (S65) examinations in this section if you have completed Section 5 (JURISDICTION REGISTRATION) and have selected registration in a *jurisdiction*. If you have completed Section 5 (JURISDICTION REGISTRATION), and requested an AG registration in a *jurisdiction* that requires that you pass the S63 examination, an S63 examination will be automatically scheduled for you upon submission of this Form U4. If you have completed Section 5 (JURISDICTION REGISTRATION), and requested an RA registration in a *jurisdiction* that requires that you pass the S65 examination, an S65 examination will be automatically scheduled for you upon submission of this Form U4.

| ☐ S3 | ☐ S11 | ☐ S22 | ☐ S32 | ☐ S46 | ☐ S66 |
|------|-------|-------|-------|-------|-------|
| ☐ S4 | ☐ S12 | ☐ S23 | ☐ S33 | ☐ S51 | ☐ S72 |
| ☐ S5 | ☐ S14 | ☐ S24 | ☐ S37 | ☐ S52 | ☐ S73 |
| ☐ S6 | ☐ S14A | ☐ S25 | ☐ S38 | ☐ S53 | ☐ S82 |
| ☐ S7 | ☐ S15 | ☐ S26 | ☐ S39 | ☐ S55 | ☐ S86 |
| ☐ S7A | ☐ S16 | ☐ S27 | ☐ S42 | ☐ S62 | ☐ S87 |
| ☐ S9 | ☐ S17 | ☐ S28 | ☐ S44 | ☐ S63 | ☐ S101 |
| ☐ S10 | ☐ S21 | ☐ S30 | ☐ S45 | ☐ S65 | ☐ S106 |
| | | ☐ S31 | | | ☐ S201 |

| Other _____ (Paper Form Only) |
|---|

| OPTIONAL: Foreign Exam City | Date (MM/DD/YYYY) _____ |
|---|---|

Rev. Form U4 (10/2005)

## 8. PROFESSIONAL DESIGNATIONS

Select each designation you currently maintain.

☐ **Certified Financial Planner**

☐ **Chartered Financial Consultant (ChFC)**

☐ **Personal Financial Specialist (PFS)**

☐ **Chartered Financial Analyst (CFA)**

☐ **Chartered Investment Counselor (CIC)**

Rev. Form U4 (10/2005)

## 9. IDENTIFYING INFORMATION/NAME CHANGE

| First Name: KENNETH | Middle Name: CRAIG | Last Name: SHAFFER |
|---|---|---|
| Suffix: | Date of Birth (MM/DD/YYYY) ███████ | |
| State/Province of Birth CALIFORNIA | Country of Birth | Sex ⊙ Male ○ Female |
| Height (ft) 6 | Height (in) 2 | Weight (lbs) 210 |
| Hair Color Gray or Partially Gray | Eye Color Blue | |

W000131

| | | Rev. Form U4 (10/2005) |
|---|---|---|
| | **10. OTHER NAMES** | |
| | No Information Filed | |

| | | Rev. Form U4 (10/2005) |
|---|---|---|
| | **11. RESIDENTIAL HISTORY** | |

Starting with the current address, give all addresses for the past 5 years. Report changes as they occur.

| From | To | Street | City | State | Country | Postal Code |
|---|---|---|---|---|---|---|
| 01/2004 | PRESENT | 5315 GARLENDA DR | EL DORADO HILLS | CA | USA | 95762 |
| 01/1994 | 01/2004 | 3345 THORNHILL DRIVE | EL DORADO HILLS | CA | UNITED STATES | 95682 |
| 09/1983 | 01/1994 | 3375 BRITTAN ST. #4 | SAN CARLOS | CA | UNITED STATES | 94070 |
| 09/1983 | 09/1983 | 31348 SANTA ANA WAY | UNION CITY | CA | UNITED STATES | 94587 |

| | | Rev. Form U4 (10/2005) |
|---|---|---|
| | **12. EMPLOYMENT HISTORY** | |

Provide complete employment history for the past 10 years. Include the *firm*(s) noted in Section 1 (GENERAL INFORMATION) and Section 6 (REGISTRATION REQUESTS WITH AFFILIATED FIRMS). Include all *firm*(s) from Section 3 (REGISTRATION WITH UNAFFILIATED FIRMS). Account for all time including full and part-time employments, self-employment, military service, and homemaking. Also include statuses such as unemployed, full-time education, extended travel, or other similar statuses.
Report changes as they occur.

| From | To | Name of *Firm* or Company | Investment-Related business? | City | State | Country | Position |
|---|---|---|---|---|---|---|---|
| 06/2006 | PRESENT | WELLS FARGO INVESTMENTS, LLC | ◉ Yes ○ No | FOLSOM | CA | USA | FINANCIAL CONSULTANT |
| 03/2003 | 06/2006 | H&R BLOCK FINANCIAL ADVISORS, INC. | ◉ Yes ○ No | CITRUS HEIGHTS | CA | USA | FINANCIAL ADVISOR |
| 07/1999 | 03/2003 | MORGAN STANLEY DEAN WITTER | ◉ Yes ○ No | FOLSOM | CA | | OTHER - REPRESENTATIVE |
| 01/1993 | 07/1999 | BA INVESTMENT SERVICES, INC. | ◉ Yes ○ No | SAN JOSE | CA | | NOT PROVIDED |
| 07/1991 | 12/1992 | OLDE DISCOUNT CORPORATION | ◉ Yes ○ No | CUPERTINO | CA | | NOT PROVIDED |
| 10/1990 | 06/1991 | ASSOCIATED PLANNERS | ◉ Yes | HAYWARD | CA | | NOT PROVIDED |

EXHIBIT E  Page 78

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | SECURITIES CORPORATION | ○ No | | | | |
| 11/1982 | 10/1990 | PRUDENTIAL-BACHE SECURITIES INC. | ⊙ Yes<br>○ No | PALO ALTO | CA | | OTHER - GS |
| 08/1981 | 11/1982 | PAINEWEBBER INCORPORATED | ⊙ Yes<br>○ No | NEW YORK | NY | | OTHER - UNKNOWN |

Rev. Form U4 (10/2005)

## 13. OTHER BUSINESS

Are you <u>currently</u> engaged in any other business either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise? (Please exclude non *investment-related* activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.) If YES, please provide the following details: the name of the other business, whether the business is *investment-related*, the address of the other business, the nature of the other business, your position, title, or relationship with the other business, the start date of your relationship, the approximate number of hours/month you devote to the other business, the number of hours you devote to the other business during securities trading hours, and briefly describe your duties relating to the other business.

○ Yes ⊙ No

Rev. Form U4 (10/2005)

## 14. DISCLOSURE QUESTIONS

**IF THE ANSWER TO ANY OF THE FOLLOWING QUESTIONS IS 'YES', COMPLETE DETAILS OF ALL EVENTS OR PROCEEDINGS ON APPROPRIATE DRP(S)**

**REFER TO THE EXPLANATION OF TERMS SECTION OF FORM U4 INSTRUCTIONS FOR EXPLANATIONS OF ITALICIZED TERMS.**

**Criminal Disclosure**

| | YES | NO |
|---|---|---|
| **14A. (1) Have you ever:** | | |
| (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign, or military court to any *felony*? | ○ | ⊙ |
| (b) been *charged* with any *felony*? | ○ | ⊙ |
| **(2) Based upon activities that occurred while you exercised *control* over it, has an organization ever:** | | |
| (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to any *felony*? | ○ | ⊙ |
| (b) been *charged* with any *felony*? | ○ | ⊙ |
| **14B. (1) Have you ever:** | | |
| (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor involving:* investments or an *investment-related* business or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, | ○ | ⊙ |

W000133

counterfeiting, extortion, or a conspiracy to commit any of these offenses?

(b) been *charged* with a *misdemeanor* specified in 14B(1)(a)?                 ○ ◉

**(2) Based upon activities that occurred while you exercised *control* over it, has an organization ever:**

(a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to a *misdemeanor* specified in 14B(1)(a)?     ○ ◉

(b) been *charged* with a *misdemeanor* specified in 14B(1)(a)?                 ○ ◉

| **Regulatory Action Disclosure** |
|---|

| | | YES NO |
|---|---|---|
| **14C.** | **Has the U.S. Securities and Exchange Commission or the Commodity Futures Trading Commission ever:** | |

(1) *found* you to have made a false statement or omission?                      ○ ◉

(2) *found* you to have been *involved* in a violation of its regulations or statutes?   ○ ◉

(3) *found* you to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted?   ○ ◉

(4) entered an *order* against you in connection with *investment-related* activity?    ○ ◉

(5) imposed a civil money penalty on you, or *ordered* you to cease and desist from any activity?     ○ ◉

**14D(1) Has any other Federal regulatory agency or any state regulatory agency or *foreign financial regulatory authority* ever:**

(a) *found* you to have made a false statement or omission or been dishonest, unfair or unethical?     ○ ◉

(b) *found* you to have been *involved* in a violation of *investment-related* regulation(s) or statute(s)?     ○ ◉

(c) *found* you to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked or restricted?    ○ ◉

(d) entered an *order* against you in connection with an *investment-related* activity?    ○ ◉

(e) denied, suspended, or revoked your registration or license or otherwise, by *order*, prevented you from associating with an *investment-related* business or restricted your activities?     ○ ◉

**14D(2) Have you been subject to any *final order* of a state securities commission (or any agency or officer performing like functions), state authority that supervises or examines banks, savings associations, or credit unions, state insurance commission (or any agency or office performing like functions), an appropriate *federal banking agency*, or the National Credit Union Administration, that:**

(a) bars you from association with an entity regulated by such commission, authority, agency, or officer, or from engaging in the business of securities, insurance, banking, savings association activities, or credit union activities; or     ○ ◉

(b) constitutes a *final order* based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?     ○ ◉

**14E.   Has any *self-regulatory organization* or commodities exchange ever:**

(1) *found* you to have made a false statement or omission?                      ○ ◉

W000134

EXHIBIT E   Page 80

counterfeiting, extortion, or a conspiracy to commit any of these offenses?

(b) been *charged* with a *misdemeanor* specified in 14B(1)(a)?          ○  ⊙

**(2) Based upon activities that occurred while you exercised *control* over it, has an organization ever:**

(a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to a *misdemeanor* specified in 14B(1)(a)?          ○  ⊙

(b) been *charged* with a *misdemeanor* specified in 14B(1)(a)?          ○  ⊙

| Regulatory Action Disclosure |
|---|

**14C.**  **Has the U.S. Securities and Exchange Commission or the Commodity Futures Trading Commission ever:**          YES NO

(1) *found* you to have made a false statement or omission?          ○  ⊙

(2) *found* you to have been *involved* in a violation of its regulations or statutes?  ○  ⊙

(3) *found* you to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted?          ○  ⊙

(4) entered an *order* against you in connection with *investment-related* activity?  ○  ⊙

(5) imposed a civil money penalty on you, or *ordered* you to cease and desist from any activity?          ○  ⊙

**14D(1) Has any other Federal regulatory agency or any state regulatory agency or *foreign financial regulatory authority* ever:**

(a) *found* you to have made a false statement or omission or been dishonest, unfair or unethical?          ○  ⊙

(b) *found* you to have been *involved* in a violation of *investment-related* regulation(s) or statute(s)?          ○  ⊙

(c) *found* you to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked or restricted?          ○  ⊙

(d) entered an *order* against you in connection with an *investment-related* activity?          ○  ⊙

(e) denied, suspended, or revoked your registration or license or otherwise, by *order*, prevented you from associating with an *investment-related* business or restricted your activities?          ○  ⊙

**14D(2) Have you been subject to any *final order* of a state securities commission (or any agency or officer performing like functions), state authority that supervises or examines banks, savings associations, or credit unions, state insurance commission (or any agency or office performing like functions), an appropriate *federal banking agency*, or the National Credit Union Administration, that:**

(a) bars you from association with an entity regulated by such commission, authority, agency, or officer, or from engaging in the business of securities, insurance, banking, savings association activities, or credit union activities; or          ○  ⊙

(b) constitutes a *final order* based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?          ○  ⊙

**14E.**  **Has any *self-regulatory organization* or commodities exchange ever:**

(1) *found* you to have made a false statement or omission?          ○  ⊙

W000135

(2) *found* you to have been *involved* in a violation of its rules (other than a violation designated as a *"minor rule violation"* under a plan approved by the U.S. Securities and Exchange Commission)?   ○  ●

(3) *found* you to have been the cause of an *investment-related* business having its authorization to do business denied, suspended, revoked or restricted?   ○  ●

(4) disciplined you by expelling or suspending you from membership, barring or suspending your association with its members, or restricting your activities?   ○  ●

**14F.   Have you ever had an authorization to act as an attorney, accountant or**   ○  ●
**federal contractor that was revoked or suspended?**

**14G.   Have you been notified, in writing, that you are now the subject of any:**

(1) regulatory complaint or *proceeding* that could result in a "yes" answer to any part of 14C, D or E? *(If yes, complete the Regulatory Action Disclosure Reporting Page.)*   ○  ●

(2) *investigation* that could result in a "yes" answer to any part of 14A, B, C, D or E? *(If yes, complete the Investigation Disclosure Reporting Page.)*   ○  ●

| **Civil Judicial Disclosure** | |
|---|---|

| | **YES NO** |
|---|---|
| **14H. (1) Has any domestic or foreign court ever:** | |
| (a) *enjoined* you in connection with any *investment-related* activity? | ○  ● |
| (b) *found* that you were *involved* in a violation of any *investment-related* statute(s) or regulation(s)? | ○  ● |
| (c) dismissed, pursuant to a settlement agreement, an *investment-related* civil action brought against you by a state or *foreign financial regulatory authority*? | ○  ● |
| **(2) Are you named in any pending *investment-related* civil action that could result in a "yes" answer to any part of 14H(1)?** | ○  ● |

| **Customer Complaint/Arbitration/Civil Litigation Disclosure** | |
|---|---|

| | **YES NO** |
|---|---|
| **14I. (1) Have you ever been named as a respondent/defendant in an *investment-related*, consumer-initiated arbitration or civil litigation which alleged that you were *involved* in one or more *sales practice violations* and which:** | |
| (a) is still pending, or; | ○  ● |
| (b) resulted in an arbitration award or civil judgment against you, regardless of amount, or; | ○  ● |
| (c) was settled for an amount of $10,000 or more? | ○  ● |
| **(2) Have you ever been the subject of an *investment-related*, consumer-initiated complaint, not otherwise reported under question 14I(1) above, which alleged that you were *involved* in one or more *sales practice violations*, and which complaint was settled for an amount of $10,000 or more?** | ○  ● |
| **(3) Within the past twenty four (24) months, have you been the subject of an *investment-related*, consumer-initiated, written complaint, not otherwise reported under question 14I(1) or (2) above, which:** | |
| (a) alleged that you were *involved* in one or more *sales practice violations* and contained a claim for compensatory damages of $5,000 or more (if no damage amount is alleged, the complaint must be reported unless the firm has made a good faith determination that the damages from the alleged | ○  ● |

W000136

conduct would be less than $5,000), or;
    (b) alleged that you were *involved* in forgery, theft, misappropriation or conversion of funds or securities?     ○  ◉

### Termination Disclosure

**14J. Have you ever voluntarily *resigned*, been discharged or permitted to *resign*** YES NO
**after allegations were made that accused you of:**

(1) violating *investment-related* statutes, regulations, rules, or industry standards of conduct?     ○  ◉

(2) fraud or the wrongful taking of property?     ○  ◉

(3) failure to supervise in connection with *investment-related* statutes, regulations, rules or industry standards of conduct?     ○  ◉

### Financial Disclosure

**14K. Within the past 10 years:**     YES NO

(1) have you made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition?     ○  ◉

(2) based upon events that occurred while you exercised *control* over it, has an organization made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition?     ○  ◉

(3) based upon events that occurred while you exercised *control* over it, has a broker or dealer been the subject of an involuntary bankruptcy petition, or had a trustee appointed, or had a direct payment procedure initiated under the Securities Investor Protection Act?     ○  ◉

**14L. Has a bonding company ever denied, paid out on, or revoked a bond for you?**     ○  ◉

**14M. Do you have any unsatisfied judgments or liens against you?**     ○  ◉

---

Rev. Form U4 (10/2005)

### 15. SIGNATURE SECTION

Please Read Carefully

All signatures required on this Form U4 filing must be made in this section.

A "signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature.

15A    INDIVIDUAL/APPLICANT'S ACKNOWLEDGMENT AND CONSENT
       This section must be completed on all initial or Temporary Registration form filings.

15B    FIRM/APPROPRIATE SIGNATORY REPRESENTATIONS
       This section must be completed on all initial or Temporary Registration form filings.

15C    TEMPORARY REGISTRATION ACKNOWLEDGMENT
       This section must be completed on Temporary Registration form filings to be able to receive Temporary Registration.

W000137

15D   INDIVIDUAL/APPLICANT'S AMENDMENT ACKNOWLEDGMENT AND CONSENT
This section must be completed on any amendment filing that amends any information in Section 14 (Disclosure Questions) or any Disclosure Reporting Page (DRP).

15E   FIRM/APPROPRIATE SIGNATORY AMENDMENT REPRESENTATIONS
This section must be completed on all amendment form filings.

15F   FIRM/APPROPRIATE SIGNATORY CONCURRENCE
This section must be completed to concur with a U4 filing made by another *firm* (IA/BD) on behalf of an individual that is also registered with that other *firm* (IA/BD).

## 15A. INDIVIDUAL/APPLICANT'S ACKNOWLEDGMENT AND CONSENT

1. I swear or affirm that I have read and understand the items and instructions on this form and that my answers (including attachments) are true and complete to the best of my knowledge. I understand that I am subject to administrative, civil or criminal penalties if I give false or misleading answers.

2. I apply for registration with the *jurisdictions* and *SROs* indicated in Section 4 (SRO REGISTRATION) and Section 5 (JURISDICTION REGISTRATION) as may be amended from time to time and, in consideration of the *jurisdictions* and *SROs* receiving and considering my application, I submit to the authority of the *jurisdictions* and *SROs* and agree to comply with all provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the *jurisdictions* and *SROs* as they are or may be adopted, or amended from time to time. I further agree to be subject to and comply with all requirements, rulings, orders, directives and decisions of, and penalties, prohibitions and limitations imposed by the *jurisdictions* and *SROs*, subject to right of appeal or review as provided by law.

3. I agree that neither the *jurisdictions* or *SROs* nor any person acting on their behalf shall be liable to me for action taken or omitted to be taken in official capacity or in the scope of employment, except as otherwise provided in the statutes, constitutions, certificates of incorporation, by-laws or the rules and regulations of the *jurisdictions* and *SROs*.

4. I authorize the *jurisdictions*, *SROs*, and the *designated entity* to give any information they may have concerning me to any employer or prospective employer, any federal, state or municipal agency, or any other *SRO* and I release the *jurisdictions*, *SROs*, and the *designated entity*, and any person acting on their behalf from any and all liability of whatever nature by reason of furnishing such information.

5. I agree to arbitrate any dispute, claim or controversy that may arise between me and my *firm*, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROs* indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent *jurisdiction*.

6. For the purpose of complying with the laws relating to the offer or sale of securities or commodities or investment advisory activities, I irrevocably appoint the administrator of each *jurisdiction* indicated in Section 5 (JURISDICTION REGISTRATION) as may be amended from time to time, or such other person designated by law, and the successors in such office, my attorney upon whom may be served any notice, process, pleading, subpoena or other document in any action or *proceeding* against me arising out of or in connection with the offer or sale of securities or commodities, or investment advisory activities or out of the violation or alleged violation of the laws of such *jurisdictions*. I consent that any such action or *proceeding* against me may be commenced in any court of competent *jurisdiction* and proper venue by service of process upon the appointee as if I were a resident of, and had been lawfully served with process in the *jurisdiction*. I request that a copy of any notice, process, pleading, subpoena or other document served hereunder be mailed to my current residential address as reflected in this form or any amendment thereto.

W000138

7. I consent that the service of any process, pleading, subpoena, or other document in any *investigation* or administrative *proceeding* conducted by the SEC, CFTC or a *jurisdiction* or in any civil action in which the SEC, CFTC or a *jurisdiction* are plaintiffs, or the notice of any *investigation* or *proceeding* by any SRO against the *applicant*, may be made by personal service or by regular, registered or certified mail or confirmed telegram to me at my most recent business or home address as reflected in this Form U4, or any amendment thereto, by leaving such documents or notice at such address, or by any other legally permissible means.

I further stipulate and agree that any civil action or administrative *proceeding* instituted by the SEC, CFTC or a *jurisdiction* may be commenced by the service of process as described herein, and that service of an administrative subpoena shall be effected by such service, and that service as aforesaid shall be taken and held in all courts and administrative tribunals to be valid and binding as if personal service thereof had been made.

8. I authorize all my employers and any other person to furnish to any *jurisdiction*, SRO, *designated entity*, employer, prospective employer, or any agent acting on its behalf, any information they have, including without limitation my creditworthiness, character, ability, business activities, educational background, general reputation, history of my employment and, in the case of former employers, complete reasons for my termination. Moreover, I release each employer, former employer and each other person from any and all liability, of whatever nature, by reason of furnishing any of the above information, including that information reported on the Uniform Termination Notice for Securities Industry Registration (Form U5). I recognize that I may be the subject of an investigative consumer report and waive any requirement of notification with respect to any investigative consumer report ordered by any *jurisdiction*, SRO, *designated entity*, employer, or prospective employer. I understand that I have the right to request complete and accurate disclosure by the *jurisdiction*, SRO, *designated entity*, employer or prospective employer of the nature and scope of the requested investigative consumer report.

9. I understand and certify that the representations in this form apply to all employers with whom I seek registration as indicated in Section 1 (GENERAL INFORMATION) or Section 6 (REGISTRATION REQUESTS WITH AFFILIATED FIRMS) of this form. I agree to update this form by causing an amendment to be filed on a timely basis whenever changes occur to answers previously reported. Further, I represent that, to the extent any information previously submitted is not amended, the information provided in this form is currently accurate and complete.

10. I authorize any employer or prospective employer to file electronically on my behalf any information required in this form or any amendment thereto; I certify that I have reviewed and approved the information to be submitted to any *jurisdiction* or SRO on this Form U4 Application; I agree that I will review and approve all disclosure information that will be filed electronically on my behalf; I further agree to waive any objection to the admissibility of the electronically filed records in any criminal, civil, or administrative *proceeding*.

*Applicant* or *applicant*'s agent has typed *applicant*'s name under this section to attest to the completeness and accuracy of this record. The *applicant* recognizes that this typed name constitutes, in every way, use or aspect, his or her legally binding signature.

| Date (MM/DD/YYYY) 06/15/2006 | Signature of *Applicant* KENNETH C. SHAFFER |
| | Printed Name _____ |

### 15B. FIRM/APPROPRIATE SIGNATORY REPRESENTATIONS

To the best of my knowledge and belief, the *applicant* is currently bonded where required, and,

W000139

at the time of approval, will be familiar with the statutes, constitution(s), rules and by-laws of the agency, *jurisdiction* or *SRO* with which this application is being filed, and the rules governing registered persons, and will be fully qualified for the position for which application is being made herein. I agree that, notwithstanding the approval of such agency, *jurisdiction* or *SRO* which hereby is requested, I will not employ the *applicant* in the capacity stated herein without first receiving the approval of any authority that may be required by law.

This *firm* has communicated with all of the *applicant*'s previous employers for the past three years and has documentation on file with the names of the persons contacted and the date of contact. In addition, I have taken appropriate steps to verify the accuracy and completeness of the information contained in and with this application.

I have provided the *applicant* an opportunity to review the information contained herein and the *applicant* has approved this information and signed the Form U4.

| Date (MM/DD/YYYY) | Signature of *Appropriate Signatory* |
|---|---|
| 06/15/2006 | WILLIAM TANEM |
| | Printed Name |

### 15C. TEMPORARY REGISTRATION ACKNOWLEDGMENT

If an *applicant* has been registered in a *jurisdiction* or *self regulatory organization (SRO)* in the 30 days prior to the date an application for registration is filed with the Central Registration Depository or Investment Adviser Registration Depository, he or she may qualify for a Temporary Registration to conduct securities business in that *jurisdiction* or *SRO* if this acknowledgment is executed and filed with the Form U4 at the *applicant*'s *firm*.

This acknowledgment must be signed only if the *applicant* intends to apply for a Temporary Registration while the application for registration is under review.

I request a Temporary Registration in each *jurisdiction* and/or *SRO* requested on this Form U4, while my registration with the *jurisdiction*(s) and/or *SRO*(s) requested is under review;

I am requesting a Temporary Registration with the *firm* filing on my behalf for the *jurisdiction*(s) and/or *SRO*(s) noted in Section 4 (SRO REGISTRATION) and/or Section 5 (JURISDICTION REGISTRATION) of this Form U4;

I understand that I may request a Temporary Registration only in those *jurisdiction*(s) and/or *SRO*(s) in which I have been registered with my prior *firm* within the previous 30 days;

I understand that I may not engage in any securities activities requiring registration in a *jurisdiction* and/or *SRO* until I have received notice from the CRD or IARD that I have been granted a Temporary Registration in that *jurisdiction* and/or *SRO*;

I agree that until the Temporary Registration has been replaced by a registration, any *jurisdiction* and/or *SRO* in which I have applied for registration may withdraw the Temporary Registration;

If a *jurisdiction* or *SRO* withdraws my Temporary Registration, my application will then be held pending in that *jurisdiction* and/or *SRO* until its review is complete and the registration is granted or denied, or the application is withdrawn;

I understand and agree that, in the event my Temporary Registration is withdrawn by a *jurisdiction* and/or *SRO*, I must immediately cease any securities activities requiring a registration in that *jurisdiction* and/or *SRO* until it grants my registration;

I understand that by executing this Acknowledgment I am agreeing not to challenge the withdrawal of a Temporary Registration; however, I do not waive any right I may have in any *jurisdiction* and/or *SRO* with respect to any decision by that *jurisdiction* and/or *SRO* to deny my application for registration.

W000140

| Date (MM/DD/YYYY) | Signature of *Applicant* | *Kenneth C Shaffer* |
|---|---|---|
| 06/15/2006 | KENNETH C. SHAFFER | |
| | Printed Name | *KENNETH. C. SHAFFER* |

|  |  | Rev. Form U4 (10/2005) |
|---|---|---|

**CRIMINAL DRP**

No Information Filed

Rev. Form U4 (10/2005)

**REGULATORY ACTION DRP**

No Information Filed

Rev. Form U4 (10/2005)

**CIVIL JUDICIAL DRP**

No Information Filed

Rev. Form U4 (10/2005)

**CUSTOMER COMPLAINT/ARBITRATION/CIVIL LITIGATION DRP**

No Information Filed

Rev. Form U4 (10/2005)

**TERMINATION DRP**

No Information Filed

Rev. Form U4 (10/2005)

**INVESTIGATION DRP**

No Information Filed

Rev. Form U4 (10/2005)

**BANKRUPTCY/SIPC/COMPROMISE WITH CREDITORS DRP**

No Information Filed

Rev. Form U4 (10/2005)

**BOND DRP**

No Information Filed

Rev. Form U4 (10/2005)

**JUDGMENT LIEN DRP**

No Information Filed

RECEIVED

JUN 20 2006

S.C./FPAC

W000141





Private Client Services
1512 Eureka Road, Suite 300
Roseville, CA 95661-3069

June 1, 2006

Kenneth C. Shaffer
5315 Garlenda Drive
El Dorado Hills, CA 95762

Dear Ken:

I am very pleased to confirm our offer of employment to you with the Private Client Services Group of Wells Fargo Investments, LLC, (WFI), and Wells Fargo Bank, N.A., collectively "the Firm", for the Northern Central California & Nevada Region. Below are the terms of this offer of employment:

| | |
|---|---|
| Start Date: | June 15, 2006 |
| Position: | Financial Consultant |
| Transition Compensation - Draw: | $12,000 non-recoverable draw per month for the period beginning June 15, 2006 and ending October 31, 2006. |

$28,080 annual recoverable draw beginning November 1, 2006.

If at the end of the non-recoverable period, the cumulative commissions generated during this period exceed the total cumulative non-recoverable draw paid to you, the excess will be paid at your retail payout rate as a one-time cash bonus on or before November 30, 2006.

If at the end of the non-recoverable period, the cumulative commissions generated during this period *do not* exceed the total cumulative non-recoverable draw paid to you, the deficit will be forgiven.

Transition Compensation – Payout Rate:

40% minimum retail payout for the period ending December 31, 2007. This minimum retail payout is an individual grid rate for you from June 15, 2006 to December 31, 2007. During this period, your individual grid rate will be the greater of a 40% minimum retail payout or the corresponding payout rate in accordance with the *PCS Financial Consultant Incentive Compensation Plan*. After December 31, 2007, your minimum retail payout will be based on the standard criteria of the *PCS Financial Consultant Incentive Compensation Plan*. This payout rate is subject to all adjustments and offsets described in the *PCS Financial Consultant Incentive Compensation Plan* such as the discount sharing and small ticket policies.

After December 31, 2007, your compensation will be determined in accordance with the *PCS Financial Consultant Incentive Compensation Plan* in effect at the time.

---

**Investment and Insurance Products:**

▸ Are NOT insured by the FDIC or any other federal government agency   ▸ Are NOT deposits of or guaranteed by the Bank or any Bank affiliate   ▸ May Lose Value

Financial consultants are registered representatives of Wells Fargo Investments, LLC (member SIPC), a non-bank affiliate of Wells Fargo & Company.

449009
W000093

*ND012003*

EXHIBIT F   page 88



Private Client Services
1512 Eureka Road, Suite 300
Roseville, CA 95661-3069

| | |
|---|---|
| Quarterly Scorecard Opportunity: | After the quarter following the end of your transitional enhanced payout rate, you may be eligible to receive a quarterly bonus opportunity based on your performance against specific goals and management objectives established by your manager at the beginning of each quarter. The scorecard opportunity will be based on the established percentage of your gross production in effect under the Plan during the quarter in which these goals and objectives apply. You could earn more than or less than this percentage depending on your performance against the scorecard goals. This bonus will be paid to you within 45 days of the end of the quarter in which the bonus was earned. |
| | To be eligible for the quarterly bonus opportunity, you must be employed in this position on the last day of the quarter. |
| Additional Incentives: | If your best contiguous rolling twelve months of gross commissions ("Best T12") during the eighteen month period ending December 31, 2007 meet or exceed $217,500, you will be eligible for a taxable loan in the amount equal to 50% of your gross commissions generated from this period (the "Loan"). The Loan will be secured by a five year promissory note calling for the Loan to be forgiven and taxed in equal monthly installments over a five-year period. If, for any reason, your employment with "the Firm" (or one of its subsidiaries) terminates before the end of the term of the Loan (i.e. five years from the date of the Loan), it will be your responsibility to repay the outstanding amount due on the Loan as set forth in the promissory note. You must have your branch manager notify the PCS National Sales Recruiting Department in writing when you become eligible for this Loan. The promissory note will be processed at the earliest possible date once the PCS National Sales Recruiting Department has been notified. |
| | For the purpose of determining your eligibility to receive the Loan which is based on your achievement of the $217,500 target described above, your total production for the Best T12 period ending December 31, 2007 will include annualized fees (as defined in the PCS Financial Consultant Incentive Compensation Plan ("Plan")) for new fee-based accounts opened during the Best T12 period, but will exclude contributions made to accounts opened prior to the Best T12 period. The fee-based products that will be annualized for purposes of eligibility tracking are those considered fee-based in the Plan. The Loan amount, however, will be based *solely on actual realized commissions reported on the ICOMP system.* |

Example: *Best T12 target to receive back-end set at $500,000; Payout = 20%*



| | Gross commissions credited and paid through ICOMP | Gross commissions tracked for the purpose of determining eligibility for back-end bonus/loan | |
|---|---|---|---|
| Fee-based Gross Commissions | $200,000 | $275,000 | Includes annualized fees for fee-based accounts opened during Best T12 |
| Transactional Gross Commissions | $250,000 | $250,000 | |
| Total | $450,000 | $525,000 | $500,000 target achieved |
| Bonus amount paid | $90,000 | ($450,000 x 20%) | |

---

**Investment and Insurance Products:**

▶ Are NOT insured by the FDIC or any other federal government agency ▶ Are NOT deposits of or guaranteed by the Bank or any Bank affiliate ▶ May Lose Value

---

Financial consultants are registered representatives of Wells Fargo Investments, LLC (member SIPC), a non-bank affiliate of Wells Fargo & Company.

W000094



**Private Client Services**
1512 Eureka Road, Suite 300
Roseville, CA 95661-3069

Please note that revenue generated from trades made in your personal Well Fargo brokerage accounts will not count towards your achievement of the Best T12 production target nor will it be included in the calculation of the Loan amount.

**Earning the Incentives:**

All previously stated compensation and eligibility for the bonus/Loan is subject to your continued active employment in good standing through the dates by which the stated non-recoverable draw, recoverable draw, grid payouts, bonuses and additional incentives are earned. In addition, incentive compensation is not earned and eligibility for the bonus/Loan will not be met unless all conditions of the General Incentive Plan Provisions as stated in the current "Provisions for All Plan Participants" document are satisfied.

**Trade Errors:**

Your incentive compensation will reflect negative adjustments for trade errors losses for the month in which the loss occurs. Trade errors include, but are not limited to all cancels and re-bills resulting from an incorrect trade placed by you or a Sales Assistant assisting you in a client's account. To request a reversal of the negative adjustment, detailed documentation, including a concise explanation on the Chargeback Review Form must be submitted by the Regional Sales Manager for review, approval and forwarding to the Appeals Committee for review and resolution. The Sales Professional is responsible for starting this process and providing necessary detailed documentation.

**Benefits:**

You will be eligible for general employee benefits, including health insurance, at the beginning of the month following one full month of service. It is imperative that you call the Employee Service Center at 1-877-HR-WELLS (1-877-479-3557) (press option 2, then ••) to request your benefit information and enrollment forms. Your enrollment period for benefits is June 15, 2006 through July 14, 2006 with an effective date of coverage of August 1, 2006. Failure to enroll in benefits within the specified time period will be considered the same as waiving benefits.

This offer of employment at WFI is contingent upon your ability to provide on or before the first day of employment, documentation that verifies your identification and eligibility to work in the United States, as outlined by the Immigration Reform and Control Act (IRCA) of 1986. Acceptable documents are outlined in the enclosed IRCA forms. Employment cannot begin until you have presented these documents.)

As a federally insured institution, Wells Fargo Bank, N.A. is unable to employ individuals who have been convicted of a crime of dishonesty or breach of trust, or any person who does not meet our bond requirements. Therefore, our offer of employment is contingent upon the results of your background investigation.

As we discussed, the Series 7, 66 (or equivalent registrations) and California Life Agent Insurance licenses are job requirements of the Financial Consultant position. As a condition of your employment, you must obtain any missing license(s) within 90 days of your hire date, September 13, 2006. This offer is contingent upon satisfactory background and CRD clearance. Please contact Cynthia Zamboukos in the Compliance Department immediately at (415) 396-2254 for information on review courses and tests. For insurance licensing questions call Michelle Corbani at (415) 396-0715.

---

**Investment and Insurance Products:**

| ▸ Are NOT insured by the FDIC or any other federal government agency | ▸ Are NOT deposits of or guaranteed by the Bank or any Bank affiliate | ▸ May Lose Value |

---

Financial consultants are registered representatives of Wells Fargo Investments, LLC (member SIPC), a non-bank affiliate of Wells Fargo & Company.

W000095



Private Client Services
1512 Eureka Road, Suite 300
Roseville, CA 95661-3069

As a financial services institution we are entrusted with confidential information and the resources of our customers—a trust we take very seriously. Enclosed are several documents you should read immediately. You will need to sign and return the Private Client Services Trade Secrets, Confidential Information and Non-Solicitation Agreement as a condition of employment. Please call me at (916) 788-4562 for further instructions.

Your employment at Wells Fargo has no specified term or length. Both you and Wells Fargo will have the right to terminate your employment at any time, with or without advance notice and with or without cause. This is called "employment at will." No one has the authority to alter this arrangement except in writing, signed by you and an Executive Officer of Wells Fargo who is so authorized by the Director of Human Resources.

Employees must abide by all existing federal and state laws, the rules set forth by regulatory agencies and Wells Fargo's own internal policies and procedures including but not limited to Wells Fargo's Code of Ethics and Business Conduct.

This offer letter, along with the Private Client Services Agreement Regarding Trade Secrets, Confidential Information and Non-Solicitation, constitutes the entire agreement between the parties hereto. No guarantees or promises of any kind, other than these contained herein, have been made concerning leads, referrals, book of business, clients, store or hub assignments, commissions, annual compensation or any other terms of your employment. Except as explicitly set forth above for at-will employment, no employee of Wells Fargo is authorized to change or modify the terms contained in this letter except in writing and signed by an Executive Vice President of the Private Client Services.

Ken, we hope you will consider the above as our sincere desire to have you as a member of our Private Client Services team. Our goal is to grow these businesses significantly and to be recognized as one of the premier providers of financial products and services. I am convinced that together we can accomplish this. As an indication of your acceptance of our offer, please sign the attached copy of this letter and return it to me.

Sincerely,

John V. Scambray
Regional Sales Manager
Private Client Services

---

**Investment and Insurance Products:**

| ▸ Are NOT insured by the FDIC or any other federal government agency | ▸ Are NOT deposits of or guaranteed by the Bank or any Bank affiliate | ▸ May Lose Value |
|---|---|---|

Financial consultants are registered representatives of Wells Fargo Investments, LLC (member SIPC), a non-bank affiliate of Wells Fargo & Company.

W000096



Private Client Services
1512 Eureka Road, Suite 300
Roseville, CA 95661-3069

By signing and returning a copy of this letter, I accept and agree to all terms and conditions of this offer of employment. Further, I confirm that as of the start date indicated on page one, I will not be employed with any other person, firm or company that competes or conflicts with Wells Fargo, or is otherwise prohibited by Wells Fargo, unless approved in advance.

Accepted and agreed to:

_____     6-7-06
Kenneth C. Shaffer                    Date

cc:   Linda Tompkins
      Christine Blomley, HR Manager, MAC A0105-031
      Local Team Member File
      Employee Records, MAC S4101-166

Enclosed:  Private Client Services Agreement Regarding Trade Secrets, Confidential Information
           and Non-Solicitation

---

**Investment and Insurance Products:**

▶ Are NOT insured by the FDIC or any     ▶ Are NOT deposits of or guaranteed     ▶ May Lose Value
  other federal government agency           by the Bank or any Bank affiliate

Financial consultants are registered representatives of Wells Fargo Investments, LLC (member SIPC), a non-bank affiliate of Wells Fargo & Company.

W000097





Private Client Services
512 Eureka Road, Suite 300
Roseville, CA 95661-3069

June 1, 2006

Kenneth C. Shaffer
5315 Garlenda Drive
El Dorado Hills, CA 95762

Dear Ken:

I am very pleased to confirm our offer of employment to you with the Private Client Services Group of Wells Fargo Investments, LLC, (WFI), and Wells Fargo Bank, N.A., collectively "the Firm", for the Northern Central California & Nevada Region.  Below are the terms of this offer of employment:

| | |
|---|---|
| Start Date: | June 15, 2006 |
| Position: | Financial Consultant |
| Transition Compensation Draw: | $12,000 non-recoverable draw per month for the period beginning June 15, 2006 and ending October 31, 2006. |

$28,080 annual recoverable draw beginning November 1, 2006.

If at the end of the non-recoverable period, the cumulative commissions generated during this period exceed the total cumulative non-recoverable draw paid to you, the excess will be paid at your retail payout rate as a one-time cash bonus on or before November 30, 2006.

If at the end of the non-recoverable period, the cumulative commissions generated during this period *do not* exceed the total cumulative non-recoverable draw paid to you, the deficit will be forgiven.

| | |
|---|---|
| Transition Compensation Payout Rate: | 40% minimum retail payout for the period ending December 31, 2007.  This minimum retail payout is an individual grid rate for you from June 15, 2006 to December 31, 2007.  During this period, your individual grid rate will be the greater of a 40% minimum retail payout or the corresponding payout rate in accordance with the *PCS Financial Consultant Incentive Compensation Plan.* After December 31, 2007, your minimum retail payout will be based on the standard criteria of the *PCS Financial Consultant Incentive Compensation Plan.*  This payout rate is subject to all adjustments and offsets described in the *PCS Financial Consultant Incentive Compensation Plan* such as the discount sharing and small ticket policies. |

After December 31, 2007, your compensation will be determined in accordance with the *PCS Financial Consultant Incentive Compensation Plan* in effect at the time.

---

**Investment and Insurance Products:**

▸ Are NOT insured by the FDIC or any other federal government agency   ▸ Are NOT deposits of or guaranteed by the Bank or any Bank affiliate   ▸ May Lose Value

Financial consultants are registered representatives of Wells Fargo Investments, LLC (member SIPC), a non-bank affiliate of Wells Fargo & Company.

449009



*ND012003*

EXHIBIT G   Page 93        W000088



Private Client Services
1512 Eureka Road, Suite 300
Roseville, CA 95661-3069

| | |
|---|---|
| Quarterly Scorecard Opportunity: | After the quarter following the end of your transitional enhanced payout rate, you may be eligible to receive a quarterly bonus opportunity based on your performance against specific goals and management objectives established by your manager at the beginning of each quarter. The scorecard opportunity will be based on the established percentage of your gross production in effect under the Plan during the quarter in which these goals and objectives apply. You could earn more than or less than this percentage depending on your performance against the scorecard goals. This bonus will be paid to you within 45 days of the end of the quarter in which the bonus was earned.<br><br>To be eligible for the quarterly bonus opportunity, you must be employed in this position on the last day of the quarter. |
| Additional Incentives: | If your best contiguous rolling twelve months of gross commissions ("Best T12") during the eighteen month period ending December 31, 2007 meet or exceed $217,500, you will be eligible for a taxable loan in the amount equal to 50% of your gross commissions generated from this period (the "Loan"). The Loan will be secured by a five year promissory note calling for the Loan to be forgiven and taxed in equal monthly installments over a five-year period. If, for any reason, your employment with "the Firm" (or one of its subsidiaries) terminates before the end of the term of the Loan (i.e. five years from the date of the Loan), it will be your responsibility to repay the outstanding amount due on the Loan as set forth in the promissory note. You must have your branch manager notify the PCS National Sales Recruiting Department in writing when you become eligible for this Loan. The promissory note will be processed at the earliest possible date once the PCS National Sales Recruiting Department has been notified.<br><br>For the purpose of determining your eligibility to receive the Loan which is based on your achievement of the $217,500 target described above, your total production for the Best T12 period ending December 31, 2007 will include annualized fees (as defined in the PCS Financial Consultant Incentive Compensation Plan ("Plan")) for new fee-based accounts opened during the Best T12 period, but will exclude contributions made to accounts opened prior to the Best T12 period. The fee-based products that will be annualized for purposes of eligibility tracking are those considered fee-based in the Plan. The Loan amount, however, will be based *solely on actual realized commissions reported on the ICOMP system.* |

*Example: Best T12 target to receive back-end set at $500,000; Payout = 20%*

| | Gross commissions credited and paid through ICOMP | Gross commissions tracked for the purpose of determining eligibility for back-end bonus/loan | |
|---|---|---|---|
| Fee-based Gross Commissions | $200,000 | $275,000 | Includes annualized fees for fee-based accounts opened during Best T12 |
| Transactional Gross Commissions | $250,000 | $250,000 | |
| Total | $450,000 | $525,000 | $500,000 target achieved |
| Bonus amount paid | $90,000 | ($450,000 x 20%) | |

---

**Investment and Insurance Products:**

▸ Are NOT insured by the FDIC or any other federal government agency    ▸ Are NOT deposits of or guaranteed by the Bank or any Bank affiliate    ▸ May Lose Value

---

Financial consultants are registered representatives of Wells Fargo Investments, LLC (member SIPC), a non-bank affiliate of Wells Fargo & Company.

W000089



Private Client Services
1512 Eureka Road, Suite 300
Roseville, CA 95661-3069

Please note that revenue generated from trades made in your personal Well Fargo brokerage accounts will not count towards your achievement of the Best T12 production target nor will it be included in the calculation of the Loan amount.

**Earning the Incentives:**    All previously stated compensation and eligibility for the bonus/Loan is subject to your continued active employment in good standing through the dates by which the stated non-recoverable draw, recoverable draw, grid payouts, bonuses and additional incentives are earned. In addition, incentive compensation is not earned and eligibility for the bonus/Loan will not be met unless all conditions of the General Incentive Plan Provisions as stated in the current "Provisions for All Plan Participants" document are satisfied.

**Trade Errors:**    Your incentive compensation will reflect negative adjustments for trade errors losses for the month in which the loss occurs. Trade errors include, but are not limited to all cancels and re-bills resulting from an incorrect trade placed by you or a Sales Assistant assisting you in a client's account. To request a reversal of the negative adjustment, detailed documentation, including a concise explanation on the Chargeback Review Form must be submitted by the Regional Sales Manager for review, approval and forwarding to the Appeals Committee for review and resolution. The Sales Professional is responsible for starting this process and providing necessary detailed documentation.

**Benefits:**    You will be eligible for general employee benefits, including health insurance, at the beginning of the month following one full month of service. It is imperative that you call the Employee Service Center at 1-877-HR-WELLS (1-877-479-3557) (press option 2, then **) to request your benefit information and enrollment forms. Your enrollment period for benefits is June 15, 2006 through July 14, 2006 with an effective date of coverage of August 1, 2006. Failure to enroll in benefits within the specified time period will be considered the same as waiving benefits.

This offer of employment at WFI is contingent upon your ability to provide on or before the first day of employment, documentation that verifies your identification and eligibility to work in the United States, as outlined by the Immigration Reform and Control Act (IRCA) of 1986. Acceptable documents are outlined in the enclosed IRCA forms. Employment cannot begin until you have presented these documents.)

As a federally insured institution, Wells Fargo Bank, N.A. is unable to employ individuals who have been convicted of a crime of dishonesty or breach of trust, or any person who does not meet our bond requirements. Therefore, our offer of employment is contingent upon the results of your background investigation.

As we discussed, the Series 7, 66 (or equivalent registrations) and California Life Agent Insurance licenses are job requirements of the Financial Consultant position. .As a condition of your employment, you must obtain any missing license(s) within 90 days of your hire date, September 13, 2006. This offer is contingent upon satisfactory background and CRD clearance. Please contact Cynthia Zamboukos in the Compliance Department immediately at (415) 396-2254 for information on review courses and tests. For insurance licensing questions call Michelle Corbani at (415) 396-0715.

| Investment and Insurance Products: | | |
| --- | --- | --- |
| ▶ Are NOT insured by the FDIC or any other federal government agency | ▶ Are NOT deposits of or guaranteed by the Bank or any Bank affiliate | ▶ May Lose Value |

Financial consultants are registered representatives of Wells Fargo Investments, LLC (member SIPC), a non-bank affiliate of Wells Fargo & Company.

W000090



Private Client Services
1512 Eureka Road, Suite 300
Roseville, CA 95661-3069

As a financial services institution we are entrusted with confidential information and the resources of our customers—a trust we take very seriously. Enclosed are several documents you should read immediately. You will need to sign and return the Private Client Services Trade Secrets, Confidential Information and Non-Solicitation Agreement as a condition of employment. Please call me at (916) 788-4562 for further instructions.

Your employment at Wells Fargo has no specified term or length. Both you and Wells Fargo will have the right to terminate your employment at any time, with or without advance notice and with or without cause. This is called "employment at will." No one has the authority to alter this arrangement except in writing, signed by you and an Executive Officer of Wells Fargo who is so authorized by the Director of Human Resources.

Employees must abide by all existing federal and state laws, the rules set forth by regulatory agencies and Wells Fargo's own internal policies and procedures including but not limited to Wells Fargo's Code of Ethics and Business Conduct.

This offer letter, along with the Private Client Services Agreement Regarding Trade Secrets, Confidential Information and Non-Solicitation, constitutes the entire agreement between the parties hereto. No guarantees or promises of any kind, other than these contained herein, have been made concerning leads, referrals, book of business, clients, store or hub assignments, commissions, annual compensation, or any other terms of your employment. Except as explicitly set forth above for at-will employment, no employee of Wells Fargo is authorized to change or modify the terms contained in this letter except in writing and signed by an Executive Vice President of the Private Client Services.

Ken, we hope you will consider the above as our sincere desire to have you as a member of our Private Client Services team. Our goal is to grow these businesses significantly and to be recognized as one of the premier providers of financial products and services. I am convinced that together we can accomplish this. As an indication of your acceptance of our offer, please sign the attached copy of this letter and return it to me.

Sincerely,

John V. Scambray
Regional Sales Manager
Private Client Services

**Investment and Insurance Products:**

▶ Are NOT insured by the FDIC or any other federal government agency   ▶ Are NOT deposits of or guaranteed by the Bank or any Bank affiliate   ▶ May Lose Value

Financial consultants are registered representatives of Wells Fargo Investments, LLC (member SIPC), a non-bank affiliate of Wells Fargo & Company.

W000091



Private Client Services
1512 Eureka Road, Suite 300
Roseville, CA 95661-3069

By signing and returning a copy of this letter, I accept and agree to all terms and conditions of this offer of employment. Further, I confirm that as of the start date indicated on page one, I will not be employed with any other person, firm or company that competes or conflicts with Wells Fargo, or is otherwise prohibited by Wells Fargo, unless approved in advance.

Accepted and agreed to:

_____        6-9-06
Kenneth C. Shaffer                                                    Date

cc:     Linda Tompkins
         Christine Blomley, HR Manager, MAC A0105-031
         Local Team Member File
         Employee Records, MAC S4101-166

Enclosed:  Private Client Services Agreement Regarding Trade Secrets, Confidential Information
                and Non-Solicitation

---

**Investment and Insurance Products:**

▸ Are NOT insured by the FDIC or any    ▸ Are NOT deposits of or guaranteed    ▸ May Lose Value
   other federal government agency            by the Bank or any Bank affiliate

Financial consultants are registered representatives of Wells Fargo Investments, LLC (member SIPC), a non-bank affiliate of
Wells Fargo & Company.

W000092

### PRIVATE CLIENT SERVICES
### AGREEMENT REGARDING
### TRADE SECRETS, CONFIDENTIAL INFORMATION AND NON-SOLICITATION
(New Hires, Promotions, Officer Titles, Newly Registered Team Members, or Recipients of Wells Fargo Leads, and/or
Assignment to a Wells Fargo Channel)

## INTRODUCTION

In consideration for Wells Fargo Investments, LLC and /or Wells Fargo Bank, N.A. (individually referred to as WFI and Bank respectively and collectively referred to as "the Firm") and/or their parent corporations, affiliates, subsidiaries, predecessors, successors, acquisitions and any future acquisition of the Firm (collectively referred to as "the Company") employing you, allowing you to act as a registered representative of WFI, for receiving training, office facilities, sales, marketing support, leads, referrals, and/or access to a Company channel to source business, and/or for the authority to use confidential and proprietary information, you agree as follows:

It is acknowledged by you and the Firm, that the nature of your employment permits you to have access to certain trade secrets and confidential and proprietary information (collectively "Confidential Information") belonging to the Company. Nevertheless, such information is, and shall always remain, the sole property of the Company. Any unauthorized disclosure of this Confidential Information may be highly disadvantageous to the Company and may adversely impact the Company's business interests.

## DEFINITIONS

A "Trade Secret" is defined under the Uniform Trade Secrets Act as information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

The Company's trade secrets and confidential information constitute any information or knowledge, including but not limited to:

- account or customer information (as defined below), including information referred to you by the Company or that you learned during the course of your employment with the Company.
- actual or potential customer names, addresses, and/or telephone numbers generated through the Company's internal referral sources
- programs or models using Company data, regardless of source, which is not generally available to the public, such as strategic wealth process and strategy, or asset allocation information
- training & educational materials
- correspondence designated "Internal Use Only"
- alliance formulas and agreements
- critical process design
- fiduciary, credit, investment and brokerage policies
- client/sales presentation materials
- behavior scoring, credit scoring, and credit decision technology
- portfolio monitoring and loss forecasting
- direct market solicitation modeling, direct market response modeling, and the marketing database
- pricing models and/or risk models
- information regarding the Company's business practices

1

W000079



*ND006005*

EXHIBIT H   Page 98

"Records" include, but are not limited to, original, duplicated, computerized, memorized, handwritten or any other form of information, whether contained in materials provided to you by the Company, or by any institution acquired by the Company, or compiled by you in any form or manner including information in documents or electronic devices, such as calendars, day timers, planners, Personal Digital Assistants ("PDAs"), rolodexes, or telephone directories maintained in personal computers, laptop computers or any other device.

"Information" is intended to include, but is not limited to, all names, addresses, telephone numbers, account numbers, balances, maturity dates, customer instructions, loans, investments, insurance or annuity policies, applications, investment objectives, and any other personal or financial information of any account, customer, client, prospect, or referral.

## CUSTOMER INFORMATION

During the course of your employment with the Company, you may acquire knowledge of Confidential Information relating to the Company's customers.  The Company considers the identity of its customers, the contact person for that customer or client, and any information related to business conducted between the customer/client and the Company to be trade secrets and as such is confidential and the sole and exclusive property of the Company.  This information is to be used by you, solely and exclusively, for the purpose of conducting business on behalf of the Firm or the Company.  You are expected to keep such records and information confidential and not to divulge or disclose this information except for that purpose.

Understand that all such "information" and "records" constitute trade secrets of the Company and that your obligations continue at all times during and after your employment.  This information does not become any less confidential or proprietary to the Company because you may commit some of it to memory or because you may otherwise maintain this information outside of the Company's offices.  If you resign or are terminated from your employment for any reason, you agree to immediately return all Confidential Information, including Confidential Information maintained by you in your office, personal electronic devices, and/or at home.

## DUTY OF LOYALTY AND INDEMNITY FOR LOSSES

You understand that at all times while employed, you have a duty of loyalty to the Firm, and a duty to act in good faith and to comply with all applicable laws, regulations, by-laws, and codes of conduct imposed by federal, state and local governmental and regulatory and self-regulatory agencies, including the FDIC and, if applicable, the National Association of Securities Dealers, Inc. ("NASD").  In the event that you engage in any act, conduct or omission that is dishonest, culpably negligent, or in willful disregard of your obligations as a registered representative of WFI, you agree to reimburse the Firm for all losses caused by such act, conduct or omission, including attorney's fees incurred by the Firm in defending against third party claims arising out of such act, conduct or omission.  You also authorize the Firm to adjust your sales incentive compensation by deducting the amount of trade losses caused by such act, conduct or omission.

## SOLICITATION OF WELLS FARGO CUSTOMERS AND EMPLOYEES

If you resign or are terminated from your employment at the Firm for any reason, you agree that for a period of one year following your termination, you will not call upon or solicit (either directly or indirectly) any client, customer, prospect or referral whose name became known to you during your employment with the Company.[1]

---

[1] As set forth in the Introduction above, "the Company" is used throughout this Agreement to mean, the Firm, and/or its parent corporations, affiliates, subsidiaries, predecessors, successors, acquisitions and any future acquisition of the Firm.

2

W000080

The only exception to this obligation will be as to your family members and customers whom you serviced prior to your hire date with the Company. Despite this exception, you acknowledge and agree that files and information relating to such customers remain the property of the Company and that copies of such information may be provided to you only if such customers provide the Company with written authorization for the release of their Confidential Information to you. You further acknowledge and agree that the Company is not precluded from contacting any of such customers.

You also agree not to recruit, entice, induce or solicit any employee of the Company for employment with any other organization which is involved in the banking, investment, trust or securities business for a period of one year from your date of termination.

## COMPLIANCE WITH OTHER AGREEMENTS

It is understood that you have complied and will continue to fully comply with any similar policies or agreements covering trade secrets or confidential information from any former employer.

## EMPLOYMENT AT WILL

Your employment is "at will" and nothing in this document changes, alters or modifies your "at will" status. You understand that you have joined the company voluntarily and that you are free to resign at any time and for any reason with or without cause. Similarly, the Firm is free to end the employment relationship at any time for any reason, with or without cause, including but not limited to business reorganization. The Firm has not agreed, expressly or implicitly, to employ you for any fixed term nor does this Agreement in any way limit the Firm's right to terminate your employment. Your employment at will status may not be changed except in writing, signed by you and an officer of the Firm at the level of executive vice president or higher, who is so authorized by a senior Human Resources Manager for your region or line of business.

## CONDITION OF EMPLOYMENT

Upon signing below, you understand that compliance with this Agreement is a condition of employment. Failure to comply with this Agreement is grounds for discipline, up to, and including, immediate termination.

## NASD ARBITRATION

If you are an employee whose registration (Series 7, 63, 9, 10 etc.) is held by WFI, you understand that your U-4 requires any dispute between yourself and WFI, and/or any of its affiliates, officers, directors, employees, or managers, arising out of this Agreement or your employment or termination from employment with WFI, to be submitted to binding arbitration pursuant to the NASD Code of Arbitration Procedure.

## PARTIAL INVALIDITY

If any provision of this Agreement is held to be invalid, void or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

## CHOICE OF LAW

This Agreement and any dispute, controversy or claim which arises under or relates in any way to this Agreement, shall be governed by the law of state where the incident(s) giving rise to the dispute or claim arose.

3

W000081

**INTEGRATION CLAUSE**

This written Agreement supersedes any prior written or verbal agreements pertaining to the subject matter herein, and is intended to be a final expression of our Agreement with respect to the terms contained herein. Except as specifically set forth above regarding at-will employment, this Agreement may not be modified except in writing signed by you and an executive vice president or higher level officer of the Firm.

**ACKNOWLEDGMENT**

By signing this document, you acknowledge that you have read, understand, and received a copy of this Agreement, and agree to abide by its terms.

_____
Team Member's Signature

6-9-06
Date

KENNETH C. SHAFFER
Print Name

_____
Social Security Number/Employee ID

**MANAGER ACKNOWLEDGMENT**

_____
Manager's Signature

6/1/06
Date

John SAMBRA
Print Name

W000082

EXHIBIT H   Page 101

## PROMISSORY NOTE

In consideration of a loan of one hundred eleven thousand three hundred forty–seven dollars ($111,347), paid to Kenneth C. Shaffer ("the Undersigned"), the Undersigned promises to pay to the order of Wells Fargo Investments, LLC ("WF") at its offices at 420 Montgomery Street, San Francisco, CA 94104; the sum of one hundred eleven thousand three hundred forty seven dollars ($111,347), plus simple interest at a rate of 3.58% per annum on the unpaid balance.

This Note arises from and reflects a debt justly due to WF, which debt is agreed by the Undersigned to be due and payable on demand. The Undersigned may prepay the full amount due at any time without penalty. WF in its sole discretion may demand payment at any time.

The outstanding balance due under this Note shall, immediately become due and payable without notice, protest, presentment, or demand upon the happening of any of the following specified events of default:

1. The termination of the Undersigned's employment with WF (or one of its subsidiaries) for any reason whatsoever, including, but not limited to involuntary termination of the Undersigned;

2. The entry of an order for relief in a bankruptcy case in which the Undersigned is the debtor, or the making of an assignment for the benefit of creditors by the Undersigned, or the inability of the Undersigned to pay the Undersigned's debts generally as they become due, or the liabilities of the Undersigned exceeding the Undersigned's assets, or the appointment of a custodian or receiver for substantially all of the undersigned's property; or

3. The entry of an order against the Undersigned by a court or regulatory agency barring or suspending the Undersigned from the conduct of his/her employment at WF.

The Undersigned promises to advise WF in writing as soon as reasonably possible should any of the above events of default occur.

Except as otherwise set forth above, the principal and interest due under this Note shall be forgiven and taxed in sixty (60) equal monthly increments commencing on the first day of the month following the disbursement of the proceeds of the Note and continuing each month thereafter. Each increment that is forgiven shall include both principal and interest. The compensation and withholding will be reported in the appropriate pay period for each monthly forgiveness. If your earnings for the month are not sufficient to cover the withholding, you may not receive a paycheck until the entire amount of withholding is paid. If any events of default as described above occur, the unpaid and unforgiven portion of the principal amount shall become immediately due and payable to WF, and interest shall continue to accrue on the unpaid balance until the same is fully paid.

EXHIBIT I   Page 102

Furthermore, to the extent permissible under California law, the Undersigned agrees that any unpaid amounts due under this Note shall constitute a lien immediately reducible to cash on (1) the Undersigned's final or regular pay and (2) any brokerage accounts held in the name of the Undersigned or on which the Undersigned appears with WF (whether or not such accounts are held as joint account with another or others), until the amount of the lien has been satisfied.

Any controversy regarding the validity, enforcement or construction of this Note or any dispute concerning the Undersigned's employment or termination of employment with WF shall be resolved by arbitration under the then-prevailing Rules of the National Association of Securities Dealers ("NASD"). Any state or federal court having jurisdiction to enter such an award may enter judgment upon any award rendered by the arbitrator(s), and the Undersigned hereby waives personal service of any petitions to confirm such awards, including any papers supporting those petitions, and agree to accept service by regular mail. In the event the NASD for any reason declines to accept jurisdiction of such controversy, it shall then be resolved by a court of competent jurisdiction.

In the event any action or lawsuit is required to be brought for collection of any amount under this Note, the Undersigned promises to pay reasonable attorney's fees and costs, including all fees and costs involved in collection.

This Note shall be interpreted, enforced, and governed by the laws of the State of California. The Undersigned has reviewed the terms of this Note and has participated in its drafting, and agrees that the rule of construction by which ambiguities are resolved against the drafting party shall not apply in any interpretation of it. If any provision or any part of any provision of this Note is for any reason held to be invalid, unenforceable or contrary to public policy, law statute or ordinance, then the remainder of this Agreement shall not be affected thereby and shall remain valid and fully enforceable.

The Undersigned executes this Note without reliance on any oral representations. This Note contains the entire agreement between the Undersigned and WF with respect to the matters addressed in it, and supersedes all prior agreements, written or oral, between the Undersigned and WF on such matters. No other agreement, statement of promise made by any party with respect to any of the matters addressed in this Note will be binding or valid.

The Undersigned understands that the Undersigned is employed on an at-will basis. This Note does not constitute an agreement by WF to employ the Undersigned for a specified period of time, and the Undersigned's employment may be terminated at any time, with or without notice or cause.

The Undersigned agrees that any amounts due under this Note are not consumer debt, and that any debt incurred hereunder is not primarily for personal, family or household purposes, but for business and commercial purposes only.

2

EXHIBIT I   Page 103

This Note may be modified or amended only if the modification or amendment is made in writing, refers specifically to this Note, and is signed by the Undersigned and an Executive Vice President of WF. Extensions or renewals of the Undersigned's right or liabilities under this Note from time to time, with or without notice, shall not release the Undersigned from liability.

The terms of this Note shall apply to, bind, and inure to the benefit of WF and the Undersigned, and their respective heirs, successors, assigns and legal representatives.

The Undersigned agrees to treat the facts and terms of this Promissory Note as confidential and, as such, will not discuss the Promissory Note with any person except for those individuals who have a legitimate need to know including family members (if applicable), managers and human resources representatives.

Kenneth C Shaffer

Sworn to before me this 4th day of January , 2008

State of California,
County of Sacramento

DANNY KIRK
Comm. # 1541753
NOTARY PUBLIC-CALIFORNIA
Placer County
My Comm. Expires Jan. 6, 2009

Notary Public

3

EXHIBIT I  Page 104