B03 WELLS FARGO INVESTMENTS, LLC
999 THIRD AVENUE
SEATTLE WA 98104

| Pay Group: | BW1-BIWEEKLY PAYROLL | Check #: | 4968405 |
|---|---|---|---|
| Pay Begin Date: | 01/01/2008 | | |
| Pay End Date: | 01/31/2008 | Check Date: | 01/09/2008 |

KENNETH CRAIG SHAFFER
315 GARLENDA DR
EL DORADO HILLS CA 95762

| Employee ID: | 00000716429 |
|---|---|
| AU#/CCF: | 015223 |
| Location: | 0000003557 |
| Job Title: | WMG FINANCIAL CONSULTANT 2 |
| Pay Rate: | $36,053.29 Annual |

| TAX DATA: | Federal | CA State |
|---|---|---|
| Marital Status: | Married | Married |
| Allowances: | 6 | 6 |
| Addl. Amt.: | | |

## HOURS AND EARNINGS

| | | Current | | YTD | | | | |
|---|---|---|---|---|---|---|---|---|
| Description | Rate | Hours | Earnings | Hours | Earnings | | | |
| Forgivable Promissory Note | | | 111,347.00 | | 111,347.00 | | | |
| Regular Pay | | | 0.00 | | 1,386.67 | | | |
| PCS Sales Incentive Plan | | | 0.00 | | 1,539.07 | | | |
| **Total:** | | | 111,347.00 | | 114,272.74 | | | |

## TAXES

| Description | Current | YTD |
|---|---|---|
| Fed Withholdng | 0.00 | 210.43 |
| Fed MED/EE | 0.00 | 40.68 |
| Fed OASDI/EE | 0.00 | 173.93 |
| CA Withholding | 0.00 | 55.69 |
| CA OASDI/EE | 0.00 | 22.44 |
| **Total:** | 0.00 | 503.17 |

## BEFORE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| Kaiser Northern CA | 0.00 | 94.62 |
| WF Dental Plan - Standard | 0.00 | 17.74 |
| Vision Service Plan | 0.00 | 8.00 |
| Wells Fargo 401K Plan | 0.00 | 87.77 |
| **Total:** | 0.00 | 208.13 |

## AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| Community Support/United Way | 0.00 | 10.00 |
| Spouse/Partner GULP | 0.00 | 1.60 |
| GULP Optional Life | 0.00 | 22.49 |
| AD/D | 0.00 | 1.93 |
| Long-Term Disability | 0.00 | 12.44 |
| **Total:** | 0.00 | 48.46 |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|
| Current: | 111,347.00 | 0.00 | 0.00 | 0.00 | 111,347.00 |
| YTD: | 114,272.74 | 2,717.61 | 503.17 | 256.59 | 113,512.98 |

| NET PAY DISTRIBUTION | |
|---|---|
| Check #000000004968405 | 111,347.00 |
| Total: | 111,347.00 |

THE ORIGINAL DOCUMENT HAS A WHITE REFLECTIVE WATERMARK ON THE BACK. HOLD AT AN ANGLE TO VIEW. DO NOT CASH IF NOT PRESENT.

WELLS FARGO INVESTMENTS, LLC
999 THIRD AVENUE
SEATTLE WA 98104

90-03824412

WELLS FARGO BANK, N.A.
115 HOSPITAL DRIVE
VAN WERT OH 45891

Check No.
4968405
VOID AFTER 90 DAYS

Date: 01/09/2008          Pay Amount: $111,347.00 ***

Pay ****ONE HUNDRED ELEVEN THOUSAND THREE HUNDRED FORTY-SEVEN AND 00/100 DOLLARS****

To The
Order Of

00001 B03 MAC A0780-011
KENNETH CRAIG SHAFFER
5315 GARLENDA DR
EL DORADO HILLS, CA 95762

*Richard Levy* (signature)

W000317



**Private Client Services**
MAC A0112-060
550 California Street, 6th Floor
San Francisco, CA 94104

October 16, 2009

Mr. Kenneth C. Shaffer
5315 Garlenda Drive
El Dorado Hills, CA 95762

Dear Mr. Shaffer:

Enclosed is a copy of your Form U-5, Uniform Termination Notice for Securities Industry Registration. Pursuant to the Financial Industry Regulatory Authority (FINRA) By-Laws and Rules, we are required to send you a copy of the Form U-5 as we send it to FINRA. Please retain this for your records as you will need to provide this to any future FINRA member employers.

Your registration will remain inactive with FINRA until you reactivate by registering with another firm. If you do not become registered within two years from the termination date listed on the Form U-5, your registration will expire.

During your tenure you signed one or more of the following agreements: the *Trade Secrets Confidential Information and Arbitration Agreement*, the *Bank Confidentiality Statement*, the *Corporate Conduct and Acknowledgment Form* and/or the *Annual Acknowledgment Letter*. In signing any of these agreements, you agreed you would not take or disclose confidential information or call upon or solicit for one year (either directly or indirectly), any client, prospect or referral whose name became known to you during your employment at Wells Fargo. In addition, the *Employee Handbook*, provided to all employees, clearly sets forth Wells Fargo's policies regarding the handling of confidential and proprietary information.

If you have any questions concerning these matters, please call me at (415) 222-5608.

Sincerely,

L.J. D'Iorio
Compliance Manager

W000120

Enclosure

---

**Investment and Insurance Products:**
- ▸ Are NOT insured by the FDIC or any other federal government agency
- ▸ Are NOT deposits of or guaranteed by the Bank or any Bank affiliate
- ▸ May Lose Value

Financial consultants are registered representatives of Wells Fargo Investments, LLC (member SIPC), a non-bank affiliate of Wells Fargo & Company.

EXHIBIT L   Page 108

# FORM U5
# UNIFORM TERMINATION NOTICE FOR SECURITIES INDUSTRY REGISTRATION

Reference #: 588086988515558AD                    Rev. Form U5 (05/2009)

**Individual Name: SHAFFER, KENNETH CRAIG (871643)**

**Firm Name: WELLS FARGO INVESTMENTS, LLC (10582)**

### NOTICE TO THE INDIVIDUAL WHO IS THE SUBJECT OF THIS FILING

*Even if you are no longer registered you continue to be subject to the jurisdiction of regulators for at least two years after your registration is terminated and may have to provide information about your activities while associated with this firm. Therefore, you must forward any residential address changes for two years following your termination date or last Form U5 amendment to: CRD Address Changes, P.O. Box 9495, Gaithersburg, MD 20898-9495.*

## 1. GENERAL INFORMATION

| First Name: | Middle Name: | Last Name: | Suffix: |
|---|---|---|---|
| KENNETH | CRAIG | SHAFFER | |
| *Firm* CRD #: | *Firm* Name: | *Firm* NFA #: | |
| 10582 | WELLS FARGO INVESTMENTS, LLC | | |
| *Individual* CRD #: | **Individual SSN:** | Individual NFA #: | Firm Billing Code: |
| 871643 | █████████ | | 15223-CN |

**Office of Employment Address**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Address | Private Residence | Type of Office | Start Date | End Date |
|---|---|---|---|---|---|---|---|
| 2237 | | 15223-CN | 25015 BLUE RAVINE RD<br><br>FOLSOM , CA 95630 UNITED STATES | N | Located At | 06/15/2006 | 10/01/2009 |
| 132642 | | 15223-CN | 9500 MICRON AVE<br><br>SACRAMENTO , CA 95827 UNITED STATES | N | Located At | 05/22/2008 | 10/01/2009 |

## 2. CURRENT RESIDENTIAL ADDRESS

### NOTICE TO THE FIRM

*This is the last reported residential address. If this is not current, please enter the current residential address.*

| From | To | Street | City | State | Country | Postal Code |
|---|---|---|---|---|---|---|
| 01/2004 | PRESENT | 5315 GARLENDA DR | EL DORADO HILLS | CA | USA | 95762 |

## 3. FULL TERMINATION

W000121

Is this a *FULL TERMINATION?* ⊙ Yes ◯ No
Note: A "Yes" response will terminate ALL registrations with all *SROs* and all *jurisdictions*.

**Reason for Termination:** Discharged

EXHIBIT L Page 109

**Termination Explanation:**
If the Reason for Termination entered above is Permitted to Resign, Discharged or Other, provide an explanation below:

.JLATION OF COMPANY POLICIES: 1) REPRESENTATIVE LACKED JUSTIFICATION FOR CHARGING EQUITY SECURITIES
MARKUP THAT EXCEEDED THE FIRM'S FULL SERVICE EQUITY SCHEDULE; AND 2) REPRESENTATIVE RECEIVED A
WRITTEN CUSTOMER COMPLAINT AND DID NOT FORWARD TO SUPERVISORY PRINCIPAL.

## 4. DATE OF TERMINATION

**Date Terminated (MM/DD/YYYY):** 10/01/2009
A complete date of termination is required for *full termination*. This date represents the date the *firm* terminated the
individual's association with the *firm* in a capacity for which registration is required.

For *partial termination*, the date of termination is only applicable to post-dated termination requests during the renewal
period.

Notes: For *full termination*, this date is used by *jurisdictions/SROs* to determine whether an individual is required to
requalify by examination or obtain an appropriate waiver upon reassociating with another *firm*.

The *SRO/jurisdiction* determines the effective date of termination of registration.

## 6. AFFILIATED FIRM TERMINATION

No Information Filed

## 7. DISCLOSURE QUESTIONS

IF THE ANSWER TO ANY OF THE FOLLOWING QUESTIONS IN SECTION 7 IS 'YES', COMPLETE DETAILS OF ALL
EVENTS OR PROCEEDINGS ON APPROPRIATE DRP(S). IF THE INFORMATION IN SECTION 7 HAS ALREADY
BEEN REPORTED ON FORM U4 OR FORM U5, DO NOT RESUBMIT DRPs FOR THESE ITEMS. REFER TO THE
EXPLANATION OF TERMS SECTION OF FORM U5 INSTRUCTIONS FOR EXPLANATION OF ITALICIZED WORDS.

**Disclosure Certification Checkbox (optional):** ☑

By selecting the Disclosure Certification Checkbox, the firm certifies that (1) there is no additional information to be
reported at this time; (2) details relating to Questions 7A, 7C, 7D and 7E have been previously reported on behalf of the
individual via Form U4 and/or amendments to Form U4 (if applicable); and (3) updated information will be provided, if
needed, as it becomes available to the firm.  Note: Use of "Disclosure Certification Checkbox" is optional.

### Investigation Disclosure

|  |  | YES | NO |
|---|---|---|---|
| **7A.** | Currently is, or at termination was, the individual the subject of an *investigation* or *proceeding* by a domestic or foreign governmental body or *self-regulatory organization* with jurisdiction over *investment-related* businesses? (Note: Provide details of an *investigation* on an Investigation Disclosure Reporting Page and details regarding a *proceeding* on a Regulatory Action Disclosure Reporting Page.) | ○ | ○ |

### Internal Review Disclosure

|  |  | YES | NO |
|---|---|---|---|
| **7B.** | Currently is, or at termination was, the individual under internal review for fraud or wrongful taking of property, or violating *investment-related* statutes, regulations, rules or industry standards of conduct? | ○ | ○ |

### Criminal Disclosure

W000122

YES NO

**7C.**  While employed by or associated with your *firm*, or in connection with events that occurred while the

individual was employed by or associated with your *firm*, was the individual:

1.   convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to any *felony*?

2.   *charged* with any *felony*?

3.   convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor involving*: investments or an *investment-related* business, or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses?

4.   *charged* with a *misdemeanor* specified in 7(C)(3)?

### Regulatory Action Disclosure

**YES NO**

**7D.**   While employed by or associated with your *firm*, or in connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual *involved* in any *disciplinary action* by a domestic or foreign governmental body or *self-regulatory organization* (other than those designated as a "*minor rule violation*" under a plan approved by the U.S. Securities and Exchange Commission) with jurisdiction over the *investment-related* businesses?

### Customer Complaint/Arbitration/Civil Litigation Disclosure

**YES NO**

**7E.**   1.   In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual <u>named</u> as a respondent/defendant in an *investment-related*, consumer-initiated arbitration or civil litigation which alleged that the individual was *involved* in one or more *sales practice violations* and which:

   (a)   is still pending, or;

   (b)   resulted in an arbitration award or civil judgment against the individual, regardless of amount, or;

   (c)   was settled, prior to 05/18/2009, for an amount of $10,000 or more, or;

   (d)   was settled, on or after 05/18/2009, for an amount of $15,000 or more?

2.   In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated (written or oral) complaint, which alleged that the individual was *involved* in one or more *sales practice violations*, and which

   (a)   was settled, prior to 05/18/2009, for an amount of $10,000 or more, or;

   (b)   was settled, on or after 05/18/2009, for an amount of $15,000 or more?

3.   In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated, written complaint, not otherwise reported under questions 7(E)(2) above, which:

   (a)   would be reportable under question 14I(3)(a) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*; or

   (b)   would be reportable under question 14I(3)(b) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*.

**Answer questions (4) and (5) below only for arbitration claims or civil litigation filed on or after 05/18/2009**

4.   In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated, arbitration claim or civil litigation which alleged that the individual was *involved* in one or more *sales practice violations*, and which:

   (a)   was settled for an amount of $15,000 or more, or;                    W000123

   (b)   resulted in an arbitration award of civil judgment against any named respondent(s)/defendant

(s), regardless of amount?

5.   In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated, arbitration claim or civil litigation not otherwise reported under question 7E(4) above, which:

   **(a)**   would be reportable under question 14I(5)(a) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*; or

   **(b)**   would be reportable under question 14I(5)(b) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*.

### Termination Disclosure

YES NO

7F.   Did the individual voluntarily *resign* from your *firm*, or was the individual discharged or permitted to *resign* from your *firm*, after allegations were made that accused the individual of:

   1.   violating *investment-related* statutes, regulations, rules or industry standards of conduct?

   2.   fraud or the wrongful taking of property?

   3.   failure to supervise in connection with *investment-related* statutes, regulations, rules or industry standards of conduct?

## 8. SIGNATURE

Please Read Carefully

All signatures required on this Form U5 filing must be made in this section.

A "Signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature.

8A.   FIRM ACKNOWLEDGMENT
   This section must be completed on all U5 form filings submitted by the *firm*.

8B.   INDIVIDUAL ACKNOWLEDGMENT AND CONSENT
   This section must be completed on amendment U5 form filings where the individual is submitting changes to Part II of the INTERNAL REVIEW DRP or changes to Section 2 (CURRENT RESIDENTIAL ADDRESS).

### 8A. FIRM ACKNOWLEDGMENT

I VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED IN AND WITH THIS FORM.

**Person to contact for further information**
L.J. D'IORIO

**Telephone # of person to contact**
415-222-5608

**Signature of Appropriate Signatory**
L.J. D'IORIO

**Date (MM/DD/YYYY)**
10/16/2009

Signature

### CRIMINAL DRP

No Information Filed

### CUSTOMER COMPLAINT/ARBITRATION/CIVIL LITIGATION DRP

No Information Filed

### INTERNAL REVIEW DRP

W000124

No Information Filed

### INVESTIGATION DRP

No Information Filed

### REGULATORY ACTION DRP

No Information Filed

### TERMINATION DRP

No Information Filed

Privacy    Legal     Use of Web CRD® or IARD<sup>SM</sup> is governed by the  Terms & Conditions.
©2008 FINRA. All rights reserved. FINRA is a trademark of the Financial Industry Regulatory Authority, Inc.

W000125

Fax from : 2062923145                         10-01-09 11:04     Pg: 1
                                                                Page 1 of 4

FROM: kenneth.c.shaffer@wellsfargo.com ⦿          Configuration at time of
TO: douglas.a.johnson@comcast.net                     processing: ⊞ ⊠ | 1
SUBJECT: RE: New Accounts                         Message Sent: Sep 14 2009
                                                               11:20:39 AM
               *BRYAN A → DAN 6·*                Processed on: Sep 14 2009
                                                               11:57:32 AM
                                                  Expiration: Sep 13 2014
                                                               11:20:39 AM

Hi Doug- I left a message for you at the contact number I have for you. Your market linked CDs mature on Oct 7th, and will
return 100% of your principle. You can sell them now if you need the money right away, for approx. 996/1000, the 4 dollar per
1000 is equal to .4% in less than a month, or about 4.8% annualized interest, so it's better to let them mature on Oct 7th. I have
already made a note to move the proceeds back to your bank account on the 8th.


*Ken Shaffer*
Financial Consultant
Wells Fargo Investments

M-W-F- 916 984-1179    Customer Service- 866-281-7436
T-Th -916 364-3571
*Investment and Insurance Products*

- *Are Not Insured by the FDIC or any other federal government agency.*
- *Are Not deposits of or guaranteed by the Bank or any Bank affiliate*
- *May Lose Value*

*Wells Fargo Investments, LLC (member SIPC) is a non-bank affiliate of Wells Fargo & Company*
*The information in this email is confidential. It is intended solely for the addressee. Access in this email by anyone else is unauthorized. If you are not the intended*
*recipient, any disclosure, copying distribution or any action taken or omitted to be taken in reliance to it, is prohibited and may be unlawful. Trade Orders cannot be*
*accepted by e-mail.*


From: Doug Johnson [mailto:douglas.a.johnson@comcast.net]
Sent: Friday, September 11, 2009 8:29 PM
To: Shaffer, Kenneth C.
Subject: Fw: New Accounts
Importance: High


Ken, Can you give me a contact to find out how to get my money back into my account since you
have not responded. If I don't hear back this time, My attorney will contact you next! I'm
pissed you got me into this and don't respond to my emails!!!

----- Original Message -----

From: Doug Johnson

To: Kenneth.C.Shaffer@wellsfargo.com

Sent: Monday, September 07, 2009 8:41 PM

*written complaint*

about:blank                                                      10/1/2009

W000050

EXHIBIT M   Page 114

Fax from  : 2062923145

10-01-09 11:04     Pg :  2
Page 2 of 4

Subject: Re: New Accounts

Hi Ken, it has been 18 months and the account produced nothing. When will my money be put back
into my account?

Thanks

Doug

----- Original Message -----

From: Kenneth.C.Shaffer@wellsfargo.com

To: douglas.a.johnson@comcast.net

Sent: Tuesday, March 18, 2008 4:54 PM

Subject: RE: New Accounts

Not sure about that, do you have to add it to your Quicken accounts?

*Ken Shaffer*
Financial Consultant
Wells Fargo Investments

M-W-F- 016 984-1179
T-Th -916 364-3671
*Investment and Insurance Products*

- Are Not Insured by the FDIC or any other federal government agency.
- Are Not deposits of or guaranteed by the Bank or any Bank affiliate
- May Lose Value

*Wells Fargo Investments, LLC (member SIPC) is a non-bank affiliate of Wells Fargo & Company. Access to this email by anyone else is unauthorized. If you are not the intended
The information in this email is confidential. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended
recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance to it, is prohibited and may be unlawful. Trade Orders cannot be
accepted by e-mail*

From: Doug Johnson [mailto:douglas.a.johnson@comcast.net]
Sent: Tuesday, March 18, 2008 4:30 PM
To: Shaffer, Kenneth C.
Subject: Re: New Accounts

W000051

Hi Ken,

about:blank

10/1/2009

EXHIBIT M  Page 115

Thanks, I have it setup online at WewllsFargo but can't seem to get it to show in Quicken,
Any idea's?


Thanks


Doug

----- Original Message -----

From: Kenneth.C.Shaffer@wellsfargo.com

To: douglas.a.johnson@comcast.net

Sent: Tuesday, March 18, 2008 9:50 AM

Subject: RE: New Accounts


Hi Doug- When you sign on, go to the "account services" tab, choose "add accounts"- you should see your new brokerage
account listed, select the account and go to the "account summary" screen- call or e-mail with any questions.


*Ken Shaffer*
Financial Consultant
Wells Fargo Investments

M-W-F- 916 984-1179
T-Th -916 364-3571
*Investment and Insurance Products*

  • Are Not Insured by the FDIC or any other federal government agency.
  • Are Not deposits of or guaranteed by the Bank or any Bank affiliate
  • May Lose Value

*Wells Fargo Investments, LLC (member SIPC) is a non-bank affiliate of Wells Fargo & Company
The information in this email is confidential  It is intended solely for the addressee  Access to this email by anyone else is unauthorized  If you are not the intended
recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance to it, is prohibited and may be unlawful  Trade Orders cannot be
accepted by e-mail*


From: Doug Johnson [mailto:douglas.a.johnson@comcast.net]
Sent: Monday, March 17, 2008 9:48 PM
To: Shaffer, Kenneth C.
Subject: New Accounts


Hi Ken,

W000052                10/1/2009

Fax from : 2062923145

10-01-09 11:04   Pg: 4

Page 4 of 4

I met with you and Yuri on Tuesday the 4th and decided to open a couple accounts from money
in my savings. Are these accounts going to show up on my monthly statement? I also use
Quicken and do see the 8,000.00 transfer out of savings but do not see it anywhere. Is this
something I will be able to see in the future?

Thanks

Doug

Doug Johnson

9821 Culp Way

Sacramento Ca 95827

916-402-4392 Call

916-362-8530 Home

W000053

about:blank

10/1/2009

EXHIBIT M  Page 117

**Krug, Jan M.**

| | |
|---|---|
| From: | Mortensen, Mary |
| Sent: | Tuesday, September 29, 2009 3:58 PM |
| To: | Marx, Kelly J. |
| Cc: | Mortensen, Mary; Krug, Jan M.; Webster, Mark D. (PCS) |
| Subject: | FW: Trade Review - Excess Commissions |

Kelly:

I thought I would share this with you.  Please note that the region will be dealing with this matter tomorrow, however we did want to bring it to your attention.

For some background, the FC is on written performance warning.  The trade was identified on Broker Audit. In reviewing the order via BetaHost, I identified that the FC had manually overwritten the commissions and had charged a flat rate for both trades.  In questioning the transaction, below is his response.

*Mary E. Mortensen*
*Vice President*
*Branch Administration Manager*
*Phone: 916-788-4508*
*Fax:  916-788-4782*

---

**From:** Shaffer, Kenneth C.
**Sent:** Tuesday, September 29, 2009 3:27 PM
**To:** Mortensen, Mary
**Subject:** RE: Trade Review - Excess Commissions

Was I not supposed to do that? We can change it if you want, these are good clients, recently turned 50%, 72% profit on trades. I estimated the cost @ 1000. I thought gouging was part of our business plan. As a compliance officer, you should know that the procedure called "written warning" for FCs, represents a huge conflict of interest, undue pressure on FCs, because of the "month to month" nature of the minimum- it's ludicrous.

*Ken Shaffer*
Financial Consultant
Wells Fargo Investments

M-W-F- 916 984-1179     Customer Service- 866-281-7436
T-Th -916 364-3571
*Investment and Insurance Products*
*Are Not insured by the FDIC or any other federal government agency.*
*Are Not deposits of or guaranteed by the Bank or any Bank affiliate*
*May Lose Value*

*Wells Fargo Investments, LLC (member SIPC) is a non-bank affiliate of Wells Fargo & Company.*

*The Information in this email is confidential. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance to it, is prohibited and may be unlawful. Trade Orders cannot be accepted by e-mail.*

W000019

**From:** Mortensen, Mary
**Sent:** Tuesday, September 29, 2009 3:08 PM
**To:** Shaffer, Kenneth C.
**Cc:** Mortensen, Mary

1

**Subject:** Trade Review - Excess Commissions
**Importance:** High

Ken:

s advise why you entered a flat $ commission amount, in excess of what normal comp would be??

| Firm: Main Firm | Region: California Region |
|---|---|
| Branch: EJ - Roseville | Broker: EJ4D SHAFFER KENNETH |

Client:

No Discretion

| Account: ████ | View Profile | Medium | | | |
|---|---|---|---|---|---|
| 9/29/2009 | Commission Excess Equities | 9/28/2009 EXG TDEnt: 09/28/2009 14:02:11 | EATON VANCE TAX MANAGED GLBL DIVERSIFIED EQUITY INCOME FUND | $7,373.76 $132,447.74 | |

**Extended Data**

| Trans Date | Type | Product Type | Quantity | Share Price | Commission | Compared Value | Net |
|---|---|---|---|---|---|---|---|
| 9/28/2009 | Solicited Purchase | Closed End Fund | 600.00 | $12.290 | $495.00 | $368.69 | $7,873.76 |

| Firm: Main Firm | Region: California Region |
|---|---|
| Branch: EJ - Roseville | Broker: EJ4D SHAFFER KENNETH |

Client:

No Discretion

| Account: ████ | View Profile | Medium | | | |
|---|---|---|---|---|---|
| 9/29/2009 | Commission Excess Equities | 9/28/2009 JGT TDEnt: 09/28/2009 14:09:17 | NUVEEN MULTI-CURRENCY SHORT-TERM GOVERNMENT INCOME FUND | $6,731.56 $132,447.74 | |

**Extended Data**

| Trans Date | Type | Product Type | Quantity | Share Price | Commission | Compared Value | Net |
|---|---|---|---|---|---|---|---|
| 9/28/2009 | Solicited Purchase | Closed End Fund | 400.00 | $16.829 | $495.00 | $336.58 | $7,231.56 |

Mary E. Mortensen
Vice President
Branch Administration Manager
Wells Fargo Investments

Office: 916-788-4508
Fax:   916-788-4782

W000020

**Investment and Insurance Products:**

- **Are Not insured by the FDIC or any other federal government agency**
- **Are Not deposits of or guaranteed by the Bank or any Bank affiliate**
- **May Lose Value**

2

EXHIBIT N  Page 119



# Trade Correction Form

Prior year trade corrections will not automatically generate a corrected 1099. You must contact the Tax Reporting Department to request a corrected 1099.

| SUB FIRM NO. | ACCOUNT NO. | FC NO. |
|---|---|---|

**TRANSACTION INFORMATION**

SUBMITTED BY **KEN SHAFFER**

PHONE **(916)984-1179**

CLIENT NAME **WINFREN**

DATE

**ERROR / ADJUSTMENT ALLOCATION**

**ERROR**

☐ Wrong Security ☐ Wrong Price ☐ Wrong Quantity ☐ Dupe Trade ☐ Wrong Side ☐ Trade Date

SECURITY DESCRIPTION **AUVREN GLOBAL GOLD**

QUANTITY **700 JGT**

BUY/SELL

TRADE DATE **9-28-2009**

TICKER SYMBOL/CUSIP **JGT**

**Comm S/B $169.47**

**ADJUSTMENT**

☐ Write Off ☐ Fee Reverse ☐ Commission Adj ☐ Div Adj. ☐ Customer Complaint ☐ Account Number ☐ Account Type ☐ Other

**FOR ACCOUNT NUMBER CHANGES**

CORRECT ACCOUNT NUMBER

CORRECT CLIENT NAME

**EXPLANATION**

**ADJSTED COMMISION UP BY 160.⁰⁰
DONT KNOW NOT allowed! personal friends for
15 years, not much trading activity**

AMOUNT CHARGED TO FC

FC'S AU

FC'S NUMBER

BOM (or designee)

AU/COST CENTER

BOM SIGNATURE (or designee)

DATE **20/1/09**

ERROR ACCOUNT NUMBER **5278**

**OPERATIONS USE ONLY**

**Reduce Commission to a flat ~~$350~~
$169.47                    W000021**

* Prior year trade corrections will not automatically generate a corrected 1099. You must contact the Tax Reporting Department to request a corrected 1099.
See: BOM procedures regarding Trade Correction. All corrections must include the signature of the BOM or designee and an AU to be responsible for any loss incurred resulting from the correction. See Branch Operations Procedure for processing.

Trade Correction Form

FRM4213 (2004 11 212b 01/05)

**BAN. rate - FC inputted trade in excess of
commissions - Firm guidelines
$169.47 FC put $455 - Trade to be
reversed.**

Page: 1 Document Name: untitled

```
OHIS
FUNC FRWD                                       09/29/09 18:13:37 026/001
  D DATE 092809 TO _____ ACCOUNT █████ <<  ORDER HISTORY DETAIL    >>  SUB 001
?       ORDER NUMBER _____ SECURITY    BRANCH _____ SEQNO _____ TERMID
84295371 REP EJ4D TTO _____           _____         EXCHANGE _____
B/S BUY   QTY     400 SYM JGT    WINEGER FAMILY LIVIN WINEGER JOHN G
                                   PX MKT        DAY/GTC DAY TYPE 1 S/N S
SC/OC   P/A A   EXCH CIT  S CM   495.0000 P/C   GRS            IOE    NOP
DESC NUVEEN MULTI-CURRENCY  *SHORT-TERM GOVERNMENT    LOD N ARB N  IC I T
MISC STP   STPLMT           POSSDUPE  DSCR         OB   NH   TL   WIRE EJ
     DNR   AON   CLO   WOW   ND   CASH   DCRU   REIN N ALRX
MSGFLR                             MSGBACK
CFM/NT
09/28/09 1409 ORDR#1 37984531 EJ 0023 ORDR#2
TERMID #53J
```

F6=SUMMARY, F7=BACK, F8=FRWD
ENTER TO CONTINUE.

W000022

9/29/2009 04:41:44 PM

# Calculators
## Single Trade

Page: 1

Security:                    JGT          Security Description:NUVEEN SHORT-TERM GOVT
Username: Mary Mortensen

### Account Information

Not in File

### Security Information
JGT      67090N-10-9     2909-565
NUVEEN MULTI-CURRENCY *
SHORT-TERM GOVERNMENT
INCOME FUND

| Date | 09/29/2009 |
|---|---|
| Schedule | |
| Min Commission | .00 |
| Max Commission | 460.00 |
| Quantity | 400 |
| Price | x    16.829 |
| Principal | 6,731.60 |
| Interest | .00 |
| Commission | 169.47 |
| Postage | 5.00 |
| SEC Fee | .00 |
| Net Amount | 6,906.07 |

W000023


**WELLS FARGO**

# Trade Correction Form

Prior year trade corrections will not automatically generate a corrected 1099. You must contact the Tax Reporting Department to request a corrected 1099.

**TRANSACTION INFORMATION**

| SUBMITTED BY | KEN SHAFFER | PHONE (916) 984-1179 |
| CLIENT NAME | WINEGER | DATE 9-29-09 |

**ERROR / ADJUSTMENT ALLOCATION**

**ERROR**

☐ Wrong Security   ☐ Wrong Price   ☐ Wrong Quantity   ☐ Dupe Trade   ☐ Wrong Side   ☐ Trade Date

| SECURITY DESCRIPTION EATON VANCE TAX MGD GLOBAL DIV | QUANTITY 600 |
| BUY/SELL | TRADE DATE 9-28-205 | TICKER SYMBOL/CUSIP EXG |

ADJUSTED COMMISION UP by 130⁰⁰

Comm S/b $197.74

**ADJUSTMENT**

☐ Write Off   ☐ Fee Reverse   ☐ Commission Adj.   ☐ Div Adj.   ☐ Customer Complaint   ☐ Account Number   ☐ Account Type   ☐ Other

**FOR ACCOUNT NUMBER CHANGES**

| CORRECT ACCOUNT NUMBER | CORRECT CLIENT NAME |

**EXPLANATION**

ADJUSTED COMMISION UP by 130⁰⁰ - DIDN'T KNOW IT WAS NOT ALLOWED, Personal friends for 15 years

| AMOUNT CHARGED TO FC | FC'S AU | FC'S NUMBER |
| BOM (or designee) | | AU/COST CENTER |
| BOM SIGNATURE (or designee) | DATE 10/1/09 | ERROR ACCOUNT NUMBER 5278 |

**OPERATIONS USE ONLY**

Reduce Comm to a flat $197.74

W000024

* Prior year trade corrections will not automatically generate a corrected 1099. You must contact the Tax Reporting Department to request a corrected 1099.
See BOM procedures regarding Trade Correction. All corrections must include the signature of the BOM or designee and an AU to be responsible for any loss incurred resulting from the correction. See Branch Operations Procedure for processing.

BOM note - FC inputted trade in excess of Commissions Firm Guidelines ↗ $197 ...
FC Put $495 - trade to be reduced. 10-1-09.

Page: 1 Document Name: untitled

```
OHIS
FUNC FRWD                                           09/29/09 17:55:16 026/001
 D DATE 092809 TO _____ ACCOUNT ████    << ORDER HISTORY DETAIL    >>  SUB 001
 P ____ ORDER NUMBER _____     BRANCH _____ SEQNO _____ TERMID
 84295371 REP EJ4D TTO _____ SECURITY                      EXCHANGE ____
                          WINEGER FAMILY LIVIN WINEGER  JOHN G
 B/S BUY    QTY    600 SYM EXG        PX MKT        DAY/GTC DAY TYPE 1 S/N S
 SC/OC  P/A A   EXCH ATD  S CM   495.0000 P/C  GRS         IOE   NOP
 DESC EATON VANCE TAX     *MANAGED GLBL DIVERSIFIED LOD N ARB N IC I T
 MISC STP  STPLMT        POSSDUPE  DSCR        OB   NH   TL  WIRE EJ
      DNR  AON  CLO  WOW   ND  CASH   DCRU  REIN N ALRX
 MSGFLR
 CFM/NT                          MSGBACK
 09/28/09 1402 ORDR#1 37984183 EJ 0022 ORDR#2
 TERMID #53J
```

F6=SUMMARY, F7=BACK, F8=FRWD
ENTER TO CONTINUE.

W000025

te: 9/29/2009 Time: 2:55:29 PM

9/29/2009 04:43:39 PM

**Calculators**
Single Trade

Security: _____ EXG        Security Description:EV TAX MNG GLBL DVSFD EQ
sername: Mary Mortensen

**Account Information**

▮▮▮▮ Not in File

**Security Information**
EXG    27829F-10-8    1863-825
EATON VANCE TAX
MANAGED GLBL DIVERSIFIED
EQUITY INCOME FUND

| Date | | |
| --- | --- | --- |
| Schedule | | 09/29/2009 |
| Min Commission | | 1 |
| Max Commission | | .00 |
| Quantity | | 690.00 |
| Price | | 600 |
| Principal | x | 12.29 |
| Interest | | 7,374.00 |
| ommission | | .00 |
| stage | | 197.74 |
| EC Fee | | + 5.00 |
| Net Amount | | .00 |
| | | 7,576.74 |

W000026

EXHIBIT N   Page 125

```
┌──────────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT        │
└──────────────────────────────────────────┘
                              TIME : 10/01/2009 12:26
                              NAME : WELLS FARGO INVESTME
                              FAX  : 9167884782
                              TEL  :
                              SER.# : BROL5J382464
```

```
DATE,TIME           10/01  12:26
FAX NO./NAME        SEATTLE TRADE
DURATION            00:00:29
PAGE(S)             02
RESULT              OK
MODE                STANDARD
                    ECM
```

# Trade Correction Form

**WELLS FARGO**

Prior year trade corrections will not automatically generate a corrected 1099. You must contact the Tax Reporting Department to request a corrected 1099.

**TRANSACTION INFORMATION**

| SUBMITTED BY | KEN SHAFFER | PHONE (916) 984-4179 |
|---|---|---|
| CLIENT NAME | WINKLER | DATE 9-29-09 |

**ERROR: ADJUSTMENT/ALLOCATION**

ERROR

☐ Wrong Security   ☐ Wrong Price   ☐ Wrong Quantity   ☐ Dupe Trade   ☐ Wrong Side   ☐ Trade Date

| SECURITY DESCRIPTION EATON VANCE TAX MGD GLOBAL DIV | QUANTITY 600 | |
|---|---|---|
| BUY/SELL | TRADE DATE 9-28-2009 | TICKER SYMBOL/CUSIP EXG |

ADJUSTED COMMISION UP by 130⁰⁰

Comm S/b $197.74                     W000027

**ADJUSTMENT**

☐ Write Off   ☐ Fee Reverse   ☐ Commission Adj   ☐ Div Adj   ☐ Customer Complaint   ☐ Account Number   ☐ Account Type   ☐ Other

**FOR ACCOUNT NUMBER CHANGES**

| CORRECT ACCOUNT NUMBER | CORRECT CLIENT NAME |
|---|---|

**EXPLANATION**

ADJUSTED COMMISION UP by 130⁰⁰ - DON'T KNOW IT WAS NOT ALLOWED, Personal friends

## 12.1   REGISTERED REPRESENTATIVE RESPONSIBILITIES

NASD Rule 3110 requires that member firms keep and preserve in each Branch Office either a separate file of all written complaints of customers and action taken by the member, if any, or a separate record of such complaints and a clear reference to the files containing the correspondence connected with such complaint as maintained in such office. The Compliance Department maintains a central file of written complaints, prepares reports and makes filings with FINRA as required by its rules.

### Written and Verbal Complaints

FINRA defines a complaint as any written statement of a customer or any person acting on behalf of a customer alleging a grievance involving the activities of those persons under the control of the member in connection with the solicitation or execution of any transaction or the disposition of securities or funds of that customer. As a matter of policy, WFI deems a complaint to include any written or verbal statement from a client (or any person acting on behalf of a client) alleging a grievance involving the activities of WFI, a WFI Registered Representative or employee, or any investment or insurance product made available through WFI.

If a client wishes to submit a written complaint and needs to know where to mail it, instruct the client to mail it to the attention of the Supervisory Principal at the Branch Office address. If a Registered Representative receives a written complaint from a client, it must be forwarded immediately to the Supervisory Principal. Registered Representatives working at Small Office locations must maintain copies of written complaints in their correspondence files. Upon receipt, the Supervisory Principal must forward all written complaints to the Complaint Team in the Compliance Department for resolution.

Registered Representatives must bring all verbal complaints to the immediate attention of the Supervisory Principal, who must record all verbal complaint information on their verbal complaint logs as further described in the Supervisory Manual.

### Claims of Loss Involving an Existing Position

Any client complaints alleging claims of loss involving market risk may require the liquidation of an existing security position or the establishment of a new position. Registered Representatives must bring any such claim immediately to the attention of the Supervisory Principal and the Compliance Department.

If a dispute arises with a client over an order, Registered Representatives should ask the client for specific instructions to establish the desired investment position and tell the client that the dispute will be reported and every effort will be made to resolve it promptly. If the client refuses to give instruction, the Registered Representative should inform the client that WFI will not assume any responsibility for further losses incurred as a result of the client's failure to issue appropriate correcting instructions. Registered Representatives must report the dispute to the Supervisory Principal immediately.

### Communications Regarding Complaints

Registered Representatives are prohibited from discussing any aspect of a complaint with a client or the client's representative unless directed to do so by the Compliance Department. Registered Representatives are not to make any commitment to the client and only indicate that the matter is being reviewed and that someone will contact them shortly. All discussions relating to the resolution of the complaint must be handled by the Supervisory Principal in coordination with the Compliance Department.

CONFIDENTIAL

WF000029

## 12.1  REGISTERED REPRESENTATIVE RESPONSIBILITIES

### Policy Reference

Compliance Manual, Chapter 12 – Complaints; Section 12.1 – registered representative Responsibilities

### Additional Resource

- WFI Client Complaint Resolution Form

### Supervisory Responsibilities

SPs are responsible for ensuring that registered representatives comply with WFI policies for reporting of client complaints.  The table below describes the processes SPs must follow.

| Tasks/Responsibility | Frequency | Delegable |
|---|---|---|
| Instruct registered representatives to *immediately* report all matters involving allegations of theft, misappropriation of funds or securities or any allegation of forgery to the Compliance Department Complaint Team. | Periodically as needed | Yes |
| Ensure clients are instructed to mail written complaints to RSM/SP attention at the Branch Office address. | Periodically as needed | Yes |
| Ensure that all complaints are *immediately* escalated to the SP. | Promptly | Yes |
| Review all complaints.  Promptly forward all written complaints to the Complaint Team.  Resolve verbal complaints and escalate to Complaint Team where necessary. | Periodically as needed | Yes |
| Document all verbal complaints on the designated branch office monthly verbal complaint log. | Periodically as needed | Yes |
| Ensure all complaints involving existing positions/market risk positions are resolved according to Compliance Manual Procedures and escalated to the Compliance Department. | Periodically as needed | Yes |
| Ensure registered representatives do not communicate with a client or client representative regarding a complaint unless directed to do so by the SP in coordination with the Compliance Department.  To the extent that communications regarding a complaint are authorized, ensure such communications are limited to conveyance of basic information (i.e., that the matter is being reviewed and someone will get back to them shortly). | Periodically as needed | Yes |
| Ensure Branch Office maintains a separate file of all written customer complaints detailing all communications and resolution or other action taken. | Periodically as needed | Yes |
| Monitor complaint volume and activity for any trends with | Periodically as | Yes |

Wells Fargo Investments, LLC
Supervisory Manual

Chapter 12 Complaints

| Tasks/Responsibility | Frequency | Delegable |
|---|---|---|
| respect to allegations, product offerings, persons named in the complaint and office location. | needed | |
| Ensure registered representatives properly advise clients of their right to file a complaint with the Branch Office. | Periodically as needed | Yes |
| Ensure that complaint, arbitration, litigation or mediation correspondence is time stamped to reflect the date received by WFI and initialed to reflect principal review. | Periodically as needed | Yes |

## General Guidelines

**A.    Written Complaints**

In order to make sure registered representatives are handling written complaints properly, SPs should, among other things:

- Ensure written complaints are time stamped to reflect the date received by WFI.

- Review each complaint and initial to confirm review.

- Ensure that a copy of the complaint letter is **immediately** forwarded to the Complaint Team. Failure to promptly notify the Complaint Team may result in disciplinary action and financial penalty.

- In instances where it is unclear whether a written communication constitutes a complaint, immediately forward the communication to the Compliance Department Complaint Team. The Complaint Team will review the correspondence to determine if it qualifies as a complaint.

- Coordinate with the Complaint Team to ensure a thorough and timely review of the claim. As part of the investigation, SPs should collect, review and provide all records relevant to the matter to the Complaint Team including but not limited to the brokerage account form, client agreement, margin and option agreements, annuity applications, disclosure forms, correspondence, statements and confirmations.

- Where appropriate, interview employees involved in the alleged activity. Ensure such employees provide an internal written response (typed, signed and dated) to the allegation(s) in the complaint.

- Once the investigation is complete, the SP should prepare and forward recommendation (typed, signed and dated) to the Complaint Team. Recommendations shall clearly outline a proposed resolution and the reasons supporting the recommendation. The Compliance Department may override the recommended resolution (see the WFI Client Complaint Resolution Form located in the brokerage forms gallery).

- Upon completion of the investigation, the Complaint Team will assist the Branch Office with a course of action and issue an appropriate closing letter when necessary.

B.    Settlement of Written Complaints

SPs must obtain approval from the Complaint Team before communicating with a customer regarding settlement or reimbursement. Where possible, SPs should obtain a signed client release agreement when settling written complaints.  Prior to settlement, settlement recommendations must be approved according to the following guidelines:

- $0.00 - $10,000        – RSMs

- $10,000- $25,000      – RMs

- $25,000- $100,000    – RMDs

Upon receipt of a settlement recommendation, the Complaint Team will seek necessary compliance approvals and prepare a release agreement if applicable.  When settling a written complaint regarding a trade, the Branch Office must utilize the Trade Errors Corrections (TEC) system.

C.    Verbal Complaints

In order to ensure registered representatives are handling verbal complaints properly, SPs should, among other things:

- Ensure all verbal complaints are logged on the branch office monthly verbal complaint log.

- Ensure all issues raised in a verbal complaint are addressed and resolved immediately.

- Undertake a thorough investigation and review of all claims.  As part of each investigation, SPs should collect, and review all relevant records including but not limited to the brokerage account form, client agreement, margin and option agreements, annuity applications, disclosure forms, correspondence, statements and confirmations.

- Interview all employees involved in the alleged activity.

- Contact the client and inform him or her of the resolution.

If needed, the Complaint Team is available to offer resolution guidance on all verbal complaints.

D.    Settlement of Verbal Complaints

While SP's have the authority to resolve verbal complaints, they are encouraged to have the client sign a release agreement when settling verbal complaints. **Please note that SP's must contact the Complaint Team prior to settling or offering to settle any verbal complaint for $10,000 or more.**  When settling a verbal complaint, the Branch Office must utilize the Trade Errors Corrections (TEC) system.

CONFIDENTIAL

### E.    Arbitrations, Litigations and Mediations

SPs must ensure that a copy of the legal document is **immediately** forwarded to the Complaint Team.  Failure to promptly notify the Complaint Team may result in disciplinary action and financial penalty.

While the Complaint Team does not respond to arbitrations, litigation and mediations, there may be regulatory reporting requirements surrounding these matters.  All legal matters will be forwarded to the Wells Fargo Legal Department for processing.

### F.    Complaint Trends

In order to assist the Complaint Team in managing present and future risks related to customer complaints, SPs must review and evaluate all complaints (verbal and written) for trends/patterns among allegations, product offerings, persons named in the complaint and office location.  SPs are encouraged to document this review and, if trends are detected, SPs are responsible for taking documented action to ensure that proper sales practices and procedures are being employed.  If trends become evident, SPs may consult with the Compliance Department for guidance.

CONFIDENTIAL

WSCC0J3

| Hr Name | Employee Id | Certif Year | Hom Pag Agree | Req Pag Agree | Emp Has U4 Dscl | Emp Is U4 Subj | Emp Has Addl U4 |
|---|---|---|---|---|---|---|---|
| KENNETH CRAIG SHAFFEF | 00000716429 | 2,005 | Y | Y | | | |
| KENNETH CRAIG SHAFFEF | 00000716429 | 2,006 | Y | Y | N | N | N |
| KENNETH CRAIG SHAFFEF | 00000716429 | 2,007 | Y | Y | N | N | N |
| KENNETH CRAIG SHAFFEF | 00000716429 | 2,008 | Y | Y | N | N | N |

W000070

EXHIBIT P  Page 132

| Out Bus Act Ind | Priv Invest Ind | Lgl Fiduc Ind | Emp Wfi Act Ind | Emp Sec Act Ind | Emp Signature | Emp Sig Timstmp | Sup Signature |
|---|---|---|---|---|---|---|---|
| N | N | | Y | Y | Kenneth.C.Shaffer | 07/05/06 12:18 PM | john.v.scambray |
| N | N | | Y | Y | Kenneth.C.Shaffer | 08/24/06 12:56 PM | john.v.scambray |
| N | N | N | Y | N | Kenneth.C.Shaffer | 09/21/07 02:28 PM | babrand |
| N | N | N | Y | N | Kenneth.C.Shaffer | 12/01/08 06:28 PM | babrand |

W000071

EXHIBIT P  Page 133

Sup Sig Timstmp
07/11/06 06:51 PM
08/29/06 11:04 AM
10/19/07 05:23 PM
12/02/08 10:23 AM

W000072

# Kane & Fischer, Ltd.

Attorneys & Counselors
208 South LaSalle Street
Suite 1800
Chicago, IL 60604
312 422.7200
Fax: 312 422.7217

Jason R. Lindsay
312 422.7212
jlindsay@kfltd.com

October 20, 2009

**CERTIFIED MAIL/RETURN RECEIPT
REQUESTED AND REGULAR MAIL**
Kenneth C. Shaffer
5315 Garlenda Dr
El Dorado Hills, CA 95762

Re:  **Wells Fargo Investments, LLC / Kenneth C. Shaffer
Total Amount Due as of October 20, 2009:  $74,756.84
Our File Number: 5248z008**

Dear Mr. Shaffer:

Wells Fargo Investments, LLC ("Wells Fargo") has referred a collection claim to me relating to a Promissory Note that you entered into with Wells Fargo on or about January 4, 2008 (the "Note").  As of today's date, the total amount that you owe to Wells Fargo under the Note is $74,756.84.

Pursuant to the terms of the Note, the principal balance due at the time of your termination from Wells Fargo on October 1, 2009 was $74,617.76.  Also, pursuant to the terms of the Note, interest at the rate of 3.58% per annum ($7.32 per day) has accrued since October 1, 2009, and will continue to accrue until the Note is paid.  As of today's date, that additional interest amounts to $139.08.  Accordingly, as of today's date, the balance owed on the Note is $74,756.84, and interest is accruing at the rate of $7.32 per day.

If you want to resolve this matter without an arbitration proceeding, you must, within thirty days, either pay the balance owed (by forwarding a check to this office in the amount of $74,756.84, plus additional accrued interest, made payable to **Wells Fargo Investments, LLC**), or call me at 312/422-7212 to work out acceptable arrangements for payment to be made.  If you do neither of these things, or if we are unable to work out acceptable arrangements, I will be entitled to file an arbitration proceeding against you with FINRA Dispute Resolution, Inc. seeking the collection of the full amount of the debt, including accrued and accruing interest, attorneys' fees and costs, pursuant to the terms of the Notes, when the thirty days have expired.

Federal law gives you thirty days after you receive this letter to dispute the validity of the debt or any part of it.  If you do not dispute it within that period, I will assume that it is valid.  If you do dispute it, by notifying me in writing to that effect, I am required by law to obtain and mail to you proof of the debt.  Also according to federal law, if you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this letter, the law requires me to suspend my efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you.

W000247

Kane & Fischer, Ltd.

Kenneth C. Shaffer
October 20, 2009
Page 2

I am enclosing herewith a copy of the Note, as well as a related Amortization Schedule, as proof of the debt. In addition, please be advised at this time that the original creditor of the debt is Wells Fargo Investments, LLC whose corporate address is 420 Montgomery Street, San Francisco, California 94104. Since I am supplying you now with proof of the debt and the name and address of the original creditor, I will not be required by law to suspend my efforts to collect the debt.

This is an attempt to collect a debt on behalf of Wells Fargo Investments, LLC, and any information obtained will be used for that purpose.

Very truly yours,

KANE & FISCHER, LTD.

Jason R. Lindsay

JRL/gmc
Enclosures

W000248

EXHIBIT Q   Page 136

# PROMISSORY NOTE

In consideration of a loan of one hundred eleven thousand three hundred forty–seven dollars ($111,347), paid to Kenneth C. Shaffer ("the Undersigned"), the Undersigned promises to pay to the order of Wells Fargo Investments, LLC ("WF") at its offices at 420 Montgomery Street, San Francisco, CA 94104, the sum of one hundred eleven thousand three hundred forty-seven dollars ($111,347), plus simple interest at a rate of 3.58% per annum on the unpaid balance.

This Note arises from and reflects a debt justly due to WF, which debt is agreed by the Undersigned to be due and payable on demand. The Undersigned may prepay the full amount due at any time without penalty. WF in its sole discretion may demand payment at any time.

The outstanding balance due under this Note shall, immediately become due and payable without notice, protest, presentment, or demand upon the happening of any of the following specified events of default:

1. The termination of the Undersigned's employment with WF (or one of its subsidiaries) for any reason whatsoever, including, but not limited to involuntary termination of the Undersigned;

2. The entry of an order for relief in a bankruptcy case in which the Undersigned is the debtor, or the making of an assignment for the benefit of creditors by the Undersigned, or the inability of the Undersigned to pay the Undersigned's debts generally as they become due, or the liabilities of the Undersigned exceeding the Undersigned's assets, or the appointment of a custodian or receiver for substantially all of the undersigned's property; or

3. The entry of an order against the Undersigned by a court or regulatory agency barring or suspending the Undersigned from the conduct of his/her employment at WF.

The Undersigned promises to advise WF in writing as soon as reasonably possible should any of the above events of default occur.

Except as otherwise set forth above, the principal and interest due under this Note shall be forgiven and taxed in sixty (60) equal monthly increments commencing on the first day of the month following the disbursement of the proceeds of the Note and continuing each month thereafter. Each increment that is forgiven shall include both principal and interest. The compensation and withholding will be reported in the appropriate pay period for each monthly forgiveness. If your earnings for the month are not sufficient to cover the withholding, you may not receive a paycheck until the entire amount of withholding is paid. If any events of default as described above occur, the unpaid and unforgiven portion of the principal amount shall become immediately due and payable to WF, and interest shall continue to accrue on the unpaid balance until the same is fully paid.

W000250

Furthermore, to the extent permissible under California law, the Undersigned agrees that any unpaid amounts due under this Note shall constitute a lien immediately reducible to cash on (1) the Undersigned's final or regular pay and (2) any brokerage accounts held in the name of the Undersigned or on which the Undersigned appears with WF (whether or not such accounts are held as joint account with another or others), until the amount of the lien has been satisfied.

Any controversy regarding the validity, enforcement or construction of this Note or any dispute concerning the Undersigned's employment or termination of employment with WF shall be resolved by arbitration under the then-prevailing Rules of the National Association of Securities Dealers ("NASD"). Any state or federal court having jurisdiction to enter such an award may enter judgment upon any award rendered by the arbitrator(s), and the Undersigned hereby waives personal service of any petitions to confirm such awards, including any papers supporting those petitions, and agree to accept service by regular mail. In the event the NASD for any reason declines to accept jurisdiction of such controversy, it shall then be resolved by a court of competent jurisdiction.

In the event any action or lawsuit is required to be brought for collection of any amount under this Note, the Undersigned promises to pay reasonable attorney's fees and costs, including all fees and costs involved in collection.

This Note shall be interpreted, enforced, and governed by the laws of the State of California. The Undersigned has reviewed the terms of this Note and has participated in its drafting, and agrees that the rule of construction by which ambiguities are resolved against the drafting party shall not apply in any interpretation of it. If any provision or any part of any provision of this Note is for any reason held to be invalid, unenforceable or contrary to public policy, law statute or ordinance, then the remainder of this Agreement shall not be affected thereby and shall remain valid and fully enforceable.

The Undersigned executes this Note without reliance on any oral representations. This Note contains the entire agreement between the Undersigned and WF with respect to the matters addressed in it, and supersedes all prior agreements, written or oral, between the Undersigned and WF on such matters. No other agreement, statement of promise made by any party with respect to any of the matters addressed in this Note will be binding or valid.

The Undersigned understands that the Undersigned is employed on an at-will basis. This Note does not constitute an agreement by WF to employ the Undersigned for a specified period of time, and the Undersigned's employment may be terminated at any time, with or without notice or cause.

The Undersigned agrees that any amounts due under this Note are not consumer debt, and that any debt incurred hereunder is not primarily for personal, family or household purposes, but for business and commercial purposes only.

W000251

2

This Note may be modified or amended only if the modification or amendment is made in writing, refers specifically to this Note, and is signed by the Undersigned and an Executive Vice President of WF. Extensions or renewals of the Undersigned's right or liabilities under this Note from time to time, with or without notice, shall not release the Undersigned from liability.

The terms of this Note shall apply to, bind, and inure to the benefit of WF and the Undersigned, and their respective heirs, successors, assigns and legal representatives.

The Undersigned agrees to treat the facts and terms of this Promissory Note as confidential and, as such, will not discuss the Promissory Note with any person except for those individuals who have a legitimate need to know including family members (if applicable), managers and human resources representatives.

Kenneth C Shaffer

Sworn to before me this 4th day of January, 2008

State of California,
County of Sacramento

DANNY KIRK
Comm. # 1641793
NOTARY PUBLIC-CALIFORNIA
Placer County
My Comm. Expires Jan. 6, 2009

Notary Public

W000252

3

EXHIBIT Q  Page 139



# Promissory Note Amortization Schedule

Prepared for : KENNETH C SHAFFER

5315 GARLENDA DRIVE,
EL DORADO HILLS, CA, 95762

Original Balance: $111,347.00
Interest Rate: 3.58%
Total Number of Payments: 60
Start Date: Friday, February 01, 2008

| Payment # | Payment Date | Rate | P & I Payment | Principal | Interest | New Balance | Cumulative Interest | Yearly Total Interest |
|---|---|---|---|---|---|---|---|---|
| 1 | 2/1/2008 | 3.58% | $2,029.59 | $1,697.40 | $332.19 | $109,649.60 | $332.19 | $332.19 |
| 2 | 3/1/2008 | 3.58% | $2,029.59 | $1,702.47 | $327.12 | $107,947.13 | $659.31 | $659.31 |
| 3 | 4/1/2008 | 3.58% | $2,029.59 | $1,707.55 | $322.04 | $106,239.59 | $981.36 | $981.36 |
| 4 | 5/1/2008 | 3.58% | $2,029.59 | $1,712.64 | $316.95 | $104,526.95 | $1,298.31 | $1,298.31 |
| 5 | 6/1/2008 | 3.58% | $2,029.59 | $1,717.75 | $311.84 | $102,809.20 | $1,610.15 | $1,610.15 |
| 6 | 7/1/2008 | 3.58% | $2,029.59 | $1,722.87 | $306.72 | $101,086.32 | $1,916.86 | $1,916.86 |
| 7 | 8/1/2008 | 3.58% | $2,029.59 | $1,728.01 | $301.58 | $99,358.31 | $2,218.44 | $2,218.44 |
| 8 | 9/1/2008 | 3.58% | $2,029.59 | $1,733.17 | $296.42 | $97,625.14 | $2,514.86 | $2,514.86 |
| 9 | 10/1/2008 | 3.58% | $2,029.59 | $1,738.34 | $291.25 | $95,886.80 | $2,806.11 | $2,806.11 |
| 10 | 11/1/2008 | 3.58% | $2,029.59 | $1,743.53 | $286.06 | $94,143.27 | $3,092.17 | $3,092.17 |
| 11 | 12/1/2008 | 3.58% | $2,029.59 | $1,748.73 | $280.86 | $92,394.55 | $3,373.04 | $3,373.04 |
| 12 | 1/1/2009 | 3.58% | $2,029.59 | $1,753.94 | $275.65 | $90,640.60 | $3,648.68 | $275.65 |
| 13 | 2/1/2009 | 3.58% | $2,029.59 | $1,759.18 | $270.41 | $88,881.43 | $3,919.10 | $546.06 |
| 14 | 3/1/2009 | 3.58% | $2,029.59 | $1,764.42 | $265.17 | $87,117.00 | $4,184.26 | $811.22 |
| 15 | 4/1/2009 | 3.58% | $2,029.59 | $1,769.69 | $259.90 | $85,347.31 | $4,444.16 | $1,071.13 |
| 16 | 5/1/2009 | 3.58% | $2,029.59 | $1,774.97 | $254.62 | $83,572.34 | $4,698.78 | $1,325.75 |
| 17 | 6/1/2009 | 3.58% | $2,029.59 | $1,780.26 | $249.33 | $81,792.08 | $4,948.11 | $1,575.07 |
| 18 | 7/1/2009 | 3.58% | $2,029.59 | $1,785.57 | $244.02 | $80,006.51 | $5,192.13 | $1,819.09 |
| 19 | 8/1/2009 | 3.58% | $2,029.59 | $1,790.90 | $238.69 | $78,215.60 | $5,430.81 | $2,057.78 |
| 20 | 9/1/2009 | 3.58% | $2,029.59 | $1,796.24 | $233.35 | $76,419.36 | $5,664.16 | $2,291.12 |
| 21 | 10/1/2009 | 3.58% | $2,029.59 | $1,801.60 | $227.99 | $74,617.76 | $5,892.15 | $2,519.11 |
| 22 | 11/1/2009 | 3.58% | $2,029.59 | $1,806.98 | $222.61 | $72,810.78 | $6,114.76 | $2,741.72 |
| 23 | 12/1/2009 | 3.58% | $2,029.59 | $1,812.37 | $217.22 | $70,998.41 | $6,331.98 | $2,958.94 |
| 24 | 1/1/2010 | 3.58% | $2,029.59 | $1,817.78 | $211.81 | $69,180.63 | $6,543.79 | $211.81 |
| 25 | 2/1/2010 | 3.58% | $2,029.59 | $1,823.20 | $206.39 | $67,357.43 | $6,750.18 | $418.21 |
| 26 | 3/1/2010 | 3.58% | $2,029.59 | $1,828.64 | $200.95 | $65,528.80 | $6,951.14 | $619.16 |
| 27 | 4/1/2010 | 3.58% | $2,029.59 | $1,834.09 | $195.50 | $63,694.70 | $7,146.63 | $814.65 |

EXHIBIT Q   Page 140

| Payment # | Payment Date | Rate | Payment | Principal | Interest | New Balance | Cumulative Interest | Yearly Total Interest |
|---|---|---|---|---|---|---|---|---|
| 28 | 5/1/2010 | 3.58% | $2,029.59 | $1,839.57 | $190.02 | $61,855.14 | $7,336.66 | $1,004.68 |
| 29 | 6/1/2010 | 3.58% | $2,029.59 | $1,845.05 | $184.54 | $60,010.08 | $7,521.19 | $1,189.21 |
| 30 | 7/1/2010 | 3.58% | $2,029.59 | $1,850.56 | $179.03 | $58,159.53 | $7,700.23 | $1,368.25 |
| 31 | 8/1/2010 | 3.58% | $2,029.59 | $1,856.08 | $173.51 | $56,303.45 | $7,873.74 | $1,541.76 |
| 32 | 9/1/2010 | 3.58% | $2,029.59 | $1,861.62 | $167.97 | $54,441.83 | $8,041.71 | $1,709.73 |
| 33 | 10/1/2010 | 3.58% | $2,029.59 | $1,867.17 | $162.42 | $52,574.66 | $8,204.13 | $1,872.15 |
| 34 | 11/1/2010 | 3.58% | $2,029.59 | $1,872.74 | $156.85 | $50,701.92 | $8,360.98 | $2,029.00 |
| 35 | 12/1/2010 | 3.58% | $2,029.59 | $1,878.33 | $151.26 | $48,823.59 | $8,512.24 | $2,180.27 |
| 36 | 1/1/2011 | 3.58% | $2,029.59 | $1,883.93 | $145.66 | $46,939.66 | $8,657.90 | $145.66 |
| 37 | 2/1/2011 | 3.58% | $2,029.59 | $1,889.55 | $140.04 | $45,050.11 | $8,797.94 | $285.70 |
| 38 | 3/1/2011 | 3.58% | $2,029.59 | $1,895.19 | $134.40 | $43,154.92 | $8,932.34 | $420.10 |
| 39 | 4/1/2011 | 3.58% | $2,029.59 | $1,900.84 | $128.75 | $41,254.08 | $9,061.09 | $548.85 |
| 40 | 5/1/2011 | 3.58% | $2,029.59 | $1,906.51 | $123.08 | $39,347.57 | $9,184.17 | $671.92 |
| 41 | 6/1/2011 | 3.58% | $2,029.59 | $1,912.20 | $117.39 | $37,435.37 | $9,301.56 | $789.31 |
| 42 | 7/1/2011 | 3.58% | $2,029.59 | $1,917.91 | $111.68 | $35,517.46 | $9,413.24 | $901.00 |
| 43 | 8/1/2011 | 3.58% | $2,029.59 | $1,923.63 | $105.96 | $33,593.83 | $9,519.20 | $1,006.96 |
| 44 | 9/1/2011 | 3.58% | $2,029.59 | $1,929.37 | $100.22 | $31,664.47 | $9,619.43 | $1,107.18 |
| 45 | 10/1/2011 | 3.58% | $2,029.59 | $1,935.12 | $94.47 | $29,729.35 | $9,713.90 | $1,201.65 |
| 46 | 11/1/2011 | 3.58% | $2,029.59 | $1,940.90 | $88.69 | $27,788.45 | $9,802.59 | $1,290.35 |
| 47 | 12/1/2011 | 3.58% | $2,029.59 | $1,946.69 | $82.90 | $25,841.77 | $9,885.50 | $1,373.25 |
| 48 | 1/1/2012 | 3.58% | $2,029.59 | $1,952.49 | $77.10 | $23,889.27 | $9,962.59 | $77.10 |
| 49 | 2/1/2012 | 3.58% | $2,029.59 | $1,958.32 | $71.27 | $21,930.95 | $10,033.86 | $148.37 |
| 50 | 3/1/2012 | 3.58% | $2,029.59 | $1,964.16 | $65.43 | $19,966.79 | $10,099.29 | $213.80 |
| 51 | 4/1/2012 | 3.58% | $2,029.59 | $1,970.02 | $59.57 | $17,996.77 | $10,158.86 | $273.37 |
| 52 | 5/1/2012 | 3.58% | $2,029.59 | $1,975.90 | $53.69 | $16,020.88 | $10,212.56 | $327.06 |
| 53 | 6/1/2012 | 3.58% | $2,029.59 | $1,981.79 | $47.80 | $14,039.08 | $10,260.35 | $374.86 |
| 54 | 7/1/2012 | 3.58% | $2,029.59 | $1,987.70 | $41.89 | $12,051.38 | $10,302.24 | $416.74 |
| 55 | 8/1/2012 | 3.58% | $2,029.59 | $1,993.63 | $35.96 | $10,057.74 | $10,338.19 | $452.70 |
| 56 | 9/1/2012 | 3.58% | $2,029.59 | $1,999.58 | $30.01 | $8,058.16 | $10,368.20 | $482.71 |
| 57 | 10/1/2012 | 3.58% | $2,029.59 | $2,005.55 | $24.04 | $6,052.61 | $10,392.24 | $506.75 |
| 58 | 11/1/2012 | 3.58% | $2,029.59 | $2,011.53 | $18.06 | $4,041.08 | $10,410.30 | $524.81 |
| 59 | 12/1/2012 | 3.58% | $2,029.59 | $2,017.53 | $12.06 | $2,023.55 | $10,422.36 | $536.87 |
| 60 | 1/1/2013 | 3.58% | $2,029.46 | $2,023.55 | $6.04 | $0.00 | $10,428.40 | $6.04 |
| | | | $121,775.27 | $111,347.00 | $10,428.40 | | | |

EXHIBIT Q   Page 141

FINRA DISPUTE RESOLUTION

IN THE MATTER OF THE ARBITRATION BETWEEN

WELLS FARGO INVESTMENTS, LLC,

Claimant,

and-

KENNETH C. SHAFFER,

Respondent.

No. 10-00773

### AFFIDAVIT OF RONALD P. KANE

I, Ronald P. Kane, being duly sworn, on oath, hereby state:

1.      I am a principal and an attorney with the firm of Kane & Fischer, Ltd., licensed to practice in the State of Illinois and other courts.  In my capacity as attorney for Wells Fargo Investments, LLC ("Wells Fargo"), I submit this affidavit in support of Wells Fargo's request for costs and attorneys fees in this matter.

2.      It is the practice of Kane & Fischer, Ltd. that time is notated on time sheets by all personnel on a daily basis reflecting the services performed and the amount of time spent on the matter.

3.      The billing rate for Ronald P. Kane is $225.00.  The billing rate for Diane C. Fischer is $210.00.  The billing rate for Jin-Ho Chung and Paul T. Cahill is $185.00.  The billing rate for Stephany D. McLaughlin is $165.00.  The billing rate for Jason R. Lindsay and Thomas A. Volz was $185.00.  The billing rate for paralegals Geri L. Pinarski, Christina M. Manuele and Gina M. Chereck is $75.00.  The figures set forth on the annexed schedule were obtained from the time sheets submitted by Kane & Fischer personnel and are true and correct.

4.     The attorney fees associated with work done by the attorneys and paralegals mentioned above were billed at the customary rates.  These rates are reasonable in light of the experience of the individuals involved and the average attorney and paralegal billing rates generally prevailing in Chicago, Illinois.  The attorney and paralegal fees for this action total $29,814.00.

5.     The costs incurred for this action total $8,862.06 and include FINRA filing fees of $7,600.00, copying charges, facsimile charges, Federal Express delivery charges, long distance carrier charges, Securities Arbitration Commentator ("SAC") research charges, State Bar of California filing fees and Westlaw charges.

6.     The attorney fees and costs incurred by Wells Fargo are reasonable and necessary to a full and proper presentation.

FURTHER AFFIANT SAYETH NAUGHT.

_Ronald P. Kane_
Ronald P. Kane

SUBSCRIBED and SWORN to
before me this _31st_ day
of _December_, 20 _10_

_Christina M. Manuele_
NOTARY PUBLIC

```
OFFICIAL SEAL
CHRISTINA M MANUELE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/12/12
```

2

EXHIBIT R  Page 143

WELLS FARGO INVESTMENTS, LLC V. KENNETH C. SHAFFER
ATTORNEYS FEES AND COSTS

**FEES:**

| | | |
|---|---|---:|
| 1. | Attorney Time | $27,864.00 |
| | Ronald P. Kane ($225) hrs = 37.1 | |
| | Diane C. Fischer ($210) hrs = 16.3 | |
| | Jason R. Lindsay ($185) hrs = 2.2 | |
| | Jin-Ho Chung ($185) hrs = 80.3 | |
| | Paul T. Cahill ($185) hrs = 0.6 | |
| | Thomas A. Volz ($185) hrs = 3.0 | |
| | Stephany D. McLaughlin ($165) hrs = 1.0 | |
| 2. | Paralegal Time | $1,950.00 |
| | Geri L. Pinarski ($75) hrs = 2.1 | |
| | Christina M. Manuele ($75) hrs = 11.4 | |
| | Gina M. Chereck ($75) hrs = 12.5 | |

**Total Fees:**                                                     $29,814.00

**COSTS:**

| | | |
|---|---|---:|
| 1. | Copying charges | $193.65 |
| 2. | Facsimile charges | $1.00 |
| 3. | Federal Express delivery charges | $184.47 |
| 4. | FINRA filing fees | $7,600.00 |
| 5. | Long distance carrier charges | $3.69 |
| 6. | SAC – Arbitrator Decisions | $510.00 |
| 7. | State Bar of California fees | $50.00 |
| 8. | Westlaw charges | $319.25 |

**Total Costs:**                                                   $8,862.06

3

EXHIBIT R   Page 144

WELLS FARGO INVESTMENTS, LLC                    Page 1
V.
KENNETH C. SHAFFER
5248Z008

BILL HISTORY

| Date | Staff ID | Work Description | Hours | Rate | Amount |
|------|----------|-----------------|-------|------|--------|
| 10/13/2009 | DCF | Review correspondence from client regarding new matter. | 0.10 | $210.00 | $21.00 |
| 10/14/2009 | GLP | Review documents received from client regarding new matter against Kenneth Craig Shaffer; Conference with Gina Chereck regarding additional information needed from client for pursuing collection of amounts owed by Shaffer. | 0.40 | $75.00 | $30.00 |
| 10/16/2009 | JRL | Receive and review documents for Shaffer; Conference with Gina Chereck regarding demand letter for Shaffer; Left message with client regarding same. | 0.40 | $185.00 | $74.00 |
| 10/16/2009 | GMC | Review case documents; Research regarding Shaffer's registration; Calculate amounts owed by Shaffer; Prepare memo to Jason Lindsay regarding facts and how to proceed. | 1.50 | $75.00 | $112.50 |
| 10/20/2009 | JRL | Telephone call from client regarding case facts; Review and revise initial demand letter to Shaffer. | 1.20 | $185.00 | $222.00 |
| 10/20/2009 | GMC | Prepare draft demand letter to Shaffer. | 0.60 | $75.00 | $45.00 |
| 10/20/2009 | GLP | Review demand letter to Shaffer. | 0.20 | $75.00 | $15.00 |
| 10/21/2009 | JRL | Receive and review documents from the client. | 0.40 | $185.00 | $74.00 |
| 10/22/2009 | GMC | E-mails to and from Jason Lindsay regarding demand letter to Shaffer. | 0.20 | $75.00 | $15.00 |
| 11/17/2009 | JRL | Receive and review letter from Shaffer responding to demand letter. | 0.20 | $185.00 | $37.00 |
| 11/19/2009 | GMC | E-mails to and from Jason Lindsay regarding response to demand letter. | 0.20 | $75.00 | $15.00 |
| 12/8/2009 | TAV | Review documents obtained from client; Review letter from Shaffer disputing debt; Telephone conversation with client regarding case; E-mail to client regarding same; Draft, review and revise e-mail to client regarding proceeding with Statement of Claim. | 2.10 | $185.00 | $388.50 |
| 12/9/2009 | TAV | Revise draft e-mail to client regarding proceeding with Statement of Claim. | 0.50 | $185.00 | $92.50 |
| 12/17/2009 | GMC | Prepare Statement of Claim; Finalize memo to client regarding facts and how to proceed. | 1.30 | $75.00 | $97.50 |
| 12/17/2009 | GLP | Review and revise Statement of Claim against Shaffer. | 0.30 | $75.00 | $22.50 |
| 12/17/2009 | DCF | E-mails from and to Gina Chereck regarding memo to client regarding proceeding with Statement of Claim. | 0.20 | $210.00 | $42.00 |
| 12/30/2009 | DCF | E-mails from and to Gina Chereck regarding authority to proceed with Statement of Claim. | 0.20 | $210.00 | $42.00 |
| 1/6/2010 | GMC | Follow up with client regarding how to proceed. | 0.10 | $75.00 | $7.50 |

EXHIBIT S   Page 145

WELLS FARGO INVESTMENTS, LLC          Page 2
V.
KENNETH C. SHAFFER
5248Z008

BILL HISTORY

| 1/6/2010 | TAV | E-mails from and to Gina Chereck regarding filing of Statement of Claim. | 0.10 | $185.00 | $18.50 |
|---|---|---|---|---|---|
| 1/14/2010 | DCF | E-mails from and to Gina Chereck regarding request for authority to proceed with Statement of Claim against Shaffer. | 0.20 | $210.00 | $42.00 |
| 1/14/2010 | GMC | Follow up with client regarding proceeding with Statement of Claim. | 0.10 | $75.00 | $7.50 |
| 1/22/2010 | DCF | E-mail to Gina Chereck regarding authority to proceed from client against Shaffer. | 0.10 | $210.00 | $21.00 |
| 1/28/2010 | GMC | Prepare FINRA Submission Agreement and e-mail to client regarding same. | 0.20 | $75.00 | $15.00 |
| 2/17/2010 | GMC | Finalize Statement of Claim and exhibits for same; Prepare letter to FINRA regarding Statement of Claim; Prepare Tom Volz' California Certificate for Out-of-State Arbitration Counsel; Prepare letter to California State Bar regarding same. | 1.50 | $75.00 | $112.50 |
| 2/17/2010 | TAV | Finalize Statement of Claim and letters to FINRA and California State Bar Association regarding filing of same. | 0.30 | $185.00 | $55.50 |
| 2/25/2010 | GMC | E-mails to and from Tom Volz regarding Statement of Claim filed against Shaffer. | 0.20 | $75.00 | $15.00 |
| 3/1/2010 | DCF | Review correspondence to Shaffer from FINRA regarding his answer to Statement of Claim. | 0.10 | $210.00 | $21.00 |
| 3/25/2010 | GMC | E-mails to and from Jin-Ho regarding status of case. | 0.20 | $75.00 | $15.00 |
| 4/16/2010 | JHC | Review and analyze Shaffer's Answer to Statement of Claim. | 0.50 | $185.00 | $92.50 |
| 4/23/2010 | GMC | E-mails to and from Jin-Ho Chung regarding Shaffer's Answer to Statement of Claim. | 0.20 | $75.00 | $15.00 |
| 4/28/2010 | JHC | Draft letter to FINRA regarding Shaffer's Answer; Telephone conference with FINRA regarding same. | 1.00 | $185.00 | $185.00 |
| 5/3/2010 | DCF | Review correspondence from FINRA regarding arbitrator rankings. | 0.10 | $210.00 | $21.00 |
| 5/3/2010 | CMM | Review arbitrator profiles; Prepare summary of possible arbitrators; Prepare draft letter to client regarding arbitrator profiles. | 1.30 | $75.00 | $97.50 |
| 5/5/2010 | JHC | Review/analyze documents produced by Shaffer in support of his Counterclaim; Begin drafting Response to Shaffer's Counterclaim. | 1.60 | $185.00 | $296.00 |
| 5/6/2010 | JHC | Continue to draft Response to Shaffer's Counterclaim. | 1.50 | $185.00 | $277.50 |
| 5/7/2010 | GMC | E-mails to and from Jin-Ho Chung regarding status of case and Answer to Counterclaim due date. | 0.20 | $75.00 | $15.00 |
| 5/10/2010 | GLP | Review invoice received from FINRA for accuracy. | 0.10 | $75.00 | $7.50 |

EXHIBIT S   Page 146

WELLS FARGO INVESTMENTS, LLC                                    Page 3
V.
KENNETH C. SHAFFER
5248Z008

BILL HISTORY

| | | | | | |
|---|---|---|---|---|---|
| 5/10/2010 | SDM | Perform legal research and prepare memo regarding same. | 1.00 | $165.00 | $165.00 |
| 5/12/2010 | JHC | Telephone conference with Shaffer regarding his Counterclaim; Continue to draft Response to Shaffer's Counterclaim. | 0.70 | $185.00 | $129.50 |
| 5/13/2010 | JHC | Legal research in support of Response to Shaffer's Counterclaim. | 0.50 | $185.00 | $92.50 |
| 5/14/2010 | CMM | E-mail to and e-mail from Diane Fischer regarding request for new list of possible arbitrators. | 0.10 | $75.00 | $7.50 |
| 5/14/2010 | DCF | E-mails from and to Christina Manuele and Jin-Ho Chung regarding Shaffer's Counterclaim for damages, notice to FINRA regarding same and how to proceed. | 0.40 | $210.00 | $84.00 |
| 5/17/2010 | CMM | Prepare letter to FINRA requesting list of 24 possible arbitrators. | 0.40 | $75.00 | $30.00 |
| 5/17/2010 | DCF | Review and revise letter to FINRA regarding number of arbitrators and ranking. | 0.20 | $210.00 | $42.00 |
| 5/17/2010 | JHC | Complete draft of Response to Shaffer's Counterclaim; Telephone conference with client regarding facts; Review documents received from client. | 5.50 | $185.00 | $1,017.50 |
| 5/18/2010 | JHC | Revise Response to Shaffer's Counterclaim; Telephone conference with client regarding facts. | 1.50 | $185.00 | $277.50 |
| 5/18/2010 | CMM | Telephone call to FINRA regarding whether new list of arbitrators will be sent and whether request to extend deadline of current list has been granted; E-mail from and e-mail to Diane Fischer regarding ranking deadline and request for new list of 24 possible arbitrators. | 0.20 | $75.00 | $15.00 |
| 5/18/2010 | DCF | E-mail to Christina Manuele regarding confirmation of extension of deadline to submit arbitrator rankings. | 0.10 | $210.00 | $21.00 |
| 5/19/2010 | JHC | Review and analyze documents sent by client; Telephone conference with client facts; Revise Answer to Shaffer's Counterclaim. | 1.20 | $185.00 | $222.00 |
| 5/19/2010 | CMM | Prepare letter to FINRA confirming that we will receive new list of proposed arbitrators; Telephone call to FINRA regarding request for new list of 24 proposed arbitrators. | 0.40 | $75.00 | $30.00 |
| 5/19/2010 | DCF | E-mails from and to Christina Manuele regarding revised arbitrator lists and extension of deadline to submit same; E-mails from and to Jin-Ho Chung regarding response to Shaffer's counterclaim and confirmation of Shaffer's payment of fees. | 0.40 | $210.00 | $84.00 |

EXHIBIT S   Page 147

WELLS FARGO INVESTMENTS, LLC                    Page 4
V.
KENNETH C. SHAFFER
5248Z008

BILL HISTORY

| Date | Init | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 5/20/2010 | JHC | Review additional documents received from client. | 0.60 | $185.00 | $111.00 |
| 5/21/2010 | JHC | Review additional documents sent by client; Telephone conference with client regarding facts; Telephone conference with FINRA regarding Shaffer's Counterclaim; Conferences with Diane Fischer regarding how to proceed; Review file; Draft e-mail to client regarding facts and how to proceed. | 1.80 | $185.00 | $333.00 |
| 5/21/2010 | DCF | E-mails from and to Jin-Ho Chung regarding Response to Counterclaim, agreement to arbitrate discrimination claims and how to proceed. | 1.00 | $210.00 | $210.00 |
| 5/24/2010 | DCF | Review and revise Answer to Counterclaim; Review correspondence from FINRA regarding arbitrator rankings. | 2.60 | $210.00 | $546.00 |
| 5/24/2010 | JHC | Revise Response to Shaffer's Counterclaim; Supplemental legal research; Conferences with Diane Fischer regarding same. | 1.20 | $185.00 | $222.00 |
| 5/26/2010 | CMM | Review arbitrator profiles; Prepare summary of possible arbitrators; Prepare draft letter to client regarding new arbitrator profiles. | 0.50 | $75.00 | $37.50 |
| 6/1/2010 | CMM | Work on summary of possible arbitrators; Research on SCAN PLUS regarding SAC award reports. | 2.50 | $75.00 | $187.50 |
| 6/2/2010 | CMM | Revise letter to client regarding new arbitrator profiles. | 0.20 | $75.00 | $15.00 |
| 6/4/2010 | GMC | Conference with Jin-Ho Chung regarding arbitrator rankings. | 0.20 | $75.00 | $15.00 |
| 6/7/2010 | CMM | Work on summary of possible arbitrators. | 1.60 | $75.00 | $120.00 |
| 6/9/2010 | CMM | Work on summary of possible arbitrators; Prepare letter to FINRA regarding arbitrator ranking sheet. | 1.70 | $75.00 | $127.50 |
| 6/9/2010 | DCF | Review summary of proposed arbitrators and certain decisions and rank arbitrators. | 3.50 | $210.00 | $735.00 |
| 6/10/2010 | CMM | Review arbitrator profiles for possible disclosures. | 0.20 | $75.00 | $15.00 |
| 6/11/2010 | CMM | E-mail to Diane Fischer advising that no arbitrator disclosures are necessary. | 0.10 | $75.00 | $7.50 |
| 6/25/2010 | JHC | Follow-up telephone conference with client regarding facts; Review additional materials sent by client. | 2.10 | $185.00 | $388.50 |
| 7/15/2010 | CMM | Prepare memo regarding composition of panel. | 0.10 | $75.00 | $7.50 |
| 7/19/2010 | GMC | Conference with Jin-Ho Chung regarding status of arbitration and how to proceed. | 0.30 | $75.00 | $22.50 |
| 7/21/2010 | DCF | Review correspondence from FINRA regarding additional arbitrator disclosures. | 0.10 | $210.00 | $21.00 |
| 7/27/2010 | DCF | Review arbitration panel composition. | 0.10 | $210.00 | $21.00 |

EXHIBIT S   Page 148

WELLS FARGO INVESTMENTS, LLC                    Page 5
V.
KENNETH C. SHAFFER
5248Z008

BILL HISTORY

| 7/28/2010 | PTC | Telephone calls to and from Shaffer regarding initial pre-hearing conference; Telephone call to FINRA to cancel initial pre-hearing conference; Prepare confirming e-mail to FINRA canceling initial pre-hearing conference and providing alternative dates. | 0.60 | $185.00 | $111.00 |
|-----------|-----|------|------|---------|---------|
| 8/2/2010 | JHC | Telephone conference with and e-mail to FINRA regarding scheduling issues. | 0.10 | $185.00 | $18.50 |
| 8/5/2010 | DCF | Review correspondence from FINRA and additional arbitrator disclosures. | 0.10 | $210.00 | $21.00 |
| 8/6/2010 | JHC | Review and analyze letter from Shaffer regarding modifying language in Form U-5. | 0.50 | $185.00 | $92.50 |
| 8/6/2010 | DCF | E-mails from and to Jin-Ho Chung regarding case and how to proceed. | 0.20 | $210.00 | $42.00 |
| 8/11/2010 | JHC | Legal research; Draft e-mail to client regarding case and how to proceed. | 1.60 | $185.00 | $296.00 |
| 8/11/2010 | DCF | Review, revise and finalize e-mail to client regarding Shaffer's letter and request for authority to proceed; E-mails from and to Jin-Ho Chung regarding memo to client. | 0.40 | $210.00 | $84.00 |
| 8/12/2010 | DCF | E-mail to Jin-Ho Chung regarding how to proceed. | 0.10 | $210.00 | $21.00 |
| 8/16/2010 | GMC | Conference with Jin-Ho Chung regarding status of case and rescheduling of initial pre-hearing conference. | 0.20 | $75.00 | $15.00 |
| 8/19/2010 | JHC | Telephone conference with client regarding case. | 0.30 | $185.00 | $55.50 |
| 8/31/2010 | DCF | E-mail to client regarding case. | 0.10 | $210.00 | $21.00 |
| 9/2/2010 | DCF | E-mail to Gina Chereck regarding how to proceed. | 0.10 | $210.00 | $21.00 |
| 9/3/2010 | DCF | E-mail to Gina Chereck regarding Shaffer's request to modify form U-5. | 0.10 | $210.00 | $21.00 |
| 9/10/2010 | CMM | Telephone call to and e-mail from FINRA requesting updated arbitrator profile; Prepare memo to client regarding case. | 0.30 | $75.00 | $22.50 |
| 9/10/2010 | JHC | Telephone conference with Shaffer regarding possible hearing dates. | 0.10 | $185.00 | $18.50 |
| 9/10/2010 | RPK | E-mails to and from Jin-Ho Chung regarding hearing; Review additional arbitrator disclosures; E-mails to and from client regarding hearing and additional arbitrator disclosures. | 0.60 | $225.00 | $135.00 |
| 9/13/2010 | JHC | Participate in initial prehearing conference call. | 0.90 | $185.00 | $166.50 |
| 9/14/2010 | DCF | Review, revise and finalize e-mail to client regarding case request for authority to proceed; E-mails from and to Jin-Ho Chung regarding same. | 0.40 | $210.00 | $84.00 |

EXHIBIT S   Page 149

WELLS FARGO INVESTMENTS, LLC                    Page 6
V.
KENNETH C. SHAFFER
5248Z008

BILL HISTORY

| | | | | | |
|---|---|---|---|---|---|
| 9/20/2010 | JHC | Analyze file and begin formulating discovery to serve on Shaffer; Draft chart of proof. | 0.80 | $185.00 | $148.00 |
| 9/22/2010 | JHC | Draft discovery requests; Revise chart of proof; Telephone conference with client regarding hearing dates and preparation for hearing; Review and analyze attachments to Shaffer's counterclaim and documents produced by Shaffer in connection with drafting discovery requests; Draft motion for issuance of third party subpoenas. | 5.20 | $185.00 | $962.00 |
| 9/23/2010 | JHC | Continue to draft discovery requests and motion for issuance of third party subpoenas; Telephone conferences with witnesses regarding facts. | 3.10 | $185.00 | $573.50 |
| 9/23/2010 | DCF | Review correspondence from FINRA regarding pre-hearing conference scheduling order. | 0.10 | $210.00 | $21.00 |
| 9/24/2010 | JHC | Review prehearing scheduling order and apparent error in same; Draft letter to FINRA asking Panel Chair to correct deadline for submission of written discovery. | 0.40 | $185.00 | $74.00 |
| 9/24/2010 | DCF | E-mails from and to Jin-Ho Chung regarding errors in initial prehearing conference scheduling order and how to proceed; Review and revise letter to FINRA regarding initial pre-hearing conference and changes to Order regarding same. | 0.50 | $210.00 | $105.00 |
| 9/30/2010 | DCF | Review pleadings and discovery request and motion for issuance of subpoenas and notes to Jin-Ho Chung regarding changes and additions to be made, and additional information and documents to be obtained generally. | 2.50 | $210.00 | $525.00 |
| 9/30/2010 | JHC | Revise motion for issuance of subpoenas; Revise discovery requests on Shaffer. | 1.30 | $185.00 | $240.50 |
| 9/30/2010 | CMM | Research on Internet regarding CRD on E-Trade; Conference with Jin-Ho Chung regarding subpoena to E-Trade. | 0.20 | $75.00 | $15.00 |
| 10/7/2010 | JHC | Review/analyze documents sent by client. | 0.20 | $185.00 | $37.00 |
| 10/13/2010 | JHC | Review documents sent by client. | 0.40 | $185.00 | $74.00 |
| 10/18/2010 | JHC | Telephone conference with FINRA regarding status of ruling on WFI's request for clarification on Panel Chair's prehearing discovery calendar. | 0.10 | $185.00 | $18.50 |
| 10/22/2010 | JHC | Review correspondence from Panel Chair regarding discovery calendar and message for FINRA regarding same; Telephone conference with client regarding facts. | 0.20 | $185.00 | $37.00 |
| 10/25/2010 | DCF | E-mails from and to Jin-Ho Chung regarding discovery served on Shaffer. | 0.20 | $210.00 | $42.00 |

EXHIBIT S   Page 150

WELLS FARGO INVESTMENTS, LLC                    Page 7
V.
KENNETH C. SHAFFER
5248Z008

BILL HISTORY

| | | | | | |
|---|---|---|---|---|---|
| 10/28/2010 | JHC | Telephone conference with FINRA regarding Panel Chair's letter and how to proceed in light of same; At FINRA's direction, draft e-mail to FINRA regarding Panel Chair's letter requesting clarification of certain rulings. | 0.50 | $185.00 | $92.50 |
| 10/29/2010 | JHC | Review and analyze Shaffer's discovery requests; Review subpoenas issued by Panel Chair pursuant to motion for issuance of third party subpoenas; Review multiple letters and certificates of services for issuance of subpoenas to non-parties; Telephone conferences with FINRA regarding Panel Chair's discovery order and modified discovery calendar; Begin drafting responses to Shaffer's discovery requests. | 1.20 | $185.00 | $222.00 |
| 10/29/2010 | CMM | Prepare letter to Wedbush Morgan Securities, Inc. regarding subpoena; Prepare letter to E*Trade Financial regarding subpoena; Prepare letter to Stifel, Nicolaus & Company, Incorporated regarding subpoena; Prepare letter to Chase Investment Services Corp. regarding subpoena; Revise certificate of service for subpoena to Wedbush Morgan Securities, Inc.; Revise certificate of service for subpoena to E*Trade Financial; Revise certificate of service for subpoena to Stifel, Nicolaus & Company, Incorporated; Revise certificate of service for subpoena to Chase Investment Services Corp.; Revise certificate of service for subpoena to Ameriprise Financial Services, Inc.; Revise letter to Ameriprise Financial Services Inc. regarding subpoena; Telephone call to E*Trade regarding subpoena; Research on Internet regarding CRD for E*Trade; | 1.60 | $75.00 | $120.00 |
| 11/1/2010 | JHC | Review correspondence from FINRA regarding discovery schedule and applicable rules. | 0.10 | $185.00 | $18.50 |
| 11/1/2010 | JHC | Telephone conference with subpoena respondent regarding documents needed. | 0.20 | $185.00 | $37.00 |
| 11/1/2010 | DCF | E-mail from Jin-Ho Chung regarding the Chairperson's Order on discovery. | 0.10 | $210.00 | $21.00 |
| 11/2/2010 | JHC | Telephone conference with various Wedbush Securities personnel regarding their interview with Shaffer and why he wasn't offered a position. | 0.50 | $185.00 | $92.50 |
| 11/2/2010 | JHC | Prepare memo to file regarding interview of Wedbush Securities personnel. | 0.30 | $185.00 | $55.50 |

EXHIBIT S   Page 151

WELLS FARGO INVESTMENTS, LLC
V.
KENNETH C. SHAFFER
5248Z008

Page 8

BILL HISTORY

| 11/3/2010 | JHC | Draft responses to Shaffer's discovery requests. | 0.50 | $185.00 | $92.50 |
|---|---|---|---|---|---|
| 11/3/2010 | JHC | Telephone conference with client regarding Shaffer's discovery requests. | 0.10 | $185.00 | $18.50 |
| 11/3/2010 | JHC | Review correspondence from FINRA regarding status of case. | 0.10 | $185.00 | $18.50 |
| 11/4/2010 | JHC | Telephone conference with client regarding Shaffer's discovery requests, additional information concerning Shaffer's employment, and preparations for the hearing in January 2011. | 0.70 | $185.00 | $129.50 |
| 11/4/2010 | JHC | Conference with Paul Cahill regarding case. | 0.20 | $185.00 | $37.00 |
| 11/4/2010 | DCF | Review proposed discovery response and notes to Jin-Ho Chung with questions and comments. | 0.30 | $210.00 | $63.00 |
| 11/5/2010 | JHC | Draft e-mail to client regarding documents needed for discovery. | 0.10 | $185.00 | $18.50 |
| 11/8/2010 | JHC | Multiple telephone conferences with client regarding facts. | 0.40 | $185.00 | $74.00 |
| 11/8/2010 | JHC | Review Panel Chair's revised discovery order. | 0.10 | $185.00 | $18.50 |
| 11/8/2010 | JHC | Telephone conference with FINRA regarding Panel Chair's discovery order regarding deadline to file WFI's motion to compel and requesting that FINRA ask him to correct same. | 0.30 | $185.00 | $55.50 |
| 11/8/2010 | JHC | Review documents sent by client. | 0.30 | $185.00 | $55.50 |
| 11/9/2010 | JHC | Telephone conference with FINRA representative regarding discovery questions and schedule. | 0.20 | $185.00 | $37.00 |
| 11/10/2010 | JHC | Telephone conference with FINRA regarding discovery dates and related issues. | 0.10 | $185.00 | $18.50 |
| 11/11/2010 | JHC | Telephone conference with FINRA regarding status of discovery scheduled as modified by Panel Chair. | 0.10 | $185.00 | $18.50 |
| 11/12/2010 | JHC | Telephone conference with FINRA representatives regarding discovery calendar. | 0.10 | $185.00 | $18.50 |
| 11/12/2010 | GMC | Review case documents. | 0.30 | $75.00 | $22.50 |
| 11/15/2010 | JHC | Telephone conference with J.P. Morgan Chase N.A. regarding subpoena issued by Panel Chair. | 0.20 | $185.00 | $37.00 |
| 11/15/2010 | GMC | E-mail to client requesting additional documents; Conference with Jin-Ho Chung regarding same. | 0.20 | $75.00 | $15.00 |
| 11/15/2010 | GMC | Telephone conversation with Chase regarding subpoena; Conference with Jin-Ho Chung regarding same. | 0.20 | $75.00 | $15.00 |
| 11/16/2010 | JHC | Draft motion to compel. | 0.30 | $185.00 | $55.50 |

EXHIBIT S   Page 152

WELLS FARGO INVESTMENTS, LLC          Page 9
V.
KENNETH C. SHAFFER
5248Z008

BILL HISTORY

| | | | | | |
|---|---|---|---|---|---|
| 11/16/2010 | GMC | E-mails from and to client regarding documents requested. | 0.20 | $75.00 | $15.00 |
| 11/17/2010 | JHC | Review documents sent by client. | 0.60 | $185.00 | $111.00 |
| 11/18/2010 | DCF | Review and revise motion to compel and questions to Jin-Ho Chung regarding same. | 0.20 | $210.00 | $42.00 |
| 11/19/2010 | JHC | Draft motion for sanctions. | 0.80 | $185.00 | $148.00 |
| 11/19/2010 | JHC | Review E-Trade's response to subpoena. | 0.10 | $185.00 | $18.50 |
| 11/22/2010 | DCF | Review and revise motion to compel and for sanctions. | 0.50 | $210.00 | $105.00 |
| 11/22/2010 | JHC | Revise motion for sanctions and in the alternative, to compel. | 0.50 | $185.00 | $92.50 |
| 11/22/2010 | DCF | E-mail to Jin-Ho Chung regarding discovery deadlines. | 0.10 | $210.00 | $21.00 |
| 11/23/2010 | JHC | Review letter from Chase Bank (third party subpoena respondent) regarding subpoena issued by WFI. | 0.10 | $185.00 | $18.50 |
| 11/23/2010 | JHC | Telephone conference with Chase Bank regarding subpoena issued by WFI. | 0.10 | $185.00 | $18.50 |
| 11/24/2010 | JHC | Review and analyze Shaffer's response to WFI's motion for sanctions/motion to compel. | 0.20 | $185.00 | $37.00 |
| 11/24/2010 | JHC | Communicate with JP Morgan Chase (3rd party subpoena respondent) regarding timetable for its compliance with the subpoena issued by FINRA. | 0.10 | $185.00 | $18.50 |
| 11/29/2010 | JHC | Review documents sent by client. | 0.80 | $185.00 | $148.00 |
| 11/29/2010 | JHC | Review correspondence from Stifel Nicolaus regarding response to subpoena. | 0.10 | $185.00 | $18.50 |
| 11/30/2010 | JHC | Revise discovery responses. | 0.20 | $185.00 | $37.00 |
| 11/30/2010 | JHC | E-correspondence with Diane Fischer regarding discovery. | 0.10 | $185.00 | $18.50 |
| 11/30/2010 | DCF | Review revised discovery response and notes to Jin-Ho Chung regarding same. | 0.10 | $210.00 | $21.00 |
| 12/1/2010 | DCF | E-mails from and to Jin-Ho Chung regarding reply to Shaffer's response to WF's Motion for Sanctions and how to proceed. | 0.10 | $210.00 | $21.00 |
| 12/3/2010 | GMC | Conference with Jin-Ho Chung regarding hearing date and preparation for same. | 0.20 | $75.00 | $15.00 |
| 12/8/2010 | JHC | Draft prehearing exchange and revise chart of proof. | 1.80 | $185.00 | $333.00 |
| 12/8/2010 | JHC | Review client documents in preparation for production of same in connection with prehearing exchange of witnesses and exhibits. | 2.40 | $185.00 | $444.00 |
| 12/8/2010 | JHC | Telephone conference with witness regarding facts. | 0.30 | $185.00 | $55.50 |
| 12/9/2010 | JHC | Multiple telephone conferences with client regarding case and upcoming hearing. | 0.80 | $185.00 | $148.00 |
| 12/9/2010 | JHC | Draft confidentiality agreement. | 0.10 | $185.00 | $18.50 |

WELLS FARGO INVESTMENTS, LLC                    Page 10
V.
KENNETH C. SHAFFER
5248Z008

BILL HISTORY

| 12/9/2010 | JHC | Telephone conference with Shaffer regarding hearing dates for motion for sanctions. | 0.10 | $185.00 | $18.50 |
|---|---|---|---|---|---|
| 12/9/2010 | JHC | Revise chart of proof and draft prehearing exchange. | 0.50 | $185.00 | $92.50 |
| 12/9/2010 | JHC | Review documents for production in connection with prehearing witness and exhibit exchange. | 2.10 | $185.00 | $388.50 |
| 12/9/2010 | JHC | Analyze how to proceed and what documents to include in prehearing witness and exhibit list in light of conferences with client | 0.30 | $185.00 | $55.50 |
| 12/9/2010 | JHC | Telephone conferences with client regarding facts. | 0.70 | $185.00 | $129.50 |
| 12/10/2010 | JHC | Review documents sent by client. | 1.50 | $185.00 | $277.50 |
| 12/10/2010 | JHC | Telephone conference with Eric Segall of Wedbush Securities. | 0.10 | $185.00 | $18.50 |
| 12/10/2010 | DCF | Review correspondence from FINRA regarding pre-hearing conference on Motion for Sanctions. | 0.10 | $210.00 | $21.00 |
| 12/13/2010 | JHC | Follow up with subpoena respondents regarding status of document production. | 0.30 | $185.00 | $55.50 |
| 12/13/2010 | JHC | Review documents sent by client. | 0.80 | $185.00 | $148.00 |
| 12/13/2010 | JHC | Prepare for telephonic hearing on motion for sanctions. | 0.40 | $185.00 | $74.00 |
| 12/13/2010 | GMC | Prepare supporting documentation for fee petition for pre-hearing exchange. | 1.80 | $75.00 | $135.00 |
| 12/14/2010 | JHC | Telephone conference with J.P. Morgan Chase personnel regarding subpoena issued by Panel Chair. | 0.20 | $185.00 | $37.00 |
| 12/14/2010 | JHC | Prepare for and argue motion for sanctions (or in the altnernative, motion to compel) against Shaffer. | 1.60 | $185.00 | $296.00 |
| 12/14/2010 | JHC | Review additional documents sent by client. | 1.80 | $185.00 | $333.00 |
| 12/14/2010 | JHC | Review Panel's discovery order and draft e-mail to FINRA requesting clarification of same with respect to deadline to submit prehearing witness and exhibit lists. | 0.40 | $185.00 | $74.00 |
| 12/14/2010 | GMC | E-mail to client requesting additional documents. | 0.20 | $75.00 | $15.00 |
| 12/15/2010 | JHC | Multiple telephone conferences with FINRA regarding Panel's ruling concerning pre-hearing witness and exhibits lists and requesting clarification of the Panel's discovery order. | 0.30 | $185.00 | $55.50 |
| 12/15/2010 | JHC | Review documents from client. | 1.80 | $185.00 | $333.00 |
| 12/15/2010 | GLP | Conference with Gina Chereck regarding pre-hearing exchange. | 0.20 | $75.00 | $15.00 |
| 12/15/2010 | JHC | Review documents produced by third party subpoena respondents. | 1.20 | $185.00 | $222.00 |

EXHIBIT S   Page 154

WELLS FARGO INVESTMENTS, LLC                    Page 11
V.
KENNETH C. SHAFFER
5248Z008

BILL HISTORY

| Date | Init | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 12/15/2010 | JHC | Telephone call to Shaffer leaving detailed message concerning proposed protective order. | 0.10 | $185.00 | $18.50 |
| 12/15/2010 | JHC | Review revised discovery order from FINRA Panel. | 0.10 | $185.00 | $18.50 |
| 12/16/2010 | JHC | Review documents sent by third party subpoena respondent J.P. Morgan Chase. | 0.10 | $185.00 | $18.50 |
| 12/18/2010 | RPK | Work on pre-hearing exchange. | 2.00 | $225.00 | $450.00 |
| 12/21/2010 | GLP | Conferences with Jin-Ho Chung regarding pre-hearing exchange. | 0.20 | $75.00 | $15.00 |
| 12/21/2010 | GLP | Review documents. | 0.50 | $75.00 | $37.50 |
| 12/21/2010 | GLP | E-mail to Jin-Ho Chung and Ron Kane regarding documents and how to proceed. | 0.20 | $75.00 | $15.00 |
| 12/21/2010 | JHC | Conference with Gina Chereck regarding additional documents to prepare for the prehearing witness and exhibit exchange. | 0.20 | $185.00 | $37.00 |
| 12/21/2010 | JHC | Conference with Geri Pinarski regarding documents. | 0.30 | $185.00 | $55.50 |
| 12/21/2010 | DCF | Review correspondence from FINRA regarding the arbitration hearing. | 0.10 | $210.00 | $21.00 |
| 12/21/2010 | JHC | Communicate with Shaffer regarding proposed protective order. | 0.20 | $185.00 | $37.00 |
| 12/21/2010 | JHC | Telephone conference with witnesses regarding preparations for hearing. | 0.30 | $185.00 | $55.50 |
| 12/21/2010 | DCF | E-mails from and to Jin-Ho Chung regarding documents to be produced to Shaffer, Motions to Compel and how to proceed. | 0.50 | $210.00 | $105.00 |
| 12/22/2010 | JHC | Telephone conference with witnesses regarding preparations for hearing; review documents sent by client; review documents and pre-hearing witness and exhibit list produced by Shaffer; review attorney affidavit regarding billing history; analyze how to proceed; draft letter to FINRA regarding Pre-Hearing Exchange. | 4.80 | $185.00 | $888.00 |
| 12/22/2010 | GMC | Finalize fee affidavit and supporting documentation for pre-hearing exchange; Prepare summary of amounts due; Conference with Jin-Ho Chung regarding same. | 1.00 | $75.00 | $75.00 |
| 12/23/2010 | JHC | Review and analyze documents and witness list produced by Shaffer; multiple telephone calls to witnesses regarding facts and hearing preparation; review all documents for preparation of exhibit books and possible use at hearing; telephone conferences with subpoena respondents regarding status of document production. | 3.80 | $185.00 | $703.00 |

EXHIBIT S   Page 155

WELLS FARGO INVESTMENTS, LLC                                    Page 12
V.
KENNETH C. SHAFFER
5248Z008

BILL HISTORY

| 12/27/2010 | JHC | Telephone conference with client regarding facts; draft memo regarding Shaffer's witnesses; organize files in preparation for hearing. | 1.80 | $185.00 | $333.00 |
|---|---|---|---|---|---|
| 12/27/2010 | RPK | Prepare for hearing. | 7.00 | $225.00 | $1,575.00 |
| 12/28/2010 | JHC | Conference with Ron Kane regarding case, documents produced in discovery, and how to proceed; review and analyze documents; telephone conferences with client regarding facts. | 2.30 | $185.00 | $425.50 |
| 12/28/2010 | RPK | Prepare for hearing. | 5.00 | $225.00 | $1,125.00 |
| 12/29/2010 | JHC | Correspondence with witnesses regarding preparations for hearing; telephone conference with witnesses regarding facts; review documents; telephone conference with Mary Mortensen regarding Dan Vetter; legal research. | 1.60 | $185.00 | $296.00 |
| 12/29/2010 | RPK | Prepare for hearing. | 1.50 | $225.00 | $337.50 |
| 12/30/2010 | GMC | Prepare exhibits for hearing; Obtain documents regarding Shaffer's potential witnesses. | 1.20 | $75.00 | $90.00 |
| 12/31/2010 | RPK | Prepare for hearing. | 6.00 | $225.00 | $1,350.00 |
| 1/3/2011 | RPK | Prepare for hearing. | 7.00 | $225.00 | $1,575.00 |
| 1/4/2011 | RPK | Attend hearing. | 8.00 | $225.00 | $1,800.00 |
| | | **TOTAL HOURS AND FEES:** | 166.50 | | $29,814.00 |

| | |
|---|---|
| Copies | $193.65 |
| Facsimile | $1.00 |
| Federal Express | $184.47 |
| FINRA Fees | $7,600.00 |
| Long Distance Carrier Charges | $3.69 |
| SAC - Arbitrator Decisions | $510.00 |
| State Bar of California Fees | $50.00 |
| Westlaw | $319.25 |
| **TOTAL COSTS:** | $8,862.06 |

| FEE SUMMARY: | HOURS | RATE | AMOUNT |
|---|---|---|---|
| Christina M. Manuele | 11.40 | $75.00 | $855.00 |
| Diane C. Fischer | 16.30 | $210.00 | $3,423.00 |
| Geri Lynn Pinarski | 2.10 | $75.00 | $157.50 |
| Gina M. Chereck | 12.50 | $75.00 | $937.50 |
| Jason R. Lindsay | 2.20 | $185.00 | $407.00 |
| Jin-Ho Chung | 80.30 | $185.00 | $14,855.50 |
| Paul T. Cahill | 0.60 | $185.00 | $111.00 |
| Stephany D. McLaughlin | 1.00 | $165.00 | $165.00 |
| Thomas A. Volz | 3.00 | $185.00 | $555.00 |

EXHIBIT S   Page 156

WELLS FARGO INVESTMENTS, LLC
V.
KENNETH C. SHAFFER
5248Z008

Page 13

BILL HISTORY

| | | | |
|---|---|---|---|
| Ronald P. Kane | 37.10 | $225.00 | $8,347.50 |
| TOTALS: | 166.50 | | $29,814.00 |

EXHIBIT S   Page 157

WELLS FARGO INVESTMENTS, LLC
V.
KENNETH C. SHAFFER

FINRA NO. 10-00773

## SUMMARY OF AMOUNTS DUE

| | |
|---|---|
| Principal Balance on Promissory Note dated January 4, 2008 (the "Note") | $74,617.76 |
| Interest accrued at the rate of 3.58% per annum on the balance due and owing under the Note during the period of October 2, 2009 through January 4, 2011 (460 days x $7.32 per day) | $3,367.20 |
| Attorneys' Fees | $29,814.00 |
| Costs | $8,862.06 |
| **TOTAL** | **$116,661.02** |



(7)

Form **1040**  Department of the Treasury—Internal Revenue Service
**U.S. Individual Income Tax Return** **2005**  (99)  IRS Use Only—Do not write or staple in this space

| | | | OMB No. 1545-0074 |
|---|---|---|---|

For the year Jan. 1–Dec. 31, 2005, or other tax year beginning _____, 2005, ending _____, 20___

**Label** (See instructions.) Use the IRS label. Otherwise, please print or type.

| | | |
|---|---|---|
| Your first name and initial | Last name | Your social security number |
| Kenneth c | Shaffer | ▮▮▮▮▮▮ |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
| Laura a | Shaffer | ▮▮▮▮▮▮ |
| Home address (number and street). If you have a P.O. box, see instructions. | Apt. no. | ▲ **You must enter your SSN(s) above.** |
| 5315 Garlenda Drive | | |
| City, town or post office, state, and ZIP code. If you have a foreign address, see instructions. | | Checking a box below will not change your tax or refund |
| El Dorado Hills CA 95762 | | |

**Presidential Election Campaign** ► Check here if you, or your spouse if filing jointly, want $3 to go to this fund (see page 16) ☐ You ☐ Spouse

**Filing Status**
Check only one box.

1 ☐ Single
2 ☒ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ►
4 ☐ Head of household (with qualifying person). (See instr.) If the qualifying person is a child but not your dependent, enter this child's name here. ►
5 ☐ Qualifying widow(er) with dependent child (see instructions)

**Exemptions**

6a ☒ **Yourself.** If someone can claim you as a dependent, do not check box 6a
b ☒ **Spouse**

| | Boxes checked on 6a and 6b | 2 |
|---|---|---|

c Dependents:

| (1) First name    Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ☒ if qualifying child for child tax credit (see instr.) |
|---|---|---|---|
| ▮▮▮▮ | ▮▮▮▮ | Son | X |
| ▮▮▮▮ | ▮▮▮▮ | Daughter | |

If more than four dependents, see instructions.

No. of children on 6c who:
• lived with you  2
• did not live with you due to divorce or separation (see instructions)
Dependents on 6c not entered above
Add numbers on lines above  **4**

d Total number of exemptions claimed

**Income**

Attach Form(s) W-2 here. Also attach Form(s) W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 7 | 56,789 |
|---|---|---|---|
| 8a | Taxable interest. Attach Schedule B if required | 8a | 847 |
| b | Tax-exempt interest. Do not include on line 8a | 8b | 0 |
| 9a | Ordinary dividends. Attach Schedule B if required | 9a | 5,089 |
| b | Qualified dividends (see instructions) | 9b | 3,5,109 |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see instructions) | 10 | 0 |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 | 0 |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ► | 13 | -1,013 |
| 14 | Other gains or (losses). Attach Form 4797 | 14 | |
| 15a | IRA distributions ROLLOVER 15a 24 | b Taxable amount (see instructions) | 15b | 0 |
| 16a | Pensions and annuities 16a | b Taxable amount (see instructions) | 16b | 0 |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | 0 |
| 18 | Farm income or (loss). Attach Schedule F | 18 | 0 |
| 19 | Unemployment compensation | 19 | |
| 20a | Social security benefits 20a | b Taxable amount (see instructions) | 20b | 0 |
| 21 | Other income. List type and amount (see instructions) | 21 | 0 |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your **total income** ► | 22 | 61,712 |

**Adjusted Gross Income**

| 23 | Educator expenses (see instructions) | 23 | 0 |
|---|---|---|---|
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | 0 |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | 0 |
| 26 | Moving expenses. Attach Form 3903 | 26 | 0 |
| 27 | One-half of self-employment tax. Attach Schedule SE | 27 | 0 |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | 28 | 0 |
| 29 | Self-employed health insurance deduction (see instructions) | 29 | 0 |
| 30 | Penalty on early withdrawal of savings | 30 | 0 |
| 31a | Alimony paid  b Recipient's SSN ► _____ | 31a | |
| 32 | IRA deduction (see instructions) | 32 | 0 |
| 33 | Student loan interest deduction (see instructions) | 33 | |
| 34 | Tuition and fees deduction (see instructions) | 34 | 286 |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | |
| 36 | Add lines 23 through 31a and 32 through 35 | 36 | 286 |
| 37 | Subtract line 36 from line 22. This is your **adjusted gross income** ► | 37 | 61,426 |

EXHIBIT 1 Page 159

KIA  For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see instructions.  Form **1040** (2005)

Date: August 10, 2009

To: Kenneth Shaffer
From: Jan M. Krug, RBM
Re: Fitness for Duty

This letter is to confirm the conversation we had with you today regarding our concerns about your job performance and behavior in the following areas:

**We have reason to believe that you are not able to work because of a possible medical problem. You are consistently negative in your attitude and have expressed thoughts of killing yourself. You have expressed that you no longer want to continue in your role as Financial Consultant yet feel you are unable to leave your role due to financial obligations.**

Based on these concerns, we have placed you on paid administrative leave, and we are recommending that you undergo a Fitness for Duty evaluation to be performed by a professional outside of the company. The purpose of this evaluation is to obtain a neutral, professional opinion as to your ability to perform your job. The evaluation will be paid for by the company.

Employee Assistance Consulting (EAC) will provide you with a doctor's name and phone number and an appointment time. The EAC consultant is Sue Frixione at 213-688-2122. It is important that you call the EAC consultant *today* to obtain that appointment information. It is your responsibility to follow through with the agreed upon arrangements. Information gathered by the doctor is confidential and is shared only with the EAC consultant who arranged your evaluation. EAC will only notify me regarding your ability to return to work (or any job accommodations that might be recommended).

While you are on this paid administrative leave, you need to be available by phone at home and you are required to check in daily with my office by phone. You should not report to work, and you should not make contact with anyone at work or conduct any business on behalf of Wells Fargo until you have a Fitness for Duty release from the doctor. If you have any questions, you may call me at *916-788-4532* or you may call EAC at the above-mentioned number.

Sincerely,


*Jan M. Krug*
*Regional Brokerage Manager*
*Sacramento Region*


*cc: Human Resource Consultant*

W000012

**Krug, Jan M.**

| | |
|---|---|
| From: | Mathes, Cindy A. |
| Sent: | Monday, August 10, 2009 4:15 PM |
| To: | Shaffer, Kenneth C. |
| Cc: | Mathes, Cindy A.; Krug, Jan M. |
| Subject: | FW: Ken Shaffer |

Ken,

Per our phone conversation and as was previously communicated, you would be paid your salary for the Admin. Leave. There is no negotiation on the base pay for an Admin. Leave. If the doctor recommends a medical leave, you would be eligible for STD and I've copied below how the benefits base is calculated.

For Sales Incentive Compensation (SIC) and Full Commission (FC) team members (positions assigned job class codes 3 and 5 on the Wells Fargo's HRIS/Payroll System), covered salary is your benefits base as indicated on that system. Benefits base is calculated quarterly by annualizing earnings based on salary and incentives or commissions paid in the last 12 months, divided by the number of months with earnings greater than $0, up to a maximum determined by the Internal Revenue Code's annual compensation limit for qualified retirement plans.

You can also go online under Team Member Resources and find the Benefits Book under Personal and read the entire section. Please take the next couple of days to review this information and provide your answer on how you would like to proceed by close of business on Wednesday, August 12th.

*Cindy Mathes*
Vice President
Branch Administration Manager
Wells Fargo Investments
(916) 788-4507
(916) 788-4773 (fax)

*Investment and Insurance Products*
*Are Not insured by the FDIC or any other federal government agency.*
*Are Not deposits of or guaranteed by the Bank or any Bank affiliate*
*May Lose Value*

*Wells Fargo Investments, LLC (member SIPC) is a non-bank affiliate of Wells Fargo & Company.*

*The information in this email is confidential. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance to it, is prohibited and may be unlawful. Trade Orders cannot be accepted by e-mail.*

WO00013

1

EXHIBIT T   Page 161

Administrative leave option....                                      Page 1 of 2

**Krug, Jan M.**

| From: | Webster, Mark D. (PCS) |
|---|---|
| Sent: | Wednesday, August 12, 2009 12:52 PM |
| To: | Krug, Jan M.; Blomley, Christine |
| Cc: | Scout, Christopher M. |
| Subject: | Fw: Administrative leave option.... |

Jan
I thought EA was going to be suggested based on a previous e mail received, can you call me this afternoon to discuss
-----------------------------

Sent using BlackBerry

----------------------------------------

**From:** Shaffer, Kenneth C.
**To:** Krug, Jan M.; Webster, Mark D. (PCS)
**Cc:** Mathes, Cindy A.
**Sent:** Wed Aug 12 13:28:44 2009
**Subject:** Administrative leave option....

I cannot afford to take you up on the "administrative leave" offer; the income that I would receive from the recoverable draw, which you erroneously refer to as a "salary", would result in a financial hardship*, and if I were to be judged "unsuitable for duty" as you put it, I have been informed that my state disability pay would be 381/week, another financial catastrophe. This is the only amount I can depend on because, if you will remember, last year during a period of severe illness and doctor recommended time off, Metropolitan was happy to inform me that my claim was declined on the basis of both respiratory illness and what my Kaiser Physician described as a condition of "severe depression". Why would I expect it to turn out differently this time?

Thanks though, for your self described "generous offer", the raising of my minimum goals shortly after a near financial collapse, and your questioning of my professionalism, during a time when I am servicing many small and non-revenue generating accounts, splitting revenue with my licensed bankers, and supporting my other bank partners while having a "% to goal" rating in the top half of the group. I will have to think of another way to end this misery.

Regards,

*Ken Shaffer*

Financial Consultant

Wells Fargo Investments

M-W-F- 916 984-1179     Customer Service- 866-281-7436

T-Th -916 364-3571

*Investment and Insurance Products*

W000014

8/13/2009                          EXHIBIT T   Page 162