# Exhibit 5

## I. PARTIES

CLAIMANT(S): (Provide this information even if you are represented by counsel.)

Name: KENNETH C. SHAFFOR
Address: 5315 GARLENDA DR.
City: EL DORADO HILLS, State: CALIF. Zip Code: 95762
Daytime Telephone: (916) 941-9557
Fax #:
Email Address: shaffero2o4e@sbcglobal.net

Residence during the time of the dispute (if different from above):

Name:
Address:
City: State: Zip Code:

Claimant is a:
☐ Public customer ☐ Broker-dealer ☒ Person associated with a broker-dealer
BD # CRD # 871643

Claimant's Counsel/Representative (if applicable): (Note: HNKA requires that persons representing Florida investors in arbitration proceedings conducted in or outside of the State of Florida affirm either that they are licensed to practice law and provide a bar identification number, or that they are not receiving compensation in connection with representing the party in the arbitration proceeding.)

Name: Bar ID # (if applicable):
Address:
City: State: Zip Code:
Business Telephone: Fax #: Email Address:

If needed, copy this page to list additional claimants.

14

EXHIBIT C   Page 34

**RESPONDENT(S)**

Respondent #1:

Name: _WELLS FARGO INVESTMENTS, LLC_

Address (if known): _550 CALIFORNIA ST, 6TH FLR_

City: _SAN FRANCISCO_   State: _CALIF_   Zip Code: _94104_

Business Telephone: _(415) 975-6227_   Fax: _(415) 975-6227_   Email Address:

Respondent #1 is a:
- ☐ Public customer
- ☒ Broker-dealer
- ☐ Person associated with a broker-dealer

BD # _8-38568_   CRD # _10582_

Respondent #2:

Name:

Address (if known):

City:   State:   Zip Code:

Business Telephone:   Fax #:   Email Address:

Respondent #2 is a:
- ☐ Public customer
- ☐ Broker-dealer
- ☐ Person associated with a broker-dealer

BD #   CRD #

*If needed, copy this page to list additional respondents.*

15

EXHIBIT C   Page 35

## II. CLAIMS

**Accounts:** If the dispute or claim involves activity with respect to an account or accounts, please list each account and indicate the type of account it is (*e.g.*, joint account, custodial account, etc.)

**1.**

| Name (exactly as it appears on the account) | Type of Account |
| Name of Firm and Branch Office | Date Account Opened |
| Name of Registered Representative | Account Number |

**2.**

| Name (exactly as it appears on the account) | Type of Account |
| Name of Firm and Branch Office | Date Account Opened |
| Name of Registered Representative | Account Number |

**3.**

| Name (exactly as it appears on the account) | Type of Account |
| Name of Firm and Branch Office | Date Account Opened |
| Name of Registered Representative | Account Number |

*If needed, copy this page to list additional accounts.*

Type of Dispute: (Check where applicable)

**a. Account Related**

| | Breach of Contract | | Exchanges | | Transfer |
|---|---|---|---|---|---|
| | Collection | | Failure to Supervise | | Other |
| | Dividends | | Margin Calls | | |
| | Errors/Charges | | Negligence | | |

**b. Executions**

| | Execution Price | | Incorrect Quantity | | Other |
|---|---|---|---|---|---|
| | Failure to Execute | | Limit Versus Market Order | | |

**c. Account Activity**

| | Breach of Fiduciary Duty | | Misrepresentations | | Unauthorized Trading |
|---|---|---|---|---|---|
| | Churning | | Omission of Facts | | Other |
| | Manipulations | | Suitability | | |

**(d.) Employment**

| | Breach of Contract | | Discrimination National Origin | | Partnerships |
|---|---|---|---|---|---|
| X | Commissions | | Discrimination Race | X | Promissory Notes |
| X | Compensation | | Discrimination Religion | | Sexual Harassment |
| | Discrimination Age | | Discrimination Sexual Preference | | Training Contracts |
| X | Discrimination Disability | | Libel or Slander | X | Wrongful Termination |
| | Discrimination Gender | X | Libel or Slander on Form U-5 | | Other |

**e. Trading Dispute**

| | Buy-In | | Markups | | Transfers |
|---|---|---|---|---|---|
| | D.K.s | | Sell Outs | | Other |
| | Manipulation | | Stock Loan | | |

**f. Other**

| | Clearing Dispute | | Indemnification | | Underwriting |
|---|---|---|---|---|---|
| X | Defamation | | Raiding Disputes | | Other |

Type of Security(ies), Financial Instrument(s), and/or Investment(s) Involved in the Dispute:

| | Annuities | | "Fannie Maes" | | Options |
|---|---|---|---|---|---|
| | Variable Annuities | | "Freddie Macs" | | Preferred Stock |
| | Auction-Rate Securities | | Futures | | Private Equities |
| | Certificates of Deposit | | "Ginnie Maes" | | Real Estate Investment Trust |
| | Collateralized Debt Obligations (CDOs) | | Government Securities | | Repurchase Agreements |
| | Collateralized Mortgage Obligations (CMOs) | | Hedge Funds | | Reverse Repurchase Agreements |
| | Commodities (Other than Futures) | | Limited Partnerships | | Stock Index Futures |
| | Common Stock | | Municipal Bonds | | Structured Products |
| | Corporate Bonds | | Municipal Bond Funds | | Warrants/Rights |
| | Exchange-Traded Funds | | Mutual Funds | | Other: |

### III. RELIEF REQUESTED

**1. Damages**

**Actual Damages Requested** $ 170,000
(monetary sum required to compensate a party for
his or her loss excluding interests and expenses)

**Punitive Damages Requested** 830,000
(monetary amount intended to punish the wrongdoer)

* AMOUNT IN DISPUTE: 1,000,000

* Use this amount to calculate the correct filing fee and hearing session deposit in Part IV. This amount *must* match the amount stated in your claim.

**Interest**
(include calculations, if possible)

**2. Other Type of Relief Requested**

Specific Performance (Specify the type of specific performance sought)
(specific performance requires parties to take an action, such as turning over ownership of stocks)
ADJUST U5 ENTRIES

Injunctive Relief (Specify the type of injunctive relief sought)
(Injunctions require parties to refrain from certain actions)
STOP WRONGFUL TERMINATIONS, INFORM T COUNCIL TERMINATED EMPLOYEES OF RIGHTS, EFFECT OF U-5 ENTRIES, PROVIDE TERMINATED EMPLOYEES T-12 RECORDS

**3. Costs**

(Provide specific amounts, if known. If not known, please mark an "X" to indicate the costs you are requesting)

**Forum Fees**
500

**Attorney's Fees**

**Witness and Production Fees**
1575 - FINRA FEE

**Other Case-Related Costs**

18

EXHIBIT C   Page 38

Customer or Associated Person Claimant

### IV. FEES

TO DETERMINE THE CORRECT FEE, USE THE "AMOUNT IN DISPUTE" FIGURE ON LINE 3, PAGE 18.

If you are a *CUSTOMER OR ASSOCIATED PERSON CLAIMANT* use this table (Rule 12900 of the *Customer Code* or Rule 13900 of the *Industry Code*) to determine the filing fee that MUST accompany a Statement of Claim when it is filed with FINRA. If your claim does NOT disclose or specify a monetary claim, the filing fee is $1,250.

Find the amount of your dispute on the chart, then find the applicable claim filing fee.

Filing Fees for Claims Filed by Customers, Associated Persons and Other Non-Members

| Amount of Claim (exclusive of interest and expenses) | Filing Fee |
| --- | --- |
| $.01 to $1,000 | $50 |
| $1,000.01 to $2,500 | $75 |
| $2,500.01 to $5,000 | $175 |
| $5,000.01 to $10,000 | $325 |
| $10,000.01 to $25,000 | $425 |
| $25,000.01 to $50,000 | $600 |
| $50,000.01 to $100,000 | $975 |
| $100,000.01 to $500,000 | $1,425 |
| $500,000.01 to $1 million | $1,575 |
| Over $1 million | $1,800 |
| Non-Monetary/Not Specified | $1,250 |

Once you have determined the correct filing fee, submit it with your Statement of Claim. For example, if you are a customer or associated person claimant and the amount of your claim is $40,000, the claim filing fee is $600. Mail the check with your Statement of Claim, Claim Information Sheet and properly executed Submission Agreement.

Firm Claimant

TO DETERMINE THE CORRECT FEE, USE THE "AMOUNT IN DISPUTE" FIGURE ON LINE 3, PAGE 18.

If you are a *FIRM CLAIMANT* use this table (Rule 12900 of the *Customer Code* or Rule 13900 of the *Industry Code*) to determine the filing fee that MUST accompany a Statement of Claim when it is filed with FINRA. If your claim does NOT disclose or specify a monetary claim, the filing fee is $1,500.

Find the amount of your dispute on the chart, then find the applicable claim filing fee.

Member Claimant

| Amount of Claim (exclusive of interest and expenses) | Filing Fee |
| --- | --- |
| $.01 to $1,000 | $225 |
| $1,000.01 to $2,500 | $350 |
| $2,500.01 to $5,000 | $525 |
| $5,000.01 to $10,000 | $750 |
| $10,000.01 to $25,000 | $1,050 |
| $25,000.01 to $50,000 | $1,450 |
| $50,000.01 to $100,000 | $1,750 |
| $100,000.01 to $500,000 | $2,125 |
| $500,000.01 to $1,000,000 | $2,450 |
| $1,000,000.01 to $5,000,000 | $3,200 |
| Over $5,000,000 | $3,700 |
| Non-Monetary/Not Specified | $1,500 |

Once you have determined the correct filing fee, you should calculate the appropriate member surcharge outlined on page 21 and submit the total with your Statement of Claim. For example, if you are a firm claimant and the amount of your claim is $40,000, the claim filing fee is $1,450, and the member surcharge is $875. Therefore, you should send one check payable to FINRA Dispute Resolution in the amount of $2,325. Mail the check with your Statement of Claim, Claim Information Sheet and properly executed Submission Agreement.

**Member Surcharge & Process Fees:**

Rules 12901 and 12903 of the *Customer Code*, and Rules 13901 and 13903 of the *Industry Code* require firms to pay a *non-refundable* surcharge and *non-refundable* process fees if the firm or person associated with the firm is a claimant or respondent in an arbitration at this forum. FINRA will send invoices for process fees to firms at appropriate stages of the arbitration process.

TO DETERMINE THE CORRECT SURCHARGE, USE THE "AMOUNT IN DISPUTE" FIGURE ON LINE 3, PAGE 18.

If you are a FIRM CLAIMANT, use this table (Rules 12901 or 13901) to determine the appropriate member surcharge that MUST accompany your Statement of Claim when it is filed with FINRA. If your claim does NOT disclose or specify a monetary claim, the non-refundable surcharge is $1,500.

**Member Surcharge**

| Amount in Dispute (exclusive of interest and expenses) | Surcharge |
|---|---|
| Up to $2,500 | $150 |
| $2,500.01–$5,000 | $200 |
| $5,000.01–$10,000 | $325 |
| $10,000.01–$25,000 | $425 |
| $25,000.01–$30,000 | $600 |
| $30,000.01–$50,000 | $875 |
| $50,000.01–$100,000 | $1,100 |
| $100,000.01–$500,000 | $1,700 |
| $500,000.01–$1,000,000 | $2,250 |
| $1,000,000.01–$5,000,000 | $2,800 |
| $5,000,000.01–$10,000,000 | $3,350 |
| Over $10,000,000 | $3,750 |
| Non-Monetary/Not Specified | $1,500 |

**V. HEARING INFORMATION**

For claims of $25,000 or less under Rules 12800 (simplified customer/investor) and 13800 (simplified industry): *(check one)*

☐ I am requesting a hearing in this matter      ☐ I am not requesting a hearing in this matter

21

EXHIBIT C   Page 41

Submission Agreement

Claimant(s)

KENNETH C. SHAFFER

In the Matter of the Arbitration Between

Name(s) of Claimant(s)

KENNETH C. SHAFFER

and

Name(s) of Respondent(s)

WELLS FARGO INVESTMENTS, LLC

1. The undersigned parties ("parties") hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure.

2. The parties hereby state that they or their representative(s) have read the procedures and rules of FINRA relating to arbitration, and the parties agree to be bound by these procedures and rules.

3. The parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The parties further agree and understand that the arbitration will be conducted in accordance with the FINRA Code of Arbitration Procedure.

4. The parties agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement. The parties further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5. The parties hereto have signed and acknowledged the foregoing Submission Agreement.

KENNETH C. SHAFFER
Claimant Name (please print)

_Kenneth C. Shaffer_    4-27-2010
Claimant's Signature                Date
State capacity if other than individual (e.g., executor, trustee or corporate officer)


Claimant Name (please print)

_____    Date
Claimant's Signature
State capacity if other than individual (e.g., executor, trustee or corporate officer)

If needed, copy this page.

22

EXHIBIT C   Page 42

To Whom It May Concern:

The following is a full description of the areas of dispute specified in this claim.

Wrongful Termination- I was terminated without advance notice based on two frivolous infractions of company policy, an inadvertent over charge on two stock trades of approximately 300 dollars, and a failure to pass an e-mail complaint to management, a situation which I considered a misunderstanding, not a complaint, rectified with a phone call. These infractions would not be cause for termination had I not previously complained in e-mails about the firm's reckless emphasis on revenue production, withheld compensation, favoritism, and compliance violations. A Ms. Mary Mortensen, compliance manager, who informed me of the termination, actually stated that these infractions would ordinarily not be grounds for termination.

Commissions- withholding of commissions was executed as part of an unfair "licensed banker" program which credited only 50% of revenue from an account introduced by a licensed banker for the first year. This withheld revenue was not counted toward goal achievement or compensation, and not evenly applied in all branches, The branch which I was able to generate the largest amount of revenue from in 2008, originally had no licensed bankers and was assigned two licensed bankers at the start of 2009. My goals, which subjected me to termination if not met, were raised during this period.

Promissory Note- Originally described as a "bonus plan" It was never explained, and I never understood that amounts could be demanded to be repaid based on unwarranted termination, or that conditions would be placed on my employment, sales revenue quotas, which were not a condition at the time of hiring or when the promissory note amounts were awarded. When I asked about the treatment of these promissory note amounts at the time of termination, Ms. Mortensen commented that I should know these amounts are considered "blood money"

Libel or slander on form u-5- The entries on my u-5, and termination without council including not given the opportunity to resign, which I believe violates standard business practice in the brokerage business, is another discriminatory activity by the firm, and has damaged my professional reputation resulting in five firms, originally very positive on the prospects for my employment, saying they could not hire me because of the entries on my u-5. (Exhibit A). These actions have resulted in my not being able to procure employment, this after thirty years in the brokerage business without a serious complaint or compliance violation.

These actions by the firm have resulted in both emotional and financial distress on my part. There are also other issues involved here, not categorized on the Claim information sheet, which I think should be taken into consideration, please see exhibit B.

EXHIBIT C   Page 43

EXHIBIT A

Firms that told me they could not hire me based on my u-5 notes from Wells Fargo, absence of t-12 (trailing 12 month commission report)

1. Stifel Nicholas (u-5,t-12)
2. Ameriprise (u-5)
3. Wedbush Morgan Securities (u-5,t-12)
4. E-Trade (u-5)
5 Chase Investment Services (u-5)

Contact names available on request.

EXHIBIT C   Page 44

Exhibit B

55 Year Old Stock Broker, called Financial Consultant at Wells Fargo, recently terminated without cause. I have no entries on my u-4, and no client complaints. I believe that a health related issue, and my identification and concern regarding compliance related issues resulted in my termination, for specific reasons which were never explained to me.

I joined the firm 3 years ago with promises of being introduced to affluent investors, receiving 15 million in affluent client accounts, never provided; I believe this created a situation of "detrimental reliance"

Six months after joining Wells I became seriously ill as a result of acid reflux, which I believe is stress related. I was unable to speak for extended periods without coughing, symptoms of sleep Apnea at night. My doctor recommended time off, I declined due to work related pressures and possibility of earning bonus for production over first 12 months. After 12 months, I had qualified for bonus, received 111K, continued Acid Reflux problems resulting in decreased production, and received verbal warning "for declining production, decided to take Dr's advice of 6-8 weeks" voice rest. I checked with the employee benefits dept., and my short term disability benefits were reviewed, when I explained the situation and my Dr's recommendation, I was led to believe this was a qualifying disability, later declined by Metropolitan.

Returned to work in December, 2008, second month back I missed my sales quota by 500 dollars, summoned to managers office on Friday afternoon for Monday morning, placed on "written warning", which at Wells means you can be terminated for missing your sales quota by any amount in any one month, an extreme conflict of interest for the broker, and undue pressure, complained in e-mail, attached.

I produced at a satisfactory level for the next several months. Two days prior to firing I received an e-mail from Mary Mortensen in compliance that I had overcharged a client by approximately 300 dollars on a stock trade, needed an e-mail explanation, told her that I didn't realize the error, the order entry system, Thompson Financial, did not inform me of the overcharge, was happy to have it reduced, and I added, in humor, that I thought it was in the firm's business plan to gouge the client anyway- it really is, the way to excel in this program is to sell the client the "high commission" product, which most of the reps are forced to do to make the quotas. Shortly after I sent the e-mail, I was ordered the new manager's office and questioned, I truthfully told Mary Mortensen, and Jan Krug, the new manager, that I was under pressure not to miss my 25K/month quota, risking termination and that was the reason I adjusted the commission upward.

The next day I received a call from Jan Krug, telling me that Mary Mortensen had reviewed my e-mails and found an e-mail in which a customer had complained that they didn't know where their money was, actually in a separate brokerage account, total 8,000 dollars. I had previously called the client and explained that the funds were in the separate brokerage account which he agreed to set up one year earlier, and that the CD in

EXHIBIT C   Page 45

the account would mature next month, and he would receive 100% of their investment back. I didn't consider this a complaint at this point, but a misunderstanding. Jan told me during this conversation that this complaint should have been passed on to management, to be at the Roseville office in one hour, and to bring my laptop, and the keys to the file cabinets at the 2 branches I work at, which is Wells code for "your fired". I suffered stomach cramps and heart palpitations at hearing this unexpected news, and knowing I was to be terminated returned home for the day. I met Mary at my Branch the next morning and was informed that I was terminated, no council given, no opportunity to resign. I kept my laptop computer in an effort to retrieve my own client records not covered by a non-compete agreement, and my t-12, unsuccessfully, returned it the next morning.

I am sure that other "FCs" have client complaints on their record and other violations which have not been cause for termination. This discriminatory treatment and damage to my professional reputation has caused me both emotional and financial duress.

Regards,

Ken Shaffer

EXHIBIT C   Page 46



**EDD Employment Development Department State of California**

## Claim for Disability Insurance Benefits – Doctor's Certificate

copy

TYPE or PRINT with BLACK INK.

| 34. PATIENT'S FILE NUMBER | 35. PATIENT'S SOCIAL SECURITY NO. | 36. PATIENT'S LAST NAME |
|---|---|---|
| 000001850482 | [REDACTED] | SHAFFER |

| 37. DOCTOR'S NAME AS SHOWN ON LICENSE | 38. DOCTOR'S TELEPHONE NUMBER | 39. DOCTOR'S STATE LICENSE NO. |
|---|---|---|
| ROSE ARELLANES MD | 916/617-5200 | A66839 |

**40. DOCTOR'S ADDRESS** – NUMBER AND STREET, CITY, STATE, COUNTRY (IF NOT USA), ZIP CODE. POST OFFICE BOX NUMBER IS NOT ACCEPTED AS THE SOLE ADDRESS
Medical Secretaries
2155 Iron Point Road, Folsom, CA 95630

**41. THIS PATIENT HAS BEEN UNDER MY CARE AND TREATMENT FOR THIS MEDICAL PROBLEM**
FROM 12/28/2006 TO 9/10/2008 AT INTERVALS OF ☐ DAILY ☐ WEEKLY ☐ MONTHLY ☒ AS NEEDED

**42. AT ANY TIME DURING YOUR ATTENDANCE FOR THIS MEDICAL PROBLEM, HAS THE PATIENT BEEN INCAPABLE OF PERFORMING HIS/HER REGULAR OR CUSTOMARY WORK?**
☐ NO – SKIP TO THE DOCTOR'S CERTIFICATION SECTION
☒ YES – ENTER DATE DISABILITY BEGAN: 9/22/2008

**43. DATE YOU RELEASED OR ANTICIPATE RELEASING PATIENT TO RETURN TO HIS/HER REGULAR/CUSTOMARY WORK** ("UNKNOWN," "INDEFINITE," ETC., NOT ACCEPTED.)
11/2/2008

**44. ICD9 DISEASE CODE, PRIMARY** (REQUIRED UNLESS DIAGNOSIS NOT YET OBTAINED)
478.75 LARYNGEAL SPASM

**45. ICD9 DISEASE CODE(S), SECONDARY**
308.9  530.81

**46. DIAGNOSIS** (REQUIRED) – IF NO DIAGNOSIS HAS BEEN DETERMINED, ENTER OBJECTIVE FINDINGS OR A DETAILED STATEMENT OF SYMPTOMS
54 YEAR OLD MALE WITH A HISTORY OF CHRONIC THROAT PROBLEMS. HAVING COUGHING AND CHOKING EPISODES AS WELL AS REFULX PROBLEMS. STRESSED AS HIS THROAT IS EFFECTING HIS WORK, FEELS A LOT OF STRESS AND UNSUPPORTED AS IT IS DIFFICULT FOR HIM TO TALK ALL DAY.  OFF WORK FOR VOICE REST GIVEN CURRENT LARYNGOSPASM. TRIAL OF ZOLOFT TO SEE IF CAN HELP DEAL WITH ANXIETY OF HIS MEDICAL CONDITION AND WORK.

**47. FINDINGS** – STATE NATURE, SEVERITY, AND EXTENT OF THE INCAPACITATING DISEASE OR INJURY. INCLUDE ANY OTHER DISABLING CONDITIONS

**48. TYPE OF TREATMENT / MEDICATION RENDERED TO PATIENT**
MEDICATION, REFERRED TO ENC AND WILL BE EVALUATION BY HEENT AGAIN.

**49. IF PATIENT WAS HOSPITALIZED, PROVIDE DATES OF ENTRY AND DISCHARGE**
_/_/_ TO _/_/_

**50. DATE AND TYPE OF SURGERY / PROCEDURE PERFORMED OR TO BE PERFORMED**
_/_/_

**ICD9 PROCEDURE CODE(S)**

**51. IF PATIENT IS NOW PREGNANT OR HAS BEEN PREGNANT, WHAT DATE DID PREGNANCY TERMINATE OR WHAT DATE DO YOU EXPECT DELIVERY?**
_/_/_

**52. IF PREGNANCY IS / WAS ABNORMAL, STATE THE ABNORMAL AND INVOLUNTARY COMPLICATION CAUSING MATERNAL DISABILITY**

**53.** BASED ON YOUR EXAMINATION OF PATIENT, IS THIS DISABILITY THE RESULT OF "OCCUPATION," EITHER AS AN "INDUSTRIAL ACCIDENT" OR AS AN "OCCUPATIONAL DISEASE"? (INCLUDE SITUATIONS WHERE PATIENT'S OCCUPATION HAS AGGRAVATED PRE-EXISTING CONDITIONS.)
☐ YES  ☒ NO

**54.** ARE YOU COMPLETING THIS FORM FOR THE SOLE PURPOSE OF REFERRAL / RECOMMENDATION TO AN ALCOHOLIC RECOVERY HOME OR DRUG-FREE RESIDENTIAL FACILITY AS INDICATED BY THE PATIENT IN QUESTION 23?
☐ YES  ☒ NO

**55.** WOULD DISCLOSURE OF THIS INFORMATION TO YOUR PATIENT BE MEDICALLY OR PSYCHOLOGICALLY DETRIMENTAL?
☐ YES  ☒ NO

**Doctor's Certification and Signature (REQUIRED):** Having considered the patient's regular or customary work, I certify under penalty of perjury that, based on my examination, this Doctor's Certificate truly describes the patient's disability (if any) and the estimated duration thereof.

I further certify that I am a _____ **FAMILY PRACTICE** licensed to practice in the State of **CA.**
(TYPE OF DOCTOR)  (SPECIALTY, IF ANY)

Rome Mattos, Auth Signer for ROSE ARELLANES MD

_Rose Arellanes MD/rm_
ORIGINAL SIGNATURE OF ATTENDING DOCTOR – RUBBER STAMP IS NOT ACCEPTABLE

10/1/2008
DATE SIGNED

Under sections 2116 and 2122 of the California Unemployment Insurance Code, it is a violation for any individual who, with intent to defraud, falsely certifies the medical condition of any person in order to obtain disability insurance benefits, whether for the maker or for any other person, and is punishable by imprisonment and/or a fine not exceeding $20,000. Section 1143 requires additional administrative penalties.

DE 2501  Rev. 76  (9-05) (DI Branch)

page 3

EXHIBIT C  Page 47

Wells Fargo Leave management:

Attached you will find the family leave form which I was requested to submit because Metropolitan declined to pay disability benefits. There reasoning, as explained to me, was that Kaiser's medical records do not "support" disability pay. One of Kaiser's medical records is a recommendation to take time off after dealing with a severe case of acid reflux for more than a year.

I am affected by gagging and coughing, hoarseness, symptoms of laryngitis, and esophageal spasms. I have been referred to an ENT specialist, who thinks that my symptoms warrant seeing a Gastro-intestinal specialist. I have tried to work through this for over a year because of my commission only pay status and minimal disability benefits.

Recently, my choking and coughing episodes have worsened, and I have become depressed over this situation and decided to take my doctors advice. I was instructed to call the benefits department, and explained my situation and my doctor's recommendation, and was explained my disability benefits by a representative. At no time was it mentioned that a doctor's recommendation was not suitable for a short term medical leave. At this point I have been prescribed Zoloft for depression, and another medication for panic attacks, I have spoken with a therapist at Kaiser, and another at Metropolitan, Ann Marie, who told me that these symptoms, medical and physical, fill the requirement for disability pay, and that she would contact me the following week- I never heard from her, and upon contacting my case manager, Nancy Weird, I was informed that my request has been denied. I wonder if our high level management team would receive the same kind of treatment if they were sick?

Wells Fargo needs to contact Metropolitan and tell them that Wells Fargo employees should not be subjected to treatment like this, and if they cannot rectify this situation, should stop working with Metropolitan, and pay my disability benefits themselves. My signing this family leave form does not constitute an agreement by me to not receive disability benefits.

Regards,

*[signature]*

EXHIBIT C   Page 48

Shaffer, Kenneth C.

*PROMISSORY ESTOPPEL*

From: Krug, Jan M.
Sent: Wednesday, September 23, 2009 1:32 PM — *1 week before my termination*
To: Shaffer, Kenneth C.; Obenchain, Christopher T.
Subject: Micron and Douglas/Auburn-Folsom Stores

Hi Ken and Chris: I have just received word that Jim U'Ren whom we had slated to assume coverage of the Micron store will delay his return from medical LOA per his doctor's orders until Nov. 1, 2009. Because of that, we will delay the store coverage changes until he returns. I do apologize for the confusion. So, it's business as usual until the end of October!
Thanks

*Jan M. Krug*
Wells Fargo Investments
Vice President
Regional Sales Manager
Private Client Services
1512 Eureka Road Suite 300
Roseville, CA 95661
(916) 788-4532

1

EXHIBIT C  Page 49

*E-MAIL I SENT 3/09/2009*

**Shaffer, Kenneth C.**

From: Shaffer, Kenneth C.
Sent: Monday, March 09, 2009 4:31 PM
To: Webster, Mark D. (PCS); Hamill, Leo P.
Subject: Fair and reasonable?

Hi Mark- I have been issued a "formal written warning" for unsatisfactory production from Barbara. My monthly goal is 20,666 (80%). For February, I had total production of 20,100, missing the mark by 500 dollars. My year to date is 41,439, an average of 20,719.50 per month, and higher than the original requirement. I am now being threatened with termination, at a time when, prior to this meeting, I felt like I was gaining momentum- For March, I have booked my 1st Transamerica Inheritance Builder Sale, received my first "Inforce Policy review", and booked business in fixed annuities. I feel my branch relations are excellent, and I have no customer complaints. I was 14th out of 29 reps for the month of February, and am 8th in % to goal.

Complicating the situation is the fact that I have an outstanding promissory note- Barbara has informed me that the unamortized amount would be due back to Wells, a financially disastrous situation. I cannot believe that the Ms. Brandell is subjecting not only myself, but other FCs to this type of mental duress at a time of financial crisis. Do you think this is fair and reasonable?

I think one of the sources of this discriminatory behavior is that I took 8 weeks off last year, Oct. and Nov., for a health problem that I am still being treated for- I currently take 8 pills a day! I was denied short term disability from Metropolitan Insurance with the explanation the my medical records did not support disability payments- even though I would assume the recommendation to take time off was part of my records. They effectively over ruled my Doctor- amazing. This situation affected my productivity before I left, and I had 2 months of 0 production. Barbara states that the condition of written warning is based on last year's production as well. I was on track to achieve my annual goal last year until July. I believe my treatment is partially based on verifiable illness.

Since I am now in a "sudden death" situation, I must also tell you as well that, after 30 Years of no entries on my u-4, I am very concerned with complaints and law suits arising from reckless behavior on the part of the firm- the push on "reverse convertibles", resulting in the unexplained disappearance of one of their strongest converts, Suggestion that health questions regarding insurance be less than fully truthful, and the misrepresentation of income from insurance policies.

I am hoping that I can be on more than a "month to month" plan, which is only reasonable since it could compromise my ability to suggest the best course of action for my clients. I am available to verify and discuss any of these items at your request, and will continue to provide the very best support for clients and team members.

*Ken Shaffer*
Financial Consultant
Wells Fargo Investments

M-W-F- 916 984-1179
T-Th -916 364-3571

*Investment and Insurance Products*
*Are Not insured by the FDIC or any other federal government agency.*
*Are Not deposits of or guaranteed by the Bank or any Bank affiliate*
*May Lose Value*

Wells Fargo Investments, LLC (member SIPC) is a non-bank affiliate of Wells Fargo & Company.

The information in this email is confidential. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance to it, is prohibited and may be unlawful. Trade Orders cannot be accepted by e-mail.

1

EXHIBIT C  Page 50

MY RESPONSE TO DEMAND LETTER

Dear Mr. Lindsay:

Recieved your letter regarding the promisory note balance. Unfortunately, at this time I have no job, and approximately twenty thousand dollars to my name. My burn rate is approxiately 5K per month, meaning in 4 months, I will be withdrawing from a small IRA in order to survive. My home, formerly my most valuable asset, is now worth substantially less than I paid for it, resulting in minimal equity. I am very likely a candidate for bankruptcy proceedings, if I could afford the legal expense.

I have been unable to secure other employment of any type, and specifically as a Financial Advisor, because I was given no advance notice of my termination and have no client or production records. I believe that Wells Fargo has breached my rights under California's "right to work" statutes, and is guilty of other employee rights violations.

The termination which results in this request for the return of the promisory note amounts is completely unwarranted, and in fact, I was told by the Branch Administrative Manager, Mary Mortensen, that the events sited would not be grounds for termination if it were not for my criticism of the firm. Prior to my termination on October 1st, I had no reason to believe I would be terminated, and in fact, recieved an e-mail from my immediate supervisor, Jan Krug, approximately one week before my termination that it was "business as usual" until November, when I was to start working at a new branch. I believe that this created a situation of promissory estoppel.

When I asked Wells Fargo for a trailing 12 month production record, I was denied. This record is mandatory information for most hiring firms, I believe that this is a violation of California "right to work" laws.

I recieved a call from a representative of the State unemployment office who told me that Wells fargo had reported to them that I had purposely intended to be fired, resulting in no unemployment payments and possible waiver of COBRA benefits. This is completely false, and in fact, I have been warned that termination could trigger a demand to return earlier bonus amounts, resulting in mental duress and undue pressure to make sure that I would not be terminated.

Additionally, when I was hired I was promised 15 million dollars in affluent client accounts, and the opportunity to meet regularly with affluent investors creating a situation of detrimental reliance. I was assigned to a new branch of Wells Fargo with a tiny asset base, and struggeled to produce a minimal income from the client base which I brought to the firm. This stress resulted in illness which my doctor recommended time off to recover from. Through the Wells fargo employee benefits department, I was led to believe that this was a qualifying short term disability, later denied by Metropiolitan Insurance Co. My medical records at this time included a recommendation to take time off for voice rest due to persistant laryngospasm and sleep apnea symtoms, as well as treatment for depression. Metropolitan told me that it was difficult to obtain the required information from my Kaiser Physician, and that the records they recieved did not support a valid claim.

These events, and blatant favoritism towards Financial Consultants hired by managers who benefit from their success ( the manager who hired me has been terminated), pressure to meet minimum production goals while having revenues witheld through a punitive FC/ Licensed banker sharing arrangement, and

EXHIBIT C   Page 51

lack of adequate compensation for time spent in manadatory, non revenue producing activities have resulted in extreme hardship, frustration, and depression.

I have been told that these outstanding promissory note amounts are considered by Wells Fargo to be "blood money" by Mary Mortensen, Branch Administrative Manager, and now fear for my own and my family's safety. No one ever explained the ramifications of the promisory note to me originally, especially in regard to future production quotas that were never discussed or in effect at the time, or the possibility of arbitrary termination.

Ken Shaffer

EXHIBIT C   Page 52