1   Jordan S. Stanzler (State Bar No. 54620)
    Melinda Jane Steuer (State Bar No. 216105)
2   STANZLER LAW GROUP
    2275 E. Bayshore Road, Suite 100
3   Palo Alto, CA 94303
    Telephone:  (650)739-0200
4   Facsimile:   (650)739-0916

5   Attorneys for Respondent
    Kenneth C. Shaffer

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11
    WELLS FARGO ADVISORS, LLC, a          Case No. CV-01500 SC
12  limited liability company,
                                          **MEMORANDUM OF POINTS AND**
13               Petitioner,              **AUTHORITIES IN OPPOSITION TO**
                                          **WELLS FARGO ADVISORS, LLC'S**
14       vs.                              **MOTION TO VACATE ARBITRATION**
                                          **AWARD**
15  KENNETH C. SHAFFER, an individual,

16               Respondent.              **DATE:**          June 10, 2011
                                     /    **TIME:**          10:00 a.m.
17                                        **COURTROOM:**     1, 17th Floor
    AND RELATED COUNTERCLAIMS
18

19

20

21

22

23

24

25

26

27

28
    _____
               OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     ISSUES TO BE DECIDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.     LEGAL STANDARD FOR VACATING AN ARBITRATION AWARD . . . . . . . . . . . 4

V.      THE ARBITRATORS DID NOT MANIFESTLY DISREGARD THE LAW . . . . . . . . 5

        A.      The Arbitrators' Decisions Were Factual Determinations Which Are Not Subject
                to Judicial Review under the FAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

                1.      The Unconscionability of the Note Is a Factual Determination . . . . . . . . 6

                2.      Mr. Shaffer's Right to Recover Damages for the Statements Made in His
                        Form U-5 Is a Fact Question That the Arbitrators Had the Right and
                        Obligation to Decide . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.      The Law Relied upon by WFA Is Not Controlling Nor Clearly Applicable
                Precedent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                1.      Koehl v. Verio, Inc. and Federal Savings and Loan Insurance Corp. v.
                        Musacchio Are Inapplicable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                2.      Fontani v. Wells Fargo Investments, LLC Is Contrary to Subsequent
                        California Supreme Court Precedent . . . . . . . . . . . . . . . . . . . . . . . . . 11

        C.      WFA Cannot Meet the Standard for Manifest Disregard for the Law . . . . . . . . 12

VI.     WFA WAIVED THE RIGHT TO CLAIM THAT MR. SHAFFER COULD NOT
        OBTAIN RELIEF FOR THE STATEMENTS MADE IN THE FORM U-5, BY
        AGREEING TO FINRA ARBITRATION, WHICH EXPLICITLY ALLOWS SUCH
        CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VII.    WFA'S "PUBLIC POLICY" ARGUMENT IS NOT A VALID GROUNDS FOR
        VACATING THE AWARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VIII.   MR. SHAFFER SHOULD BE AWARDED HIS ATTORNEYS FEES INCURRED IN
        OPPOSING THIS MOTION, PURSUANT TO THE TERMS OF THE NOTE . . . . . 17

IX.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

# **TABLE OF AUTHORITIES**

**<u>Cases</u>**                                                                                        <u>Pages</u>

*Action Apartment Association, Inc. v. City of Santa Monica*
41 Cal.4th 1232 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 12

*A.G. Edwards & Sons, Inc. v. McCollough*
967 F.2d 1401 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Armendariz v. Foundation Health Psychcare Services, Inc.*
24 Cal.4th 83 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 13

*Banus v. Citigroup Global Markets, Inc.*
2010 U.S. Dist LEXIS 40072 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Baravati v. Josephthal, Lyon & Ross, Inc.*
28 F.3d 704, 705, 708  (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

*Bolter v. Superior Court*
87 Cal. App.4th 900 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Bosack v. Soward*
586 F.3d 1096 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 9, 12, 13, 14

*Carter v. Health Net of California*
374 F.3d 830 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 9-10

*Collins v. D.R. Horton, Inc.*
505 F.3d 874 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 13

*Coutee v. Barington Capital Group L.P.*
336 F.3d 1128 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 9

*Fahnestock & Co., Inc. v. Waltman*
935 F.2d 512 (2nd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Federal Savings and Loan Insurance Corp. v. Musacchio*
695 F. Supp. 1044 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 13, 14

*Fontani v. Wells Fargo Investments, LLC*
129 Cal. App.4th 719 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12, 13, 14

*Gutierrez v. Autowest, Inc.*
114 Cal. App.4th 77 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hall Street Associates LLC v. Mattel, Inc.*
552 U.S. 576 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 12, 14, 15, 16

*Independent Association of Mailbox Center Owners v. Superior Court*
133 Cal. App.4th 396 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

ii

*Kyocera Corporation v. Prudential-Bache T Services, Inc.*
341 F.3d 987 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, **9**, 14

*Koehl v. Verio, Inc.*
142 Cal. App.4th 1313 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 13, 14

*Lagstein v. Certain Underwriters at Lloyd's London*
607 F.3d 634 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 7, 12, 13, 14, 16

*Perdue v. Crocker Nat'l Bank*
38 Cal. 3d 913 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Stead Motors of Walnut Creek v. Automotive Machinists Lode No. 1173*
886 F.2d 1200 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

## STATUTES

California Code of Civil Procedure
   §1084 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   §1670.5(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

California Civil Code
   §47(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   §1717 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

9 U.S.C. §10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

iii

## I.      INTRODUCTION

Wells Fargo Advisors, LLC ("WFA")'s petition is an unwarranted attempt to re-litigate the facts of an arbitration proceeding which its predecessor, Wells Fargo Investments, LLC ("WFI") lost, after a full and fair trial on the merits.  Specifically, an arbitration panel of the Financial Industry Regulatory Authority ("FINRA"), applying controlling precedent from the California Supreme Court, ruled that the promissory note WFI sought to enforce against respondent Kenneth C. Shaffer was unenforceable because it was unconscionable.  (Exh. 6.) The FINRA arbitration panel further ruled that Mr. Shaffer was entitled to recover damages in the amount of $75,000 from WFI, because of the defamatory statements it made on his Form U-5.[1] (Exh. 6.)   California law is clear that both of the foregoing determinations that were made by the arbitrators in Mr. Shaffer's case are fact questions, which could not have been made as a matter of law.  Such factual determinations are plainly outside the limited scope of permissible judicial review of arbitration awards.

Nonetheless, WFA insists that the arbitration award must be overturned for alleged "manifest disregard of the law".  WFA's argument ignores the meaning of this term, and the very narrow circumstances in which it applies.  Contrary to WFA's assertions, "manifest disregard of the law" does not mean that an arbitration award is subject to vacatur merely because the arbitrators disagreed with WFA's characterization of the facts and evidence, or interpreted and applied case law differently than WFA thinks they should have.  Instead, WFA has the burden of proving that the arbitrators specifically recognized and correctly stated controlling law, and then proceeded to ignore that same law.   WFA has utterly failed to meet that burden for three reasons.  First, the decisions made by the arbitrators were factual determinations which could not have been made as a matter of law.   Secondly, the case law relied upon by WFA is neither controlling nor applicable.   Third, even if the cases cited by WFA were controlling - and they are not - there

---

[1]   A Form U-5 is a standardized form that broker-dealers are required to submit to FINRA whenever a registered representative's registration with that broker-dealer has terminated for any reason, voluntary or involuntary. (Exh. 7; *Baravati v. Josephthal, Lyon & Ross, Inc.* 28 F.3d 704, 705, 708 (7th Cir. 1994).)

1   would still not be any manifest disregard of the law, as defined by the Ninth Circuit, because the

2   arbitrators did not cite to any of those cases in their award, nor at any other time during the

3   proceeding.

4       Indeed, WFA has failed to provide one iota of evidence that there was "manifest

5   disregard of the law" under the standards set forth by the Ninth Circuit. The exact opposite is

6   true. The arbitration award recognized, correctly stated, and applied controlling precedent from

7   the California Supreme Court.

8       WFA should not be allowed to use this petition as a back door way to re-try the merits of

9   a case which WFI tried and lost in arbitration. This honorable court should deny WFA's petition

10  to vacate the award, and award Mr. Shaffer the attorneys fees he has been forced to incur as a

11  result of having to oppose this petition.

12  **II.    ISSUES TO BE DECIDED**

13      1. Has WFA proven the existence of any of the circumstances for vacating an arbitration

14  award that are set forth in Section 10 of the Federal Arbitration Act?

15      2.  Should Mr. Shaffer be awarded his attorneys fees incurred in opposing this motion,

16  pursuant to the promissory note with WFI?

17  **III.   PROCEDURAL HISTORY**

18      Respondent Kenneth C. Shaffer signed a promissory note with Wells Fargo Investments,

19  LLC ("WFI"), the predecessor company to petitioner Wells Fargo Advisors, LLC ("WFA"), in

20  January of 2008. (Exh. 1.) In that note, WFI inserted an arbitration provision which provided

21  that any controversy regarding the validity, enforcement, or construction of this Note, or any

22  dispute concerning Mr. Shaffer's employment or termination of employment with WFI, shall be

23  resolved by binding arbitration under the rules of the National Association of Securities Dealers

24  (now known as FINRA[2]). (Exh. 1 p. 2.)

25

26

27      [2] The National Association of Securities Dealers changed its name to the Financial Industry Regulatory Authority ("FINRA") in 2007, when it merged with the regulatory arm of the New York Stock Exchange.

28

1    In February of 2010, WFI filed a Statement of Claim with FINRA Dispute Resolution.

2  (Exh. 2.)   WFI alleged that it was entitled to recover $74,617.76 plus interest and attorneys fees

3  pursuant to the terms of the promissory note.   (Exh. 2.)   WFI also executed and submitted a

4  FINRA Arbitration Submission Agreement by which it submitted the matter in controversy,

5  including the allegations set forth in the Statement of Claim, as well as all answers and all related

6  cross claims, counterclaims and/or third party claims, to binding arbitration in accordance with

7  the FINRA By-Laws, Rules and Code of Arbitration Procedure.   (Exh. 3.)   WFI expressly agreed

8  to be bound by FINRA's rules and procedures.   (Exh. 3.)   WFI further agreed to abide by and

9  perform any award(s) rendered by the arbitration panel.   (Exh. 3.)

10    In April, 2010, Mr. Shaffer submitted an Answer to WFI's Statement of Claim and a

11  FINRA Arbitration Submission Agreement.   (Exh. 4.)   In May of 2010, Mr. Shaffer submitted a

12  Counter-claim in the Arbitration.   (Exh. 5.)   This Counter-claim was submitted on a FINRA

13  Claim Information Sheet form, which is available on FINRA's web-site.   (Exh. 5; Decl. of

14  Kenneth C. Shaffer ¶ 6.)   This form lists the types of disputes and claims which FINRA hears

15  and decides, with boxes to be checked for the applicable claims.   Mr. Shaffer checked the boxes

16  for "Commissions", "Discrimination Disability", "Libel or Slander on Form U-5", "Promissory

17  Notes", "Wrongful Termination" and "Defamation" on this form.   (Exh. 5.)   On or about May

18  25, 2010, WFI filed a response to Mr. Shaffer's counterclaims.   (Shaffer Decl. ¶ 7.)

19    A two day evidentiary hearing was held in San Francisco, California, before a FINRA

20  arbitration panel on January 4, 2011 and January 5, 2011.   (Exh. 6.)   The arbitrators were Thomas

21  D. Reese, Laurel Littman Gothelf, and Marlyn G. McClaskey.   (Exh. 6.)   WFI was represented

22  by Ronald P. Kane, Esq. of Kane & Fisher, Ltd.   (Exh. 6.)   Mr. Shaffer appeared in pro per.

23  (Exh. 6.)   He could not afford to retain an attorney to represent him.   (Shaffer Decl. ¶ 8.)   The

24  panel heard extensive testimony from Mr. Shaffer, and from employees and agents of WFI.

25  (Shaffer Decl. ¶ 8.)   Numerous documents were received into evidence.   (Shaffer Decl. ¶ 8.)

26    On January 18, 2011, the arbitrators issued their award.   (Exh. 6.)   The Panel denied

27  WFI's claims against Mr. Shaffer in their entirety.   (Exh. 6.) The panel ruled that WFI shall pay

28

1    compensatory damages in the amount of $75,000.00 to Mr. Shaffer. (Exh. 6.) The panel further

2    recommended that the Termination Comment in Mr. Shaffer's Form U-5 be expunged and

3    replaced with other language, as set forth in the award. (Exh. 6.)

4    **IV.  LEGAL STANDARD FOR VACATING AN ARBITRATION AWARD.**

5         Section 10 of the Federal Arbitration Act ("FAA") sets forth very limited grounds for

6    vacating an arbitration award. A district court is permitted to vacate an arbitration award only

7    under one of the following four circumstances:

8         1) where the award was procured by corruption, fraud or undue means;

9         2) where there was evident partiality or corruption in the arbitrators, or either of them;

10        3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing,

11   upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the

12   controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

13   or

14        4) where the arbitrators exceeded their powers, or so imperfectly executed them that a

15   mutual, final, and definite award upon the subject matter submitted was not made. (9 USC § 10.)

16        The grounds set forth in Section 10 of the FAA, stated above, are the exclusive grounds

17   for vacating an arbitration award under the FAA. (*Hall Street Associates LLC v. Mattel, Inc.* 552

18   U.S. 576, 584 (2008).) Neither the federal courts, nor the parties, are authorized to expand

19   judicial review of an arbitration award beyond the specific statutory grounds enumerated in

20   Section 10 of the FAA. (*Id.* at 585-588.) As the United States Supreme Court explained, any

21   other conclusion would open the door to full-bore legal and evidentiary appeals, which would

22   defeat the purpose of arbitration as an informal, expeditious and affordable means of resolving

23   disputes. (*Id.* at 588.)

24        The standard for vacatur under Section 10(4) of the FAA is high. (*Lagstein v. Certain

25   Underwriters at Lloyd's London* 607 F.3d 634, 641 (9th Cir. 2010).) It is not enough to show

26   that the arbitrators committed an error of law or fact - or even a serious error. (*Id.*) Arbitrators

27   do not exceed their powers under Section 10 of the FAA merely by misinterpreting the law,

28

failing to apply the law, and/or by applying the law incorrectly.  (*Id.*)  On the contrary,  neither erroneous legal conclusions nor unsubstantiated factual findings justify vacatur of an arbitration award under the FAA. (*Bosack v. Soward* 586 F.3d 1096, 1102, 1104 (9th Cir. 2009); *Kyocera Corporation v. Prudential-Bache T Services, Inc.* 341 F.3d 987, 994  (9th Cir. 2003).)   Indeed, a district court is **PROHIBITED** from reviewing the arbitrators' factual findings and legal conclusions. (*Bosack, supra,* 586 F.3d at 1104, emphasis added; *Kyocera, supra,* 341 F.3d at 994.)

Similarly, a claim that the arbitrators' conclusions are not supported by the evidence in the record is beyond the scope of a federal court's review.  (*Lagstein, supra,* 607 F.3d at 641; *Bosack, supra,* 586 F.3d at 1105.)  The district court has no authority to re-weigh the evidence presented to the arbitration panel. (*Bosack, supra,* 586 F.3d at 1105; *Coutee v. Barington Capital Group L.P.* 336 F.3d 1128, 1134 (9th Cir. 2003).)

## V.   THE ARBITRATORS DID NOT MANIFESTLY DISREGARD THE LAW.

### A.   The Arbitrators' Decisions Were Factual Determinations Which Are Not Subject to Judicial Review under the FAA.

A district court does not have the power under the FAA to reverse the factual findings made by the arbitrators. (*Lagstein, supra,* 607 F.3d at 640-641; *Carter v. Health Net of California* 374 F.3d 830, 838 (9th Cir. 2004).)  Similarly, an arbitrator's interpretation of a contract is not subject to judicial review, and is not a valid grounds for vacating an arbitration award. (*Lagstein, supra,* 607 F.3d at 642.) As the Ninth Circuit has explained, "manifest disregard of the facts is not an independent ground for vacatur in this circuit." (*Coutee, supra,* 336 F.3d at 1133.)

Here, while WFA contends that the arbitrators were wrong as a matter of law, in reality, WFA is seeking judicial review of the arbitrators' factual findings.  Contrary to WFA's assertions, there is no California legal precedent which militated the arbitrators to rule in WFI's favor as to either the enforceability of the note or Mr. Shaffer's claims regarding the defamatory statements on his Form U-5.  The exact opposite is true.  The California Supreme Court has

1   unequivocally held that the resolution of both issues is a fact question which depends upon the

2   weighing of evidence and the resolution of disputed factual issues. Such factual determinations

3   are not subject to judicial review under the FAA. (*Lagstein, supra,* 607 F.3d at 642; *Bosack,*

4   *supra,* 586 F.3d at 1102, 1104-1105; *Carter, supra,* 374 F.3d at 838; *Kyocera, supra,* 341 F.3d at

5   994; *Coutee, supra,* 336 F.3d at 1133-1134.)

6               **1. The Unconscionability of the Note Is a Factual Determination**

7        The arbitrators ruled that the promissory note WFI sought to enforce was procedurally

8   and substantively unconscionable under the standards set forth in *Armendariz v. Foundation*

9   *Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83. (Exh. 6.) In *Armendariz,* the California

10  Supreme Court held that an arbitration agreement in a contract that an employee was induced to

11  sign as a condition of employment was procedurally and substantively unconscionable. The

12  *Armendariz* court based its ruling upon its interpretation of the terms of the agreement, the

13  relationship between the employer and the employee, and the circumstances under which the

14  agreement was made. (*Id.* at 114-115, 120-121.) It is plainly apparent from the *Armendariz*

15  opinion that the question of whether a particular contract or term contained therein is

16  unconscionable is a case-specific factual determination which depends upon the terms and

17  language of that particular contract, the parties' relationship, and the circumstances under which

18  that contract was made.

19        Indeed, the California courts have consistently held that the determination of whether a

20  particular instrument is unconscionable requires the trier of fact to both interpret the parties'

21  contract and to resolve numerous factual issues which go beyond merely examining the face of

22  the contract. (*Perdue v. Crocker Nat'l Bank* 38 Cal.3d 913, 926 (1985); *Independent*

23  *Association of Mailbox Center Owners v. Superior Court* 133 Cal. App.4th 396, 407; *Gutierrez*

24  *v. Autowest, Inc.* 114 Cal. App.4th 77, 89 (2003); *Bolter v. Superior Court* 87 Cal. App.4th 900,

25  907 (2001.) For example, before deciding the issue of unconscionability, the trier of fact must

26  hear evidence regarding the commercial setting, purpose and effect of the contract. (C.C.P. §

27  1670.5(b); *Perdue, supra,* 38 Cal.3d at 926; *Independent Association of Mailbox Center Owners,*

28

1   *supra,* 133 Cal. App.4th at 407 2005); *Bolter, supra,* 87 Cal. App.4th at 907.)  As the California

2   courts recognize, the determination as to whether a particular instrument is unconscionable is

3   dependent upon the unique facts and evidence of each particular case.

4        The intensively factual nature of unconscionability is borne out by WFA's own

5   arguments, which are devoted to re-arguing the facts.  Specifically, WFA claims that the note

6   was voluntary, that it was not imposed upon Mr. Shaffer, that nothing in it was a surprise to Mr.

7   Shaffer, and that the note was not one-sided nor overly harsh.  (Motion to Vacate pp. 9-13.)

8   WFA's arguments are nothing more than disagreements with the arbitrators' interpretation of the

9   promissory note, and the arbitrators' factual and evidentiary findings regarding the commercial

10  setting, purpose and effect of the note, the relationship between the parties, and the circumstances

11  under which the note was made.  WFA's assertion that such disagreements warrants vacatur is

12  plainly improper.

13       As the Ninth Circuit has repeatedly stated, "neither erroneous legal conclusions nor

14  unsubstantiated factual findings justify federal court review of an arbitration award under the

15  FAA, which is unambiguous in this regard." (*Bosack, supra,* 586 F.3d at 1102, 1104; *Kyocera,*

16  *supra,* 341 F.3d at 994.)  A district court does not have the power under the FAA to re-weigh the

17  evidence presented to the arbitrators nor to reverse the factual findings made by the arbitrators

18  after a full and fair trial on the merits, merely because the losing party disagrees with them.

19  (*Lagstein, supra,* 607 F.3d at 640-641; *Bosack, supra,* 586 F.3d at 1105; *Carter, supra,* 374 F.3d

20  at 838; *Coutee, supra,* 336 F.3d at 1133-1134.)  Indeed, as the United States Supreme Court

21  explained, allowing such an attack on an arbitration award would defeat the very purpose of

22  arbitration. (*Hall Street, supra,* 552 U.S. at 588.)

23            **2.    Mr. Shaffer's Right to Recover Damages for the Statements Made in**
                      **His Form U-5 Is a Fact Question That the Arbitrators Had the Right**
24                    **and Obligation to Decide.**

25       WFA also contends that the arbitration panel manifestly disregarded the law in awarding

26  Mr. Shaffer damages for the statements WFI made on his Form U-5.  Specifically, WFA argues

27  that every statement on every Form U-5 is subject to an absolute privilege and can never be the

28

1    basis of a lawsuit, no matter what the circumstances.  That is not a correct statement of the law.

2    Pre-litigation communications such as statements on a Form U-5 are only subject to an absolute

3    privilege if they relate to litigation that is contemplated in good faith and under serious

4    consideration.  The California Supreme Court holds that this determination is a fact question.

5    The FINRA arbitration panel could not have manifestly disregarded the law by making a factual

6    determination that the Form U-5 was not absolutely privileged.

7            The litigation privilege of California Civil Code section 47(b) bars any action that is

8    based upon a statement made in any 1) legislative proceeding, 2) judicial proceeding, 3) in any

9    other official proceeding authorized by law, or 4) in the initiation or course of any other

10   proceeding authorized by law and reviewable pursuant to C.C.P. § 1084 et. seq.  (C.C. § 47(b).)

11           A pre-litigation communication is only protected by the absolute privilege of Section

12   47(b) if it relates to litigation that is contemplated in good faith and under serious consideration.

13   (*Action Apartment Association, Inc. v. City of Santa Monica* 41 Cal.4th 1232, 1251 (2007).)

14   Whether a pre-litigation communication relates to litigation that is contemplated in good faith

15   and under serious consideration is an issue of fact.  (*Id.*)

16           In *Action Apartment, supra,* the California Supreme Court held that, because a factual

17   inquiry is required in order to determine whether a particular pre-litigation communication is

18   privileged, it is **impossible** to conclude that the litigation privilege would bar every action based

19   upon such a communication as a matter of law.   (*Id.* at 1252, emphasis added.)  The California

20   Supreme Court concluded that the trial court's decision granting summary judgment based upon

21   the litigation privilege must be reversed, since that decision could not be made as a matter of law.

22   (*Id.*)

23           The foregoing holding applies with equal force here.  Mr. Shaffer's Form U-5 was not a

24   pleading that was submitted in the course of litigation, nor in any other "official proceeding", nor

25   in any proceeding that is reviewable pursuant to C.C.P. § 1084 et. seq.  A Form U-5 is neither a

26   complaint nor a lawsuit.  A Form U-5 is simply a standardized form that all broker-dealers are

27   required to submit to FINRA whenever a registered representative's registration with a broker-

28

1    dealer has terminated for any reason, voluntary or involuntary. (see Exh. 7; *Baravati v.*

2    *Josephthal, Lyon & Ross, Inc.* 28 F.3d 704, 705, 708 (7th Cir. 1994).) Further, FINRA is not a

3    governmental agency. It is a privately held Delaware corporation which serves as a non-

4    governmental regulator for securities firms. (Exhs. 8 & 9.)

5         Consequently, under California law, Mr. Shaffer's claims that were based upon the Form

6    U-5 could only be barred by the litigation privilege if the Form U-5 related to litigation that was

7    contemplated in good faith and under serious consideration. As discussed above, the California

8    Supreme Court has ruled that this is a factual determination that cannot be made as a matter of

9    law. (*Action Apartment, supra,* 41 Cal.4th at 1251-1252.) Such factual determinations are

10   exclusively within the province of the arbitrators, and are not subject to judicial review. *(Bosack,*

11   *supra,* 586 F.3d at 1102, 1104; *Carter, supra,* 374 F.3d at 838; *Kyocera, supra,* 341 F.3d at 994;

12   *Coutee, supra,* 336 F.3d at 1133.)

13   **B.    The Law Relied upon by WFA Is Not Controlling Nor Clearly Applicable Precedent.**

14

15   Despite the holdings from the California Supreme Court, discussed above, WFA argues

     that the arbitrators were absolutely required to rule in WFI's favor on all issues, as a matter of
16
     law. Specifically, WFA contends that three cases which WFI provided to the arbitrators[3] were
17
     dispositive as to all issues, regardless of the facts. In reality, the cases cited by WFA are not the
18
     conclusive authority that WFA claims them to be, as discussed in detail below. The arbitrators
19
     did not manifestly disregard the law, simply because they properly concluded that the authorities
20
     cited by WFI were inapplicable and/or were not binding precedent.
21
     In order to show manifest disregard of the law, the governing law alleged to have been
22
     ignored by the arbitrators must be *well defined, explicit and clearly applicable.* (*Collins v. D.R.*
23
     *Horton, Inc.* 505 F.3d 874, 879 (9th Cir. 2007), emphasis in original; *Carter, supra,* 374 F.3d
24

25        [3] Those cases are *Federal Savings and Loan Insurance Corp. v. Musacchio* 695 F. Supp. 1044 (N.D. Cal.
     1988), *Koehl v. Verio, Inc.* 142 Cal. App.4th 1313 (2006) and *Fontani v. Wells Fargo Investments, LLC* 129 Cal.
26   App.4th 719 (2005). (See Motion to Vacate pp. 7 & 13; Decl. of Ronald P. Kane ¶¶ 25, 26 & 29 .)

27

28

830 at 838.) Here, the cases which WFA claims are controlling are not governing law, nor explicit nor clearly applicable.   The exact opposite is true.   The cases regarding unconscionability, upon which WFA relies, are plainly distinguishable.   More egregiously, the one case regarding the litigation privilege, which WFA claims is controlling, is no longer good law.

> 1.   ***Koehl v. Verio, Inc.*** **and** ***Federal Savings and Loan Insurance Corp. v. Musacchio*** **Are Inapplicable.**

WFA's argument that the arbitration panel manifestly disregarded the law in ruling that the note was unconscionable is based upon two cases: *Koehl v. Verio, Inc.* 142 Cal. App.4th 1313 (2006) and *Federal Savings and Loan Insurance Corp. v. Musacchio* 695 F. Supp. 1044 (N.D. Cal. 1988).  (See Motion to Vacate pp. 7, 8 & 11; Decl. of Ronald P. Kane ¶¶ 25 & 26 .) WFA's reliance upon those cases is misplaced.  Neither *Musacchio* nor *Koehl* stand for the proposition that the arbitration panel was required to rule in WFI's favor as a matter of law, irregardless of the facts, circumstances and evidence presented in Mr. Shaffer's case.

Indeed, in *Koehl,* the claim of unconscionability was rejected, not because of the substantive issues, but because it had been waived by the failure to assert it in the lower court. (*Koehl, supra,* 142 Cal. App.4th at 1338.)  There was no such waiver here.  Mr. Shaffer expressly stated as one of his defenses in his Answer that the note is unconscionable. (Exh. 4.)  Further, *Koehl* is factually distinguishable.  *Koehl* did not involve a promissory note such as the one at issue here.  Instead, it involved a claim by a sales person that commission charge-backs were unconscionable.  WFI's claims against Mr. Shaffer involved a promissory note, not commission charge-backs.  *Koehl* is plainly inapplicable.

*Musacchio* is equally inapposite.  *Musacchio,* unlike the instant action, did not involve a promissory note drafted by an employer which was signed by the employee, but rather a standard form promissory note executed by a corporate entity who had borrowed money from a bank. The note at issue in *Musacchio* was indisputably an arms-length transaction between two sophisticated entities of equal bargaining power.  Equally significantly, *Musacchio* does not hold

1   that no promissory note can ever be unconscionable under California law, regardless of the

2   circumstances. *Musacchio* simply stands for the unremarkable proposition that standard form

3   promissory notes are not per se unenforceable. Finally, if *Musacchio* did hold that no promissory

4   note signed by an employee could ever be deemed to be unconscionable, as WFA insinuates, it

5   would be at odds with the California Supreme Court's subsequent decision in *Armendariz, supra*,

6   24 Cal.4th 83.

7     WFA also argues that *Banus v. Citigroup Global Markets, Inc.* 2010 U.S. Dist LEXIS

8   40072, an unpublished case from New York which it did not even cite to the arbitration panel,

9   somehow shows that the panel manifestly disregarded California law. (Motion to Vacate pp. 11-

10   12.) WFA provides no explanation as to how the arbitrators could have "manifestly disregarded"

11   law of which they were never even aware. Equally importantly, *Banus* is an **UNPUBLISHED**

12   decision from a **New York** District Court. WFA's claim that the arbitrators manifestly

13   disregarded California law by failing to follow an unpublished decision from a foreign

14   jurisdiction is frivolous. Further, WFA has misstated the holding of *Banus*. The *Banus* court

15   held that the plaintiffs' claims regarding the unconscionability of the note should be dismissed

16   because all such claims were subject to binding arbitration and must be decided by the

17   arbitrators. The commentary regarding unconscionability under New York law, that is quoted by

18   WFA in its motion, is pure dicta.

19     Indeed, *Banus* supports Mr. Shaffer's position that all claims regarding the enforceability

20   and/or unconscionability of the promissory note were subject to binding arbitration and must be

21   decided by the arbitrators. That is precisely what occurred here. The arbitrators ruled that the

22   note was unenforceable because it was unconscionable. As the *Banus* court held, WFA/WFI,

23   having lost in arbitration, does not have the right to re-litigate its case in a federal district court.

24       **2.**  ***Fontani v. Wells Fargo Investments, LLC* Is Contrary to Subsequent California Supreme Court Precedent.**

25     WFA contends that one single California appellate court decision, *Fontani v. Wells Fargo*

26   *Investments, LLC* 129 Cal. App.4th 719 (2005) conclusively determined that a Form U-5 can

27

28

1    never be actionable. (Motion to Vacate pp. 13-14.) That is not an accurate statement of

2    California law. It is true that the *Fontani* court ruled that the statements made by the broker-

3    dealer on the Form U-5 at issue in that particular case were protected by the litigation privilege

4    because they were pre-litigation communications which might lead to a regulatory investigation.

5    (*Fontani, supra,* 129 Cal. App.4th at 734-736.) However, WFA has omitted to mention that the

6    California Supreme Court subsequently held, in a decision rendered two years AFTER *Fontani,*

7    that pre-litigation communications such as statements on a Form U-5 are only protected by the

8    litigation privilege if they relate to litigation that is contemplated in good faith and under serious

9    consideration, and that this determination is a fact question. *(Action Apartment, supra,* 41

10    Cal.4th at 1251-1252.) To the extent that *Fontani* holds otherwise, it is no longer good law. If

11    the arbitrators' legal reasoning is subject to judicial review - and it is not - it was certainly not

12    erroneous for them to refuse to apply a California appellate court case which is contrary to

13    subsequent California Supreme Court precedent.

14        **C.**     **WFA Cannot Meet the Standard for Manifest Disregard for the Law.**

15        WFA's motion would fail, in any event, because there is no evidence that the arbitration

16    panel manifestly disregarded the law.

17        The Ninth Circuit has made it clear that vacatur of an arbitration award for manifest

18    disregard of the law is only authorized in extremely narrow and unusual situations. Manifest

19    disregard of the law means something more than an error in interpreting the law or a failure on

20    the part of the arbitrators to understand or apply the law. (*Lagstein, supra,* 607 F.3d at 641;

21    *Bosack, supra,* 586 F.3d at 1104.) A district court may not reverse an arbitration award even in

22    the face of an erroneous interpretation of the law. (*Collins, supra,* 505 F.3d at 879.) Indeed, the

23    United States Supreme Court has explicitly rejected the argument that "manifest disregard of the

24    law" authorizes a district court to review an arbitration award for alleged legal errors. (*Hall*

25    *Street, supra,* 552 U.S. at 585.) On the contrary, to vacate an arbitration award for manifest

26    disregard of the law, the moving party must show that the arbitrators understood and correctly

27    stated the law, but then proceeded to disregard the same. (*Lagstein, supra,* 607 F.3d at 641;

28

1   *Bosack, supra,* 586 F.3d at 1104; *Collins, supra,* 505 F.3d at 879.)  Where, as here, the

2   arbitrators did not explain the legal reasoning behind their award, it is all but impossible to

3   determine that they acted with manifest disregard for the law.  (*Bosack, supra,* 586 F.3d at

4   1104.)

5       The Ninth Circuit, applying the foregoing principles, has consistently rejected motions to

6   vacate arbitration awards for alleged manifest disregard for the law, that were nothing more than

7   thinly disguised attempts to revisit the arbitrators' legal and factual conclusions.

8       For example, in *Lagstein, supra,* the Ninth Circuit held that the district court had

9   committed reversible error by vacating an arbitration award for manifest disregard of the law,

10   because there was no evidence of any applicable law that the arbitration panel had explicitly

11   recognized and then ignored.  (*Lagstein, supra,* 607 F.3d at 641.)

12       Similarly, in *Bosack, supra,* the party seeking vacatur contended that the arbitration

13   award must be vacated because the arbitrators had allegedly failed to follow California law as

14   described by the petitioner.  The Ninth Circuit held that this argument was an improper invitation

15   to review the arbitration panel's factual findings and legal conclusions, and that it was prohibited

16   from doing so under the FAA. (*Bosack, supra,* 586 F.3d at 1104.)  The *Bosack* court explained

17   that there was no evidence in the record that the arbitrators understood the law, correctly stated

18   the law, and then proceeded to disregard that law.  (*Id.* at 1104-1105.)  Consequently, there was

19   no basis for vacating the award for manifest disregard of the law.  (*Id.*)

20       Here, as discussed above, the arbitrators properly recognized, cited and applied

21   *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, which is

22   controlling authority, to the facts and evidence presented in Mr. Shaffer's case.  Nonetheless,

23   WFA insists that the arbitrators must have manifestly disregarded the law because WFI provided

24   the arbitrators with copies of the *Koehl, Musacchio* and *Fontani* cases, but the arbitrators still

25   ruled in favor of Mr. Shaffer.  WFA's arguments would fail even if *Koehl, Musacchio* and

26   *Fontani* were controlling and clearly applicable (which they are not).

27

28

First, there is no indication in the award nor in the transcript that the arbitrators explicitly recognized the *Koehl, Musacchio* and/or *Fontani* cases. Secondly, the award does not cite to the *Koehl, Musacchio* nor *Fontani* cases. (Exh. 6.)  Third, the transcript does not reflect that the arbitrators cited to the *Koehl, Musacchio* and/or *Fontani* cases.  Finally, there is no evidence that the arbitrators ignored the *Koehl, Musacchio* and/or *Fontani* cases, as opposed to concluding that they were inapplicable and/or distinguishable.   Indeed, where, as here, the arbitration award is not an explained decision which details the arbitrators' legal reasoning, it would be impossible to determine that the arbitrators acted with manifest disregard for the law.  (See *Bosack, supra,* 586 F.3d at 1104.)

At most, the arbitrators failed to apply and/or follow the cases cited by WFI, or interpreted them differently than WFI.   As discussed above, the arbitrators' alleged misinterpretation of the law, or alleged failure to follow and/or correctly apply the law, would not be grounds for vacating an arbitration award under the FAA, even if such a misinterpretation or misapplication had occurred. (*Hall Street, supra,* 552 U.S. at 585-588*; Lagstein, supra,* 607 F.3d at 641; *Bosack, supra,* 586 F.3d at 1102, 1104; *Kyocera, supra,* 341 F.3d at 994.)  WFA must do more than argue that the arbitrators' legal reasoning and factual findings were erroneous.  It has failed to do so.

**VI.   WFA WAIVED THE RIGHT TO CLAIM THAT MR. SHAFFER COULD NOT OBTAIN RELIEF FOR THE STATEMENTS MADE IN THE FORM U-5, BY AGREEING TO FINRA ARBITRATION, WHICH EXPLICITLY ALLOWS SUCH CLAIMS.**

WFA's predecessor, WFI, selected FINRA as its forum of choice for deciding disputes with Mr. Shaffer.  (Exh. 1, p. 2; Exh. 3.)  It expressly agreed, in 2008 and again in 2010,  to abide by FINRA's rules and procedures.[4]  (Exh. 1, p. 2; Exh. 3.)  FINRA specifically recognizes "Libel or Slander on Form U-5" as an employment related dispute which its arbitrators are empowered to decide.  (Exh. 5.)  FINRA includes this claim in its list of authorized FINRA

---

[4]   Although the promissory note included a California choice of law provision, that provision only applies to the interpretation and enforcement of the Note, not to employment and/or defamation claims which are wholly unrelated to the note.  (Exh. 1 at p. 2.)

1   claims that are set forth on its Uniform Claim Information Sheet Form, which is available from

2   the FINRA web-site. (Exh. 5; Shaffer Decl. ¶ 6.) FINRA's rules and procedures plainly allow

3   for employee claims of libel or slander on a Form U-5, such as the claims made by Mr. Shaffer.

4        Indeed, in *Fahnestock & Co., Inc. v. Waltman* 935 F.2d 512, 515-516 (2nd Cir. 1991), the

5   Second Circuit Court of Appeals ruled that FINRA arbitrators have the power to decide

6   defamation claims based on statements in a Form U-5, even if state law privileges bar such

7   claims. The *Fahnestock* court rejected the very same argument that WFA makes here. (*Id.*)

8        As the *Fahnestock* court recognized, FINRA is entitled to make its own rules, and to hear

9   claims which might not be allowable if they were to be raised in a state court rather than in

10  FINRA arbitration. FINRA has determined that securities representatives such as Mr. Shaffer

11  have the right to arbitrate claims of libel or slander on a Form U-5. WFI selected FINRA as the

12  forum for hearing and resolving disputes with Mr. Shaffer, and agreed to abide by FINRA's rules

13  and procedures. By doing so, it waived the right to assert that a state law privilege barred the

14  FINRA arbitration panel from ruling on the merits of Mr. Shaffer's claims.

15  **VII.  WFA'S "PUBLIC POLICY" ARGUMENT IS NOT A VALID GROUNDS FOR VACATING THE AWARD.**

16
17       WFA also asserts that the award must be vacated based upon alleged "public policy"

18  considerations. WFA's argument is contrary to the express language of Section 10 of the FAA,

19  and the United States Supreme Court's decision in *Hall Street, supra.* Further, WFA has grossly

20  misconstrued the one Ninth Circuit case upon which it relies.

21       As discussed above, the ONLY grounds for vacating an arbitration award are the grounds

22  set forth in Section 10 of the FAA. (*Hall Street, supra,* 552 U.S. at 584-585.) An alleged

23  violation of public policy is not one of those grounds. (9 U.S.C. § 10.)

24       *Stead Motors of Walnut Creek v. Automotive Machinists Lode No. 1173* 886 F.2d 1200

25  (9th Cir. 1989), the sole case cited by WFA in support of its argument, is inapposite. First, *Stead*

26  *Motors* was not brought under the FAA, but rather under the National Labor Relations Act. The

27  court's opinion expressly concerned the appropriate standard of judicial review for labor

28

1    arbitration awards.  The instant action does not concern a labor arbitration award decided under

2    the National Labor Relations Act.  *Stead Motors* is plainly inapplicable.

3       Secondly, *Stead Motors* pre-dates the United States Supreme Court's decision in *Hall*

4    *Street, supra,* which held that federal courts cannot make exceptions to the limited scope of

5    judicial review set forth in Section 10 of the FAA.  To the extent that *Stead Motors* may be

6    construed as holding that an alleged violation of public policy is a separate grounds for vacatur

7    under the FAA, it is contrary to United States Supreme Court precedent.

8       Third, WFA misstates the holding of *Stead Motors*.  Specifically, the *Stead Motors* court

9    held that the "public policy exception" to judicial review of labor arbitration awards is limited to

10    situations where the enforcement of an arbitration award and/or the underlying contract giving

11    rise to the award would force a party to perform a manifestly illegal act.  (*Stead Motors, supra,*

12    886 F.2d at 1211-1213, 1216-1217.)  Indeed, the *Stead Motors* court reversed the district court's

13    order, which had vacated the arbitration award on public policy grounds.   The *Stead Motors*

14    court expressly cautioned against allowing the public policy exception to "be turned into a facile

15    method of substituting judicial for arbitral judgment".  (*Id.* at 1212.)   As the Ninth Circuit has

16    subsequently explained, mere inconsistency with a court's generalized view of public policy is

17    not an appropriate ground for vacatur of an arbitration award.  (*Lagstein, supra,* 607 F.3d at 641,

18    fn. 4.)

19       As the authorities above hold, WFA is not entitled to vacate the award merely because it

20    is allegedly inconsistent with WFA's view of public policy.  If the public policy exception

21    applies at all to proceedings brought under the FAA, then WFA must show that enforcing the

22    award would require WFA to do something that is illegal.  WFA has made no such showing.

23    There is nothing illegal about requiring an entity to pay damages to an individual.   Similarly,

24    holding WFA to its predecessor's own arbitration agreements is neither illegal nor a violation of

25    public policy.  Indeed, vacatur of the award based upon alleged public policy considerations

26    would be contrary to the public policy that supports the enforceability of arbitration agreements

27    and the finality of arbitration awards.

28

**VIII. MR. SHAFFER SHOULD BE AWARDED HIS ATTORNEYS FEES INCURRED IN OPPOSING THIS MOTION, PURSUANT TO THE TERMS OF THE NOTE.**

A prevailing party is entitled to an award of the attorneys fees incurred in litigating a petition to vacate an arbitration award, if the agreement between the parties provides for attorneys fees. (*A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir. 1992).)

Such is the case here. The promissory note between the parties contains a one-sided provision for attorneys fees to be awarded to WFI in the event that any action or lawsuit is required to be brought for the collection of any amount under the note, including all fees involved in collection. (Exh. 1, p. 2.) The note further provides that it shall be interpreted, enforced and governed by California law. (Exh. 1, p. 2) Pursuant to California Civil Code § 1717, the one-sided provision for attorneys fees in the note must be made reciprocal. Consequently, Mr. Shaffer is entitled by contract and by law to recover the attorneys fees he has incurred in defending WFA's efforts to collect on the note. This necessarily includes the fees incurred in defending the instant motion to vacate the arbitration award which held the note to be unconscionable.

**IX. CONCLUSION**

For the foregoing reasons and authorities, respondent Kenneth C. Shaffer respectfully requests this honorable court deny WFA's motion to vacate the arbitration award issued in the *Matter of the Arbitration Between Wells Fargo Investments, LLC and Kenneth C. Shaffer,* FINRA Case No. 10-00773. Mr. Shaffer further respectfully requests this honorable court award him his attorneys fees incurred in opposing the instant motion to vacate, in an amount to be determined pursuant to motion at the appropriate time.

Dated: May 18, 2011                        STANZLER LAW GROUP


By: _Melinda Steuer_____
Melinda Jane Steuer
Attorneys for Respondent Kenneth C. Shaffer

1    **PROOF OF SERVICE**
[C.C.P. § 1013, C.R.C.§ 2008, F.R.C.P. Rule 5]

2

         I, Sharran L. Rodd, state:

3

         I am a citizen of the United States.  My business address is 2275 E. Bayshore
4    Rd., Suite 100, Palo Alto, CA 94303.  I am employed in the City of Palo Alto, County of
Santa Clara where this mailing occurs.   I am over the age of eighteen years and not a party to
5    this action.  On the date set forth below, I served the foregoing documents described as:

6    **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO WELLS
FARGO ADVISORS, LLC'S MOTION TO VACATE ARBITRATION AWARD**

7

on the following person(s) in this action via ECF addressed as follows:

8

Fredrick A. Rafeedie, Esq.
9    Samuel E. Endicott, Esq.
Jones, Bell, Abbott, Fleming & Fitzgerald LLP
10   601 South Figueroa Street, 27th Floor
Los Angeles, CA 90017-5759

11

12   **X:**    Filed and Served electronically in accordance with the Court's electronic filing
            ("ECF") rules, pursuant to which registered ECF users receive service copies by e-
13           mail delivery.

14           I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct and that this declaration was executed this date at Palo Alto,
15   California.

16   Dated: May 19, 2011

17                                                     _____
                                                          Sharran L. Rodd
18

19

20

21

22

23

24

25

26

27

28