Exhibit 4



4-12-2010

Regarding the demand from Wells Fargo Investments, my former employer, for payment of unamortized Promissory note amounts from myself, Kenneth C. Shaffer, a former employee, I attest to the following and am willing to relate the details of this situation under oath.

I joined Wells Fargo Investments in June of 2006 with the oral promise of being introduced to affluent investors and being assigned 16 million dollars worth of affluent client accounts, doubling the size of my existing client base. It was also explained that I would be eligible for a "bonus" payment based on my performance over the first 18 months, which was to be paid to me in the form of a promissory note, the details and risks of which were never explained or fully understood by me. The promises of affluent account intoduction, and the transferring of existing accounts were never completed, creating a situation of detrimental reliance. I complained in e-mails starting in 2008 that these original promises were never kept, and in fact, I had personally witnessed favoritism, reckless behavior and other ethical violations by Wells Fargo Investments, and wished to terminate our relationship. I was told not to put complaints in e-mail form because of regulatory concerns.

In subsequent months I was subjected to production quotas not in effect at the time of my hiring or at the time of the promissory note award, and threatened with termination based only on production amounts, even during the period in late 2008 when financial markets were in free fall. During this period I developed severe respritory problems which I believe were stress related, and was denied disability benefits. My production quota was raised in early 2009, while my revenue from new accounts was halved by the addition of licensed employees. I was again threatened with termination in February of 2009 for missing my sales quota by 500 dollars. I complained of unfair treatment and witheld compensation.

I was terminated without warning on October 1st, 2009 by a Ms. Mary Mortensen who explained to me that I was being "termed out" for two minor violations, accidental on my part, which Ms. Mortensen stated would not ordinarily have been grounds for termination but an exception was made in my case because of the critical e-mails and statements that I had made. One week before this I had received an e-mail from my immediate supervisor, Jan Krug, stating that it was "business as usual" until I started at a new branch in November. I believe that this created a condition of promissory estoppel.

I believe that the original promissory note is not enforceable because it violates employment law by penalizing a terminated employee, and is unconscionable because it's terms require repayment of amounts even following discriminatory or retaliatory termination. There is also violation of the implied covenent of good faith and fair dealing, and breach of fiduciary responsibility by Wells Fargo Investments. This particular promissory note also violates article 75, Bills of Exchange and Promisory Note Act, item #2. The promissory note also did not specify or alude to the possibility of future production goals which could result in termination, were unfair and unequally applied.

I have suffered both financially and emotionally as a result of Wells Fargo"s actions including discrimination, wrongful termination, witholding of disability benefits, and withheld compensation. I have been the victim of detrimental reliance and suffered promissory estopple, see exhibits attached, and have been unable to secure another position because of the termination notes on my u-5, and refusal of Wells Fargo to provide me production records, which I believe is an infraction of Calif. "right to work" regulations. I request that the promissory note is found to be void and unenforcable.

Thank You,

Ken Shaffer

**FINRA ARBITRATION Submission Agreement**

In the Matter of the Arbitration Between

Name(s) of Claimant(s)

Wells Fargo Investments, LLC

10-00773

Name(s) of Respondent(s)

Kenneth C. Shaffer

1. The undersigned parties ("parties") hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure.

2. The parties hereby state that they or their representative(s) have read the procedures and rules of FINRA relating to arbitration, and the parties agree to be bound by these procedures and rules.

3. The parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The parties further agree and understand that the arbitration will be conducted in accordance with the FINRA Code of Arbitration Procedure.

4. The parties agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement. The parties further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5. The parties hereto have signed and acknowledged the foregoing Submission Agreement.

4-12-2010

Kenneth C. Shaffer
State Capacity if other than Individual (e.g., executor, trustee, corporate officer)

Date

LC43A: SUBMISSION AGREEMENT
ldr: 02/09/2009

RECIPIENTS:
Kenneth C. Shaffer
5315 Garienda Dr., El Dorado Hills, CA 95762

EXHIBIT B   Page 23



MY RESPONSE LETTER TO
KANE & FISCHER DEMAND

Dear Mr. Lindsay:

Recieved your letter regarding the promisory note balance. Unfortunately, at this time I have no job, and approximately twenty thousand dollars to my name. My burn rate is approximately 5K per month, meaning in 4 months, I will be withdrawing from a small IRA in order to survive. My home, formerly my most valuable asset, is now worth substantially less than I paid for it, resulting in minimal equity. I am very likely a candidate for bankruptcy proceedings, if I could afford the legal expense.

I have been unable to secure other employment of any type, and specifically as a Financial Advisor, because I was given no advance notice of my termination and have no client or production records. I believe that Wells Fargo has breeched my rights under California's "right to work" statutes, and is guilty of other employee rights violations.

The termination which results in this request for the return of the promisory note amounts is completely unwarranted, and in fact, I was told by the Branch Administrative Manager, Mary Mortensen, that the events sited would not be grounds for termination if it were not for my criticism of the firm. Prior to my termination on October 1st, I had no reason to believe I would be terminated, and in fact, recieved an e-mail from my immediate supervisor, Jan Krug, approximately one week before my termination that it was "business as usual" until November, when I was to start working at a new branch. I believe that this created a situation of promissory estoppel.

When I asked Wells Fargo for a trailing 12 month production record, I was denied. This record is mandatory information for most hiring firms, I believe that this is a violation of California "right to work" laws.

I recieved a call from a representative of the State unemployment office who told me that Wells fargo had reported to them that I had purposely intended to be fired, resulting in no unemployment payments and possible waiver of COBRA benefits. This is completely false; and in fact, I have been warned that termination could trigger a demand to return earlier bonus amounts, resulting in mental duress and undue pressure to make sure that I would not be terminated.

Additionally, when I was hired I was promised 15 million dollars in affluent client accounts, and the opportunity to meet regularly with affluent investors creating a situation of detrimental reliance. I was assigned to a new branch of Wells Fargo with a tiny asset base, and struggled to produce a minimal income from the client base which I brought to the firm. This stress resulted in illness which my doctor recommended time off to recover from. Through the Wells fargo employee benefits department, I was led to believe that this was a qualifying short term disability, later denied by Metropolitan Insurance Co. My medical records at this time included a recommendation to take time off for voice rest due to persistant laryngospasm and sleep apnea symtoms, as well as treatment for depression. Metropolitan told me that it was difficult to obtain the required information from my Kaiser Physician, and that the records they recieved did not support a valid claim.

These events, and blatant favoritism towards Financial Consultants hired by managers who benefit from their success ( the manager who hired me has been terminated), pressure to meet minimum production goals while having revenues witheld through a punitive FC/ Licensed banker sharing arrangement, and

lack of adequate compensation for time spent in manadatory, non revenue producing activities have resulted in extreme hardship, frustration, and depression.

I have been told that these outstanding promissory note amounts are considered by Wells Fargo to be "blood money" by Mary Mortensen, Branch Administrative Manager, and now fear for my own and my family's safety. No one ever explained the ramifications of the promisory note to me originally, especially in regard to future production quotas that were never discussed or in effect at the time, or the possibility of arbitrary termination.

Ken Shaffer

Shaffer, Kenneth C.

| | |
|---|---|
| **From:** | Shaffer, Kenneth C. |
| **Sent:** | Monday, March 09, 2009 4:31 PM |
| **To:** | Webster, Mark D. (PCS); Hamill, Leo P. |
| **Subject:** | Fair and reasonable? |

Hi Mark- I have been issued a "formal written warning" for unsatisfactory production from Barbara. My monthly goal is 20,666 (80%). For February, I had total production of 20,100, missing the mark by 500 dollars. My year to date is 41,439, an average of 20,719.50 per month, and higher than the original requirement. I am now being threatened with termination, at a time when, prior to this meeting, I felt like I was gaining momentum- For March, I have booked my 1st Transamerica Inheritance Builder Sale, received my first "Inforce Policy review", and booked business in fixed annuities. I feel my branch relations are excellent, and I have no customer complaints. I was 14th out of 29 reps for the month of February, and am 8th in % to goal.

Complicating the situation is the fact that I have an outstanding promissory note- Barbara has informed me that the unamortized amount would be due back to Wells, a financially disastrous situation. I cannot believe that the Ms. Brandell is subjecting not only myself, but other FCs to this type of mental duress at a time of financial crisis. Do you think this is fair and reasonable?

I think one of the sources of this discriminatory behavior is that I took 8 weeks off last year, Oct. and Nov., for a health problem that I am still being treated for- I currently take 8 pills a day! I was denied short term disability from Metropolitan Insurance with the explanation the my medical records did not support disability payments- even though I would assume the recommendation to take time off was part of my records. They effectively over ruled my Doctor- amazing. This situation affected my productivity before I left, and I had 2 months of 0 production. Barbara states that the condition of written warning is based on last year's production as well. I was on track to achieve my annual goal last year until July. I believe my treatment is partially based on verifiable illness.

Since I am now in a "sudden death" situation, I must also tell you as well that, after 30 Years of no entries on my u-4, I am very concerned with complaints and law suits arising from reckless behavior on the part of the firm- the push on "reverse convertibles", resulting in the unexplained disappearance of one of their strongest converts, Suggestion that health questions regarding insurance are less than fully truthful, and the misrepresentation of income from Insurance policies.

I am hoping that I can be on more than a "month to month" plan, which is only reasonable since it could compromise my ability to suggest the best course of action for my clients. I am available to verify and discuss any of these items at your request, and will continue to provide the very best support for clients and team members.

*Ken Shaffer*
Financial Consultant
Wells Fargo Investments·

M-W-F- 916 984-1179
T-Th  -916 384-3571
*Investment and Insurance Products*
*Are Not insured by the FDIC or any other federal government agency.*
*Are Not deposits of or guaranteed by the Bank or any Bank affiliate*
*May Lose Value*

*Wells Fargo Investments, LLC (member SIPC) is a non-bank affiliate of Wells Fargo & Company.*

*The information in this email is confidential. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance to it, is prohibited and may be unlawful. Trade Orders cannot be accepted by e-mail.*

1



**EDD** Employment
Development
Department
State of California

## Claim for Disability Insurance Benefits – Doctor's Certificate

*Copy*

TYPE or PRINT with BLACK INK.

| 34. PATIENT'S FILE NUMBER | 35. PATIENT'S SOCIAL SECURITY NO. | 36. PATIENT'S LAST NAME |
|---|---|---|
| 000001850482 | | **SHAFFER** |

| 37. DOCTOR'S NAME AS SHOWN ON LICENSE | 38. DOCTOR'S TELEPHONE NUMBER | 39. DOCTOR'S STATE LICENSE NO. |
|---|---|---|
| ROSE ARELLANES MD | 916/817-5200 | A66839 |

40. DOCTOR'S ADDRESS – NUMBER AND STREET, CITY, STATE, COUNTRY (IF NOT USA), ZIP CODE. POST OFFICE BOX NUMBER IS NOT ACCEPTED AS THE SOLE ADDRESS

Medical Secretaries

2165 Iron Point Road, Folsom, CA 95830

41. THIS PATIENT HAS BEEN UNDER MY CARE AND TREATMENT FOR THIS MEDICAL PROBLEM

FROM 12/28/2006 TO 9/10/2008 AT INTERVALS OF ☐ DAILY ☐ WEEKLY ☐ MONTHLY ☒ AS NEEDED

42. AT ANY TIME DURING YOUR ATTENDANCE FOR THIS MEDICAL PROBLEM, HAS THE PATIENT BEEN INCAPABLE OF PERFORMING HIS/HER REGULAR OR CUSTOMARY WORK?
☐ NO – SKIP TO THE DOCTOR'S CERTIFICATION SECTION
☒ YES – ENTER DATE DISABILITY BEGAN: 9/22/2008

43. DATE YOU RELEASED OR ANTICIPATE RELEASING PATIENT TO RETURN TO HIS/HER REGULAR / CUSTOMARY WORK ("UNKNOWN," "INDEFINITE," ETC., NOT ACCEPTED.)
11/2/2008

| 44. ICD9 DISEASE CODE, PRIMARY (REQUIRED UNLESS DIAGNOSIS NOT YET OBTAINED) | 45. ICD9 DISEASE CODE(S), SECONDARY |
|---|---|
| 478.75 LARYNGEAL SPASM | 308.9 530.81 |

46. DIAGNOSIS (REQUIRED) – IF NO DIAGNOSIS HAS BEEN DETERMINED, ENTER OBJECTIVE FINDINGS OR A DETAILED STATEMENT OF SYMPTOMS
54 YEAR OLD MALE WITH A HISTORY OF CHRONIC THROAT PROBLEMS. HAVING COUGHING AND CHOKING EPISODES AS WELL AS REFLUX PROBLEMS. STRESSED AS HIS THROAT IS EFFECTING HIS WORK, FEELS A LOT OF STRESS AND UNSUPPORTED AS IT IS DIFFICULT FOR HIM TO TALK ALL DAY.  OFF WORK FOR VOICE REST GIVEN CURRENT LARYNGOSPASM. TRIAL OF ZOLOFT TO SEE IF CAN HELP DEAL WITH ANXIETY OF HIS MEDICAL CONDITION AND WORK.

47. FINDINGS – STATE NATURE, SEVERITY, AND EXTENT OF THE INCAPACITATING DISEASE OR INJURY. INCLUDE ANY OTHER DISABLING CONDITIONS

48. TYPE OF TREATMENT / MEDICATION RENDERED TO PATIENT
MEDICATION, REFERRED TO BHC AND WILL BE EVALUATION BY HEENT AGAIN.

49. IF PATIENT WAS HOSPITALIZED, PROVIDE DATES OF ENTRY AND DISCHARGE
_/_/_ TO _/_/_

50. DATE AND TYPE OF SURGERY / PROCEDURE PERFORMED OR TO BE PERFORMED
_/_/_

ICD9 PROCEDURE CODE(S)

51. IF PATIENT IS NOW PREGNANT OR HAS BEEN PREGNANT, WHAT DATE DID PREGNANCY TERMINATE OR WHAT DATE DO YOU EXPECT DELIVERY?
_/_/_

52. IF PREGNANCY IS / WAS ABNORMAL, STATE THE ABNORMAL AND INVOLUNTARY COMPLICATION CAUSING MATERNAL DISABILITY

53. BASED ON YOUR EXAMINATION OF PATIENT, IS THIS DISABILITY THE RESULT OF "OCCUPATION," EITHER AS AN "INDUSTRIAL ACCIDENT" OR AS AN "OCCUPATIONAL DISEASE"? (INCLUDE SITUATIONS WHERE PATIENT'S OCCUPATION HAS AGGRAVATED PRE-EXISTING CONDITIONS.)
☐ YES ☒ NO

54. ARE YOU COMPLETING THIS FORM FOR THE SOLE PURPOSE OF REFERRAL / RECOMMENDATION TO AN ALCOHOLIC RECOVERY HOME OR DRUG-FREE RESIDENTIAL FACILITY AS INDICATED BY THE PATIENT IN QUESTION 23?
☐ YES ☒ NO

55. WOULD DISCLOSURE OF THIS INFORMATION TO YOUR PATIENT BE MEDICALLY OR PSYCHOLOGICALLY DETRIMENTAL?
☐ YES ☒ NO

Doctor's Certification and Signature (REQUIRED): Having considered the patient's regular or customary work, I certify under penalty of perjury that, based on my examination, this Doctor's Certificate truly describes the patient's disability (if any) and the estimated duration thereof.

I further certify that I am a ___ FAMILY PRACTICE ___ licensed to practice in the State of CA.
(TYPE OF DOCTOR)   (SPECIALTY, IF ANY)

Roma Mattos, Auth Signer for ROSE ARELLANES MD

*Rose Arellanes MD /rm*    ►    10/1/2008
ORIGINAL SIGNATURE OF ATTENDING DOCTOR – RUBBER STAMP IS NOT ACCEPTABLE     DATE SIGNED

Under sections 2116 and 2122 of the California Unemployment Insurance Code, it is a violation for any individual who, with intent to defraud, falsely certifies the medical condition of any person in order to obtain disability insurance benefits, whether for the maker or for any other person, and is punishable by imprisonment and/or a fine not exceeding $20,000.  Section 1143 requires additional administrative penalties.

DE 2501  Rev. 76  (9-05) (DI Branch)                                                                 page 3

Wells Fargo Leave management:

Attached you will find the family leave form which I was requested to submit because
Metropolitan declined to pay disability benefits. There reasoning, as explained to me, was
that Kaiser's medical records do not "support" disability pay. One of Kaiser's medical
records is a recommendation to take time off after dealing with a severe case of acid
reflux for more than a year.

I am affected by gagging and coughing, hoarseness, symptoms of laryngitis, and
esophageal spasms. I have been referred to an ENT specialist, who thinks that my
symptoms warrant seeing a Gastro-intestinal specialist. I have tried to work through this
for over a year because of my commission only pay status and minimal disability
benefits.

Recently, my choking and coughing episodes have worsened, and I have become
depressed over this situation and decided to take my doctors advice. I was instructed to
call the benefits department, and explained my situation and my doctor's
recommendation, and was explained my disability benefits by a representative. At no
time was it mentioned that a doctor's recommendation was not suitable for a short term
medical leave. At this point I have been prescribed Zoloft for depression, and another
medication for panic attacks, I have spoken with a therapist at Kaiser, and another at
Metropolitan, Ann Marie, who told me that these symptoms, medical and physical, fill
the requirement for disability pay, and that she would contact me the following week- I
never heard from her, and upon contacting my case manager, Nancy Weird, I was
informed that my request has been denied. I wonder if our high level management team
would receive the same kind of treatment if they were sick?

Wells Fargo needs to contact Metropolitan and tell them that Wells Fargo employees
should not be subjected to treatment like this, and if they cannot rectify this situation,
should stop working with Metropolitan, and pay my disability benefits themselves. My
signing this family leave form does not constitute an agreement by me to not receive
disability benefits.

Regards,

EXHIBIT B   Page 28

Metropolitan Life Disability Claims:

I am requesting reconsideration of my disability case 356809177639. I understand my medical condition has been judged not to be severe enough to warrant disability pay. I would like to give you more complete information, which you can confirm with my physician, in order to make a fair decision.

In December of 2007, I started uncontrollable coughing and was seen by my physician. She concluded that my symptoms were caused by Acid Reflux, and prescribed medication, exercise, and diet change. She also suggested I take some time off work, which I declined because I work on commission only, and was not sure that I would have access to disability payments. I have followed all of her other recommendations, and am still effected, and limited by, symptoms caused by Acid Reflux including larynospasm and laryngitis. I am constantly coughing and clearing my throat which makes my effectiveness in my position at Wells Fargo, entailing constant in-person and telephone conversations, severely compromised. Most client meetings require continued speaking on my part, and are punctuated by coughing spells and throat clearing. When I try to stifle the coughing, my eyes water and redden, Often I have to excuse myself to drink water. On some occasions I cough up mucous, and must decide whether to swallow it or spit into a Kleenex. These episodes severely compromise the effectiveness of my sales presentations. Many nights I am awakened by a choking reflex and symptoms of sleep apnea, as well as continuous coughing and burning of the throat. I feel like I have had a bad cold for the last 22 months, with persistent hoarseness, scratchy throat, and tiredness. During this time my production (sales) has declined resulting in warnings from management, and instructions to increase my activities, at a time when I am struggling to meet minimum activity requirements. I now find it impossible to meet the stringent time requirements required of my position.

This health situation, and lack of improvement, has led to a condition of depression, exacerbated by the volatility and decline of the financial markets, and the demands of my position. I have been prescribed the anti-depressant Zoloft.

I understand that there is some question about why there was a delay between the time that my physician suggested taking time off to recover and my last day at work. I felt it necessary and responsible to complete projects that I was working on, especially to generate a living wage for my family, and obtain clearance from my company for the time I would miss. I was not participating completely in work activities, and not putting in the required hours, which I am physically and psychologically unable to do. My position does not allow part time hours. Actually, my physician recommended taking time off in January of 2007, which I declined because of my commission based compensation. At this time however, with very little improvement in my health, I see no other option. I have attached the report I received today from an ENT specialist, who has referred me to a gastro-intestinal specialist. Also attached is the report my primary care physician to the State disability department.

Ken Shapler          10/16/08

Shaffer, Kenneth C.

*PROMISSORY ESTOPPEL*

From: Krug, Jan M.
Sent: Wednesday, September 23, 2009 1:32 PM — *1 WEEK BEFORE MY TERMINATION*
To: Shaffer, Kenneth C.; Obenchain, Christopher T.
Subject: Micron and Douglas/Auburn-Folsom Stores

Hi Ken and Chris: I have just received word that Jim U'Ren whom we had slated to assume coverage of the Micron store will delay his return from medical LOA per his doctor's orders until Nov. 1, 2009. Because of that, we will delay the store coverage changes until he returns. I do apologize for the confusion. So, it's business as usual until the end of October!
Thanks

*Jan M. Krug*
Wells Fargo Investments
Vice President
Regional Sales Manager
Private Client Services
1512 Eureka Road Suite 300
Roseville, CA 95661
(916) 788-4532

1

EXHIBIT B   Page 30

HI- I have been summoned to Jan Krug's office to be terminated after a conversation yesterday relating to sales performance and a 400 dollar overcharge of a client account. I came in @ 29K last month, compared to a monthly minimum requirement of 25K. Our conversation today concerned an e-mail that I sent to a client in an e-mail reviewing the status of 8K in MLCDs. I have repeatedly pointed out that the 50% revenue credit given FCs for joint FC/LB business was not fair, and that the deleted production should at least be considered for purposes of grid payout, and goal attainment. The FC/LB split is nothing more than gaming of the FCs production and compensation. I believe my termination is based on this assessment and the other ethical and regulatory issues that I have previously raised.

I was also misled and lied to by Mark Webster and John Scambrey during recruitment, promised that I would be able to meet with affluent investors regularly and be assigned 15 million dollars in affluent client accounts. I am sure this is no news to you Ms. Copeland, recruiting violations are the norm at Wells Fargo, and there are many FCs that can attest to that.

I would like to say in parting, that in 30 years I have never been involved with a more dishonest and cut throat sales organization and that Ms. Krug and Mr. Webster are guilty of numerous recruiting and compliance violations. I will be exploring this situation with an attorney.

*Ken Shaffer*
Financial Consultant,
Wells Fargo Investments

M-W-F- 916 984-1179     Customer Service- 866-281-7436
T-Th -916 364-3571
*Investment and Insurance Products*
*Are Not Insured by the FDIC or any other federal government agency.*
*Are Not deposits of or guaranteed by the Bank or any Bank affiliate*
*May Lose Value*

*Wells Fargo Investments, LLC (member SIPC) is a non-bank affiliate of Wells Fargo & Company.*

*The information in this email is confidential. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance to it, is prohibited and may be unlawful. Trade Orders cannot be accepted by e-mail.*



WRONGFUL TERMINATION - MY
RESPONSE TO FINRA INQUIRY.

Jan 11, 2010

Dear Mr. Rahmer:

Regarding your request for additional information about Wells Fargo's U5 filing, please be advised that
the firm named these incidents as part of a vengeful and arbitrary response to my complaints regarding
their own professional misconduct and my own stated intent to terminate our relationship. I will not go into
the details unless you request them, but I had complained in e-mails of the firm's reckless behavior,
favoritism, undue pressure, and withheld compensation. I have been registered for 30 years and have
never had a serious client complaint, judgement, or item requiring explanation before this.

In regard to the first item, exceeding commision schedule markups, this was simply an error in calculation
on my part- I discussed this trade, and the amount of the commision (1000.00) with my clients
of 15 years. I did not realize that the amount of the commission exceeded guidelines, and did not recieve
any warning from the Thompson Financial order entry system the firm uses that the principle amount
involved did not support this charge. The over charges amounted to approximately 130 and 140 dollars on
each trade, and since I was advised of the over charge the next day, I assume the trade was corrected,
which I willingly authorized when I was informed of the miscalculation. I was told by Ms. Mary Mortensen,
compliance manager, that this would not ordinarily be a terminable offense, but an exception was made in
my case due to my honesty in describing how I arrived at the 1000 dollar commision amount- to insure
that I conformed to the firm's minimum production requirements in order to avoid termination. I had been
threatened with termination for missing a monthly sales goal by 500 dollars previously, and was repeatedly
warned that termination would result in a demand to return unamortized amounts of an earlier bonus.
There was no client complaint, in fact these clients are personal friends and feel that I have done an
excellent job for them over the years.

The second item, received a written complaint that was not forwarded, concerns an e-mail I recieved from
a client who did not find his 8,000 dollar investment in a S&P 500 linked Certificate of Deposit among his
bank account statements, and had concerns about where his funds had gone. I called him immediately
after recieving the e-mail and explained that his funds were in the separate brokerage account that we had
opened with his approval several months earlier, and in fact the CD was maturing the following month and
would return his full principle amount.He told me he then understood, and had no further concerns. I did
not consider this a complaint, rather a misunderstanding, and did not forward.

As a result of this discriminatory behavior, comments on my U5, and the firm's unwillingness to provide
me a trailing 12 month commission statement, I have been unable to find other employment, and am
rapidly burning through my dwindling savings, resulting in financial hardship and depression. I was given
1 hour to report to my supervisors office after being informed of my termination, this after receiving an e-
mail one week earlier informing me of a new branch assignment, and being told untill then it was
"business as usual". I feel the firm has violated various "right to work" regulations, and has sent me a
demand letter to repay over 70K of previously awarded bonuses. In conversations with Ms. Mortensen,
she refferred to these bonus amounts as "blood money", causing me additional worry and concern. I am
wondering if FINRA or any other agency is available to help me, as I cannot afford the cost of an attorney.

Regards,


Ken Sheffer